**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.   17-cv-00487-CBS

WELLES TONJES,

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS FOR PARK COUNTY, in its official
capacity;
THE PARK COUNTY SHERIFF'S OFFICE;
FRED WEGENER, in his individual capacity; and
MARK HANCOCK, in his individual capacity,

      Defendants,

---

**DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

---

      The Board of County Commissioners for Park County, the Park County Sheriff's

Office, Sheriff Fred Wegener, and Captain Mark Hancock ("Defendants"), by and

through counsel, Herbert C. Phillips of The Phillips Law Offices, LLC, and Timothy P.

Schimberg of Fowler, Schimberg, Flanagan & McLetchie, P.C., move for dismissal of

Plaintiff's claims and state as follows:

      **D.C.COLO.LCivR 7.1(a) Certification:**  Counsel for Defendants conferred with

Plaintiff's counsel regarding this Motion.  Plaintiffs oppose the relief requested.

**I. INTRODUCTION**

      Plaintiff quit his position at the Park County Sheriff's Office on February 29, 2016.

On February 24, 2016, members of the Park County Sheriff's Office attempted to

1

enforce a court-ordered writ of restitution entered against Park County resident Martin Wirth.  Plaintiff had no role in the planning or execution of this eviction.  Mr. Wirth opened fire on the officers, killing Corporal Nate Carrigan and wounding two other officers, including Defendant Hancock, before Mr. Wirth was shot and killed.

Plaintiff now claims his constitutional Due Process rights were violated in retaliation for an "opinion" that Plaintiff never expressed or directly communicated to any Defendant.  He claims his First Amendment right to "associate" was violated although Plaintiff never engaged in First Amendment activity.  He claims that an employment contract—which never existed, and promises—which were never made, were broken. He claims that a single, true, statement made by Defendant Sheriff Fred Wegener resulted in "stigma" of an unspecified nature and unspecified harms.  The facts, to the extent they are alleged, show that Plaintiff's claimed rights are imagined and alleged wrongs are manufactured.  The allegations do not add up to any plausible claims for relief.  Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The Court may also dismiss Plaintiff's state law tort claims pursuant to Fed. R. Civ. P. 12(b)(1) because Defendants Wegener and Hancock are immune from liability for such claims pursuant to the Colorado Governmental Immunity Act ("CGIA").

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff, *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007), a complaint can survive dismissal only if it alleges a plausible claim for relief—that is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Plausibility" asks "whether, if the allegations are true, it is *plausible* and not merely *possible* that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1192 (10th Cir. 2009) (citing *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)) (emphasis added).

Whether state law tort claims brought against public employees are barred on immunity grounds pursuant to the Colorado Governmental Immunity Act ("CGIA") is a question of subject matter jurisdiction properly addressed under Fed. R. Civ. P. 12(b)(1). *See* C.R.S. § 24-10-101, et seq.; *Trinity Broadcasting of Denver v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993). "Public employees," as defined by the CGIA, are immune from all claims that lie or could lie in tort, unless the claim falls within the specifically enumerated areas for which immunity has been waived, or unless the act or omission causing the injury was willful and wanton. *See* C.R.S. § 24-10-118(2); *Moody v. Ungerer,* 885 P.2d 200, 204 (Colo. 1994).

"Whether a plaintiff has pled sufficient facts to state a claim alleging that a public employee's acts or omissions were willful and wanton is a threshold determination to be made by the court." *Gray v. University of Colo. Hosp. Auth.,* 284 P.3d 191, 198 (Colo. App. 2012) (citing *Rohrbough v. Stone,* 189 F. Supp. 2d 1088, 1097 (D. Colo. 2001)). Even if the Court determines that willful and wanton conduct has been sufficiently pled, the inquiry does not end there. Where a public employee raises the defense of sovereign immunity, the Court "shall suspend discovery . . . except [that which is] necessary to decide the issue of sovereign immunity." *Martinez v. Estate of Bleck,* 379 P.3d 315, 319 (Colo. 2016) (quoting C.R.S. § 24-10-118(2.5)). The Court must then conduct an evidentiary hearing to determine whether the defendant acted in a willful and wanton manner. *Id.* at 322.

## III. ARGUMENT

### A. <u>First Claim for Relief</u>:  Plaintiff Did Not Have a Due Process Property Interest in Continued Employment or Rank at the Park County Sheriff's Office.

(1) <u>Plaintiff did not have a property interest in his employment or rank.</u>

Plaintiff has never possessed a constitutionally protected property interest in his position or employment at the Park County Sheriff's Office. An individual has a property interest in government employment only if he has a "legitimate claim of entitlement" to continued employment that is grounded in an "independent source such as state law." *Williams v. McKee*, 655 Fed. App'x 677, 686 (10th Cir. 2016) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "'(I)f state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.'" *Nicastle v. Adams Cnty. Sheriff's Office*,

2011 WL 1598062, *4 (D. Colo. 2011) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).  The same principle applies when determining whether an individual has a property right in a particular employment status.  *Id.*

Federal courts have addressed whether employees of a sheriff's office possess a property interest in continued employment or rank.  The decisions of the Tenth Circuit and this Court consistently hold that they do not.  These decisions are based upon the language of Colorado statute, **C.R.S. § 30-10-506**, which unequivocally vests county sheriffs with exclusive and final decision-making authority over the employment of personnel in the sheriff's office.  C.R.S. § 30-10-506 provides in relevant part as follows:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

C.R.S. § 30-10-506.

Federal courts have held that pursuant to C.R.S. § 30-10-506, county sheriffs "have exclusive control over the hiring and firing of their employees."  *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002).  A sheriff has the authority to "appoint as many deputies as the sheriff may think proper and revoke such appointments at will."  *Williams*, 655 Fed. App'x at 686.  C.R.S. § 30-10-506 "provides procedural detail but does not place substantive restrictions on the discretion of a sheriff to revoke an appointment or to demote an employee."  *Nicastle*, 2011 WL 1598062, at *5.  Nor does C.R.S. § 30-10-506 "create a property interest in a

particular rank held by a sheriff's employee."  *Id.*  "[E]ven self-imposed limitations on [a sheriff's] right to discharge employees at will are invalid."  *Williams*, 655 Fed. App'x at 686-87 (citing *Bristol*, 312 F.3d at 1219); *see also Seeley v. Bd. of Cty Comm'rs*, 791 P.2d 696, 700 (Colo. 1990) (en banc) (holding a county sheriff does not possess the statutory authority to limit his power to discharge his deputy "'at his pleasure.'").

Plaintiff did not possess a Due Process property interest in his continued employment at the Park County Sheriff's Office or in his rank as a Senior Patrol Sergeant in light of C.R.S. § 30-10-506 and clearly established precedent.  Pursuant to C.R.S. § 30-10-506, Sheriff Wegener's authority over Plaintiff's employment was at-will, exclusive, and final.  As an at-will employee, Plaintiff did not have a property interest in his employment and could be terminated without cause or notice.  *See Williams*, 655 Fed. App'x at 686.  In *Williams*, the plaintiff, a former sheriff's office employee, alleged that the sheriff violated his Fourteenth Amendment due process rights by terminating his employment without notice.  *Id.*  The trial court held, and the Tenth Circuit affirmed, that because of the sheriff's authority to terminate the employment of his deputies at will pursuant to C.R.S. § 30-10-506, the plaintiff did not have such a right.  *Id.* at 687.  Like the plaintiff in *Williams*, Plaintiff argues he had a constitutional property interest in his employment at the Park County Sheriff's Office.  As the conclusion reached by the *Williams* court shows, this is incorrect as a matter of Colorado law.

The *Williams* court also addressed whether local government policies that provide what might appear to be procedural protections create a Due Process property interest.  The plaintiff in *Williams* argued that county personnel policies, which specified

6

certain procedures for appealing his termination and the opportunity for a hearing, granted him a property interest in his employment.  The Tenth Circuit affirmed that, because sheriffs "have exclusive control over the hiring and firing of their employees . . . and even self-imposed limitations on their right to discharge employees at will are invalid," such local policies and procedures do not create a constitutionally protected property interest.[1]  *Id.* (citing *Bristol*, 312 F.3d at 1219).

---

[1] Like the conclusion reached in *Williams*, the policies and procedures of Park County, as set forth by the Park County Employee Handbook ("Handbook")—which applied to Plaintiff—do not create a Due Process property interest.  In fact, the Handbook clearly and conspicuously disclaims any entitlement to "for cause" employment.   Rather, numerous provisions of the Handbook plainly state that Plaintiff was an employee "at will."  Immediately following the Handbook's cover page, in bold, capitalized, and sixteen-point font, it states:

> **EMPLOYMENT AT PARK COUNTY IS "AT WILL." THIS MEANS THAT EMPLOYEES ARE FREE TO RESIGN THEIR EMPLOYMENT AT ANY TIME, FOR ANY REASON OR NO REASON WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT PRIOR NOTICE.   THE COUNTY RETAINS THE RIGHT TO TERMINATE AN EMPLOYEE'S EMPLOYMENT AT ANY TIME FOR ANY REASON OR NO REASON, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT PRIOR NOTICE.**

Again, Section 1.1 of the Handbook, entitled "**ABOUT THE HANDBOOK**," states: "Nothing contained in this Handbook is intended to nor does it create an employment contract, expressed or implied, between Park County and any of its employees."

Again, Section 12 of the Handbook, entitled "**DISCIPLINARY ACTIONS**," states: "Nothing in this section is intended to change or modify the 'AT WILL' nature of County employment."

Yet again, in Section 12.1 "DISCIPLINE AND CORRECTIVE ACTIONS," the Handbook states that "disciplinary action may be taken in any order with or without reference to any other actions.   Corrective actions need not be imposed in any particular order or progression."

Defendants acknowledge that the provisions of the Handbook are not specifically referenced in Plaintiff's Complaint.  Plaintiff opens the door to the Court's consideration of the Handbook by alleging that "the actions taken against [him] were taken pursuant to the custom, policy, and practice of the BOCC and the Sheriff's Office."  Compl. ¶ 45.  The Handbook's clear and conspicuous disclaimers underscore that Plaintiff did not have a

The same analysis and conclusion applies to an employee's rank.  *See Nicastle*, 2011 WL 1598062, at *5.  In *Nicastle*, the plaintiff argued he had a property interest in his rank as a lieutenant in a county sheriff's office.  *Id.* at *4.  Looking to C.R.S. § 30-10-506, the court held he did not.  *Id.* at *5.  Although C.R.S. § 30-10-506 "provides procedural detail," the *Nicastle* court held the statute "does not place substantive restrictions on the discretion of a sheriff to revoke an appointment or to demote an employee."  *Id.*  Here, Plaintiff alleges he had a Due Process property interest in his rank as Patrol Senior Sergeant.  Because of Sheriff Wegener's statutory authority to demote employees at will, this is also incorrect as a matter of Colorado law.

Against the backdrop of the clear and consistent case law presented above, Plaintiff cites sections of the Park County Sheriff's Office Policy and Procedures Manual ("Manual"), in an effort to argue that the Manual confers "various due process guarantees."  *See* Compl. ¶¶ 14-19.  Specifically, Plaintiff alleges that Policy 320 provides employees with "pre-deprivation due process, including notice of its intent to discipline and an opportunity for the employee to respond . . . as well as post-deprivation process, including a detailed appeals process within the Sheriff's Office."  *Id.* ¶ 19.  Under the reasoning of *Williams* and *Nicastle*, this argument fails.  The policies and procedures set forth in the Manual neither alter nor dilute Sheriff Wegener's exclusive and final authority conferred by C.R.S. § 30-10-506 over the employment decisions in his Office.  *Williams*, 655 Fed. App'x at 686; *Seeley*, 791 P.2d at 700.

---

"legitimate claim of entitlement to" his employment or rank as Patrol Senior Sergeant at the Park County Sheriff's Office.  *See Williams*, 655 Fed. App'x at 686.  A copy of the Handbook is available upon request.

Plaintiff cites to the Manual, but obviously ignores the fact he was an "at will" employee. **Manual Policy number 309(IV)(A)(4)** states:

> The Sheriff's Office is an "employment at will" employer. Sworn employees serve "at the pleasure" of the Sheriff. Both the Employee and the Sheriff's Office have the right to end employment at any time. Employees may be dismissed for reasons discussed in Chapter III, Section 320, Disciplinary Action.

Plaintiff also ignores **Manual Policy number 320(IV)(F)**, which states, "The Sheriff reserves the ability to mandate disciplinary action to a greater or lesser level than the chain of command's recommendation." *See* "Series 300" of Manual, setting forth the Sheriff's Office "Personnel" policies and procedures, attached as **Exhibit A**.[2] Plaintiff does not allege any factual basis, from the Manual or elsewhere, that his position or employment was terminable for cause. *See* Compl. ¶ 49. Nowhere in "Series 300" does the Manual state that Plaintiff can be terminated or disciplined only "for cause." *See* Ex. A. Without any such support in the Manual, Plaintiff's conclusory allegation that "the Office's Policies" defined "cause" is a blatant misstatement. The Complaint does accurately acknowledge Sheriff Wegener's final decision-making authority. The Complaint admits the Manual "is published by the authority vested in Sheriff Fred Wegener," *see* Compl. ¶ 14, and that "Sheriff Wegener had final decision-making authority over all personnel decisions pertaining to Office employees," *id.* ¶ 45.

---

[2] The Court may consider the text of the Manual without converting the Motion into one for summary judgment because Plaintiff refers to the Manual in his Complaint and makes it central to his Due Process claims. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

In sum, it is well-established that Plaintiff did not possess a Due Process property interest in his continued employment or rank at the Park County Sheriff's Office, regardless of any personnel policies and procedures.  The Manual did not create substantive restrictions on Defendant Wegener's statutory authority to determine Plaintiff's employment at will.  Plaintiff's failure to allege a property interest protected by the Due Process Clause is fatal to his claim.  On this basis alone, the Court should dismiss Plaintiff's Due Process property interest claim pursuant to Fed. R. Civ. P. 12(b)(6).

(2) Plaintiff's employment was not terminated; Plaintiff quit.

Plaintiff's employment at the Park County Sheriff's Office was not terminated; Plaintiff quit.  *See* Compl. ¶ 43.  Plaintiff alleges, without factual support, that he was "constructively discharged" because the "inappropriate conduct of Defendants Wegener and Hancock" made his working conditions "intolerable."  *Id.* ¶ 35.  However, the facts alleged in the Complaint do not add up to a plausible claim for "constructive discharge." Plaintiff concedes his resignation was prompted by his own conclusion that "it was no longer reasonable for him to continue working for the Sheriff's Office."  *Id.*  An undesirable demotion and wounded pride are insufficient grounds for a constructive discharge claim.  *See Lauck v. Campbell Cty.*, 627 F.3d 805, 813 (10th Cir. 2010) (affirming summary judgment on deputy's constructive discharge claim, holding that due process does not protect against an injury to a plaintiff's pride or ego).  Plaintiff quit the same day as his demotion.  *Id.* ¶ 43.  Plaintiff never assumed his new post or allowed time to elapse by which he could judge whether his new working conditions were

tolerable or not.  Plaintiff was not "discharged," constructively or otherwise.  Instead, Plaintiff's employment ended as the result of his own calculated decision.

(3) <u>Defendant Wegener was solely responsible for the decision to demote Plaintiff.</u>

Plaintiff fails to allege any facts showing that any Defendant other than Sheriff Wegener was responsible for demoting Plaintiff.  Plaintiff concedes that only Defendant Wegener, not Defendant Hancock, carried out the demotion.  *Id.* ¶¶ 35-37.  Plaintiff alleges the Defendant Board "delegated final decision-making authority to Sheriff Wegener to discipline Sheriff's Office employees," *id.* ¶ 45, but in light of C.R.S. § 30-10-506, this allegation is incorrect as a matter of Colorado law.  Plaintiff also fails to allege any policies or customs of the Park County Sheriff's Office that served as the "moving force" of Plaintiff's alleged Due Process violation.  Thus, no Defendant, other than Defendant Wegener, is alleged to have personally participated in the decision to demote Plaintiff or to have had the authority to do so.  On this basis, Plaintiff's First Claim should be dismissed with respect to Defendants Hancock, the Board, and the Sheriff's Office.

(4) <u>Defendant Wegener and Defendant Hancock possess qualified immunity.</u>

Finally, Plaintiff fails to overcome Defendant Wegener's and Defendant Hancock's qualified immunity.  "Qualified immunity protects public officials from individual liability in a § 1983 action unless the officials violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Workman v. Jordan,* 32 F.3d 475, 478-79 (10th Cir. 1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  A plaintiff bears a "heavy two-part burden" when the defendant

pleads the defense of qualified immunity. *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995). The plaintiff must show that (1) "the defendant's actions violated a constitutional or statutory right," and (2) the right "allegedly violated [was] clearly established at the time of the conduct at issue." *Id.* "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 1535 (quotation omitted). Unless the plaintiff carries its two-fold burden, the defendant prevails.

Defendants Wegener and Hancock possess qualified immunity for Due Process claims asserted against them under Section 1983 in their individual capacity. *Brown v. Montoya*, 662 F.3d 1152, 1166-67 (10th Cir. 2011). Plaintiff fails to carry his "heavy two-part burden." Defendant Wegener's act in demoting Plaintiff "at will" pursuant to C.R.S. § 30-10-506 was not a "violation" of a constitutional right, because Plaintiff did not possess such a right. Clearly established law supports the Sheriff's statutory authority to carry out the demotion. Plaintiff also does not allege any personal participation by Defendant Hancock in effectuating Plaintiff's demotion. Individual liability under 42 U.S.C. § 1983 must be based on the defendant's personal participation in the allegedly unconstitutional conduct. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted). Defendants Wegener and Hancock are immune from liability as to Plaintiff's Due Process property interest claim.

For the reasons stated above, Plaintiff fails to state a claim for deprivation of a Due Process property right. Plaintiff's First Claim for Relief should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**B.** <u>Second Claim for Relief:</u>  **Plaintiff Fails to State a Claim of Retaliation for the Exercise of His First Amendment Right to Freedom of Association.**

The First Amendment protects an individual's right to "expressive association," which is defined as the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  To constitute the sort of "expressive association" the First Amendment protects, the association must be for the purpose of engaging in First Amendment activities.  *Roberts*, 468 U.S. at 618.  The Constitution does not recognize a "generalized right" of free association or "social association." *Dillon v. Twin Peaks Charter Academy*, 406 Fed. App'x. 253, 259 (10th Cir. 2010); *City of Dallas*, 490 U.S. at 25.  While "[i]t is possible to find some kernel of expression in almost every activity a person undertakes . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas*, 490 U.S. at 25.

    (1) <u>Plaintiff fails to allege he was engaged in activity that triggers the protection of the First Amendment.</u>

Plaintiff's First Amendment right to "expressive association" was not violated because Plaintiff never actually engaged in First Amendment activity.  Plaintiff's unclear and unspecific allegations leave Defendants to speculate what First Amendment activity Plaintiff was engaged in and for which he believes First Amendment protection for "expressive association" is triggered.  The extent of the allegations pertaining to the claim might be as follows:

- At an unspecified time after February 24, 2016, "Plaintiff Tonjes and Undersheriff Gore discussed the events at the Wirth residence" and both expressed the view "that the deaths of Cpl. Carrigan and Mr. Wirth . . . were caused by the inappropriate and reckless orders of Sheriff Wegener and Capt. Hancock." Compl. ¶ 28. **This discussion did not occur in the presence of any Defendant.**

- Undersheriff Gore informed Plaintiff of "hostile and inappropriate conduct" by Defendant Wegener after Mr. Gore was "angrily excluded" from a debriefing on February 26, 2016. *Id.* ¶ 29.

- Plaintiff and Undersheriff Gore together visited Captain Hancock at his home on February 26, 2016, where "the Wirth situation was discussed." *Id.* ¶¶ 31-32. "Undersheriff Gore told Hancock that he held Sheriff Wegener fully responsible and to blame for the unnecessary violence, death, and injuries at the Wirth eviction." *Id.* ¶ 32. **No further details are provided. There are no allegations that Plaintiff himself expressed an opinion at this meeting.**

- Plaintiff alleges he "exercised his First Amendment Freedom of Association by associating with former Undersheriff Gore regarding their joint belief that Defendants Wegener and Hancock had acted recklessly and inappropriately regarding the Wirth situation." *Id.* ¶ 54. **This so-called "association" is based on only one private conversation between Gore and Plaintiff.** *Id.* ¶ 28. **Plaintiff never expressed this "joint belief" to either Defendant.** *See id.* ¶¶ 29-34.

Plaintiff fails to allege he personally engaged in "speech" or any other activity protected by the First Amendment. The nebulous "association" between Plaintiff and Undersheriff Gore, as alleged and described above, is insufficient to constitute the type of associational activity that falls within the First Amendment's protection. Plaintiff does not identify what, if anything, he personally said during the discussion at Captain Hancock's home. *See id.* ¶¶ 31-34. Plaintiff only alleges that Undersheriff Gore—not Plaintiff—told Captain Hancock that "he [Gore] held Sheriff Wegener fully responsible and to blame" for the tragic outcome of the Wirth eviction. *Id.* ¶ 32. Plaintiff effectively

14

asks the Court to believe he was demoted because he was merely *present* in Captain Hancock's home when Undersheriff Gore expressed an opinion that appeared to upset Captain Hancock.  Plaintiff does not allege he personally expressed an opinion in Captain Hancock's home on February 26, or to Captain Hancock or Sheriff Wegener at any time.  *See* Compl. ¶¶ 32, 34.  The single instance in which Plaintiff personally expressed such an opinion occurred in private, with former Undersheriff Gore.  Compl. ¶ 28.  An isolated "kernel of expression" is insufficient to bring Plaintiff's alleged "association" within the protection of the First Amendment.  *See Dillon*, 406 Fed. App'x at 259.  The Complaint's failure to allege that Plaintiff was engaged in constitutionally protected activity requires dismissal of Plaintiff's second claim.

(2) Plaintiff fails to allege a plausible retaliatory motive.

Plaintiff also fails to allege facts showing a causal connection between his alleged opinion and his demotion, so as to allege a plausible retaliatory motive.  Plaintiff does not allege any facts in support of the speculative allegation that Defendants Hancock and Wegener "knew or suspected," prior to the visit to Hancock's home on February 26, that Plaintiff and Undersheriff Gore held their alleged view regarding the Defendants' handling of the Wirth situation.  Only Undersheriff Gore expressed a viewpoint during the visit to Captain Hancock's home.

The Complaint further fails to sufficiently allege facts showing that Defendant Wegener was motivated by Plaintiff's "association" with Undersheriff Gore's opinion in demoting Plaintiff.  *See* Compl. ¶ 57.  According to the Complaint, after the visit, Captain Hancock reported "the statements Gore made" to Defendant Wegener.  *Id.* ¶ 34.  The

15

very next work day, Defendant Wegener demoted Plaintiff to Patrol Deputy for 'yelling' at Cpl. Carrigan and Master Deputy Edward Goodman.  *Id.* ¶¶ 35-36.  There are no facts in the Complaint to support Plaintiff's conclusory assertion that the demotion was "motivated by [Defendants'] desire to retaliate against [Plaintiff] because of his opinions and associations regarding the Wirth mishap."  *Id.* ¶ 39.

(3) Defendant Wegener and Hancock possess qualified immunity.

Defendant Wegener and Hancock possess qualified immunity from Plaintiff's First Amendment retaliation claim.  *See e.g. Reichle v. Howards*, 566 U.S. 658 (2012) (analyzing qualified immunity in context of First Amendment free speech retaliation claim).  Plaintiff fails to allege facts to overcome Defendant Wegener's and Hancock's qualified immunity.  Plaintiff has not sufficiently alleged the exercise of a clearly established First Amendment right.  Plaintiff never expressed his views regarding the handling of the Wirth situation to either Defendant.  *See* Compl. ¶¶ 28-32.  Assuming Plaintiff's "joint belief" silently held in common with former Undersheriff Gore is a form of First Amendment expression, *see* Compl. ¶54, Plaintiff still fails to allege facts to show that Defendants would plausibly know an "association" protected by the First Amendment existed.  Neither Defendant violated Plaintiff's First Amendment rights. Defendant Wegener decided to demote Plaintiff pursuant to legitimate statutory authority and for an articulable non-retaliatory motive.  Defendant Hancock did not personally participate in the final decision.  Plaintiff fails to show that Defendants Wegener and Hancock engaged in any conduct that violated Plaintiff's clearly established constitutional rights.

16

**C.** <u>**Third Claim for Relief:**</u>  **Plaintiff Fails to Allege a Deprivation of a Due Process Liberty Interest under the Fourteenth Amendment.**

To establish a Fourteenth Amendment claim that Defendants infringed Plaintiff's liberty interest in his good name and reputation, Plaintiff must prove the following four elements:  (1) the statements must impugn the good name, reputation, honor, or integrity of the employee; (2) the statements must be false; (3) the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and (4) the statements must be published.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1329 (10th Cir. 2004) (citation omitted).  An individual is entitled to a name-clearing hearing only after showing that a liberty interest in his good name and reputation was infringed. *Id.*

In determining whether a defendant's allegedly defamatory statement was made in the course of the termination of employment, the Court must examine both the nature and the timing of the statement.  *Renaud v. Wyoming Dept. of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000).  Resignation from employment does not constitute "in the course of" the termination of employment.  *Sandoval*, 388 F.3d at 1329.  To the extent a plaintiff alleges that other employment opportunities are "foreclosed," the plaintiff must show he is "categorically ineligible" for other employment opportunities.  *Id.*  "The fact that other employment is more difficult to obtain, though not impossible, is not sufficient to establish foreclosure of other opportunities."  *Nicastle*, 2011 WL 1598062, at *5 (citing *Sandoval*, 388 F.3d at 1329).  Allegedly defamatory statements are non-actionable under Section 1983 when they are not made by the plaintiff's government employer.

*Rogers v. Alezopulos*, 549 Fed. App'x 771, 774 (10th Cir. 2013) (citing *Sandoval*, 388 F.3d at 1329).

    (1) <u>Plaintiff fails to allege the deprivation of a Due Process liberty interest.</u>

    Plaintiff's Complaint does not allege facts that would satisfy the first, second, or third elements of a Due Process liberty interest claim.  First, Plaintiff alleges only one factual example of a "stigmatizing" statement:  On March 2, 2016, Sheriff Wegener allegedly told a reporter "he had made the decision to demote Sgt. Tonjes and that 'it was related to the handling of how the deputies responded [at the Wirth scene].'"  Compl. ¶ 44.  This is the only defamatory statement attributed to any Defendant.[3]  Any "stigma" attached to the statement is imagined and speculative.  Plaintiff has not alleged any facts suggesting he was stigmatized as a result of the statement.  Plaintiff had already been demoted and quit when Defendant Wegener made the statement, and therefore any "stigma" from the statement could not have affected Plaintiff's employment at the Sheriff's Office.  *See* Compl. ¶ 44.  The Complaint is also devoid of factual allegations that Plaintiff's employment opportunities were subsequently "foreclosed."  *See e.g. id.* ¶¶ 46, 85.

    Second, Defendant Wegener's alleged statement—that his decision to demote Plaintiff was "'related to the handling of how the deputies responded'"—is true.  *See* Compl. ¶ 44.  Plaintiff alleges his demotion and resignation were the result of a discussion he and Undersheriff Monte Gore had with Defendant Hancock at Hancock's

---

[3] The statement made by the news reporter in a subsequent news report, *see* Compl. ¶ 44, is not actionable under Section 1983, and therefore must be disregarded for purposes of Plaintiff's claim.  *Rogers*, 549 Fed. App'x at 774.

home on February 26, 2016, in which "the Wirth situation was discussed." *Id.* ¶ 32.
Plaintiff alleges that Defendants Wegener and Hancock "decided to discipline or even
fire Plaintiff Tonjes and Undersheriff Gore *because of their opinions regarding how the
Wirth situation was handled.*" *Id.* (emphasis added).  Clearly, Defendant Wegener's
statement that his decision to demote Plaintiff was "'related to the handling of how the
deputies responded'" is not, as Plaintiff alleges, "untrue." *Id.* ¶ 62.

Third, Plaintiff fails to allege facts showing that Defendants made defamatory
statements "in the course of" Plaintiff's "termination" from employment.  No Defendant
terminated Plaintiff's employment.  Plaintiff quit.  Compl. ¶ 43.  Plaintiff alleges his
resignation was involuntary, *id.*, but such a fact, assumed to be true, is still insufficient to
constitute a "termination" of employment. *Sandoval*, 388 F.3d at 1329.  Furthermore,
Defendant Wegener made the allegedly defamatory statement two days after Plaintiff
tendered his resignation—not "in the course of" resigning.  Compl. ¶¶ 43-44.  Plaintiff
has not alleged any facts showing he was thereafter "foreclosed" from other
employment opportunities. *See id.* ¶ 46.  Plaintiff's conclusory allegation that he
"suffered loss" in "ability to find re-employment," *id.* ¶ 85, is insufficient to allege
"foreclosure" from other opportunities.

(2) Plaintiff fails to allege a Due Process liberty interest claim against the Board.

In paragraph 45 of his Complaint, Plaintiff implicates the Board for not having a
policy allowing Plaintiff to appeal the defamatory statements made against him to the
Board.  To the extent Plaintiff is alleging the Board deprived him of a liberty interest by
not having such a policy, such argument fails.  As discussed below, the Board does not

have authority to review Sheriff Wegener's employment decisions.  The absence of a policy to review Sheriff Wegener's employment decisions comports with C.R.S. § 30-10-506, which authorizes Sheriff Wegener to have full decision-making authority over employment at the Park County Sheriff's Office.

Because Plaintiff has failed to allege facts showing a deprivation of a liberty interest occurred, Defendants were never constitutionally required to provide a "name-clearing hearing."  Plaintiff again fails to allege facts showing that Defendant Wegener or Defendant Hancock acted, or failed to act, in a way that deprived Plaintiff of a clearly established constitutional right, so as to overcome Defendant Wegener and Hancock's qualified immunity.  Plaintiff's Third Claim for Relief should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

* * *

Upon dismissal of the Plaintiff's Section 1983 claims, only state law claims for breach of contract, promissory estoppel, intentional interference with contract, and defamation remain.  The Court should decline to exercise supplemental jurisdiction over these remaining state law claims.  *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (recognizing that when all federal claims are dismissed before trial, a district court should generally decline to exercise pendant jurisdiction over state-law claims).  In the alternative, should the Court decide to exercise jurisdiction over Plaintiff's state law claims, each of these claims should be dismissed for failure to state a claim.

**D. <u>Fourth Claim for Relief:</u>  Plaintiff Fails to State a Plausible Claim for Breach of Contract.**

Employees in Colorado are "presumed to be employed 'at-will' and can be

terminated 'without cause or notice' without giving rise to a cause of action." *Williams*, 655 Fed. App'x at 686 (citing *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)).  The at-will rule applies equally to government employees.  *Id.*  Government employees "'hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law.'"  *Id.* (quoting *Fremont RE-1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987) (en banc).  "A sheriff in Colorado 'may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will.'"  *Williams*, 655 F. App'x at 686 (citing C.R.S. § 30–10–506).

    As discussed in Section I(A)(1) above, Plaintiff was an employee at will.  His employment and rank at the Park County Sheriff's Office is, and always has been, subject to Sheriff Wegener's exclusive and final authority pursuant to C.R.S. § 30-10-506 to determine the appointments of his deputies "at will."  Plaintiff alleges the Park County Sheriff's Office Manual "constitutes a contract between Defendants and Mr. Tonjes" whereby Mr. Tonjes "was promised that he would not be disciplined or demoted except for serious cause," *see* Compl. ¶ 68.  However, Plaintiff cites nothing in the Manual that overrides Sheriff Wegener's statutory authority to demote Plaintiff from the rank of Patrol Senior Sergeant without cause or notice.  In fact, the contrary is true.  The Manual specifically declares that Plaintiff's employment is "at will" and that Sheriff Wegener reserves the right to mandate disciplinary action at the level of his choosing. *See* Ex. A, Policy No. 309(IV)(A)(4); Policy No. 320(IV)(F).[4]

---

[4] The provisions of the Park County Employee Handbook, referenced in footnote 1 on

By operation of Colorado law and by the plain and unequivocal disclaimers contained in the Park County Sheriff's Office Manual, there is simply no plausible claim that Plaintiff had a contract of employment at the Park County Sheriff's Office.  Without a contract, Plaintiff fails to state a claim for a breach of contract against either the Board or the Park County Sheriff's Office.

### E. Fifth Claim for Relief:    Plaintiff Fails to Allege a Plausible Claim for Promissory Estoppel.

Plaintiff alternatively alleges a claim of promissory estoppel against the Board and the Sheriff's Office.  The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.  *Walsh v. Zabors*, 178 F. Supp. 3d 1071, 1085 (D. Colo. 2016) (citing *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008)).

Neither the Board nor the Sheriff's Office made "promises" to Plaintiff concerning his employment.  Plaintiff was employed at will—a fact conspicuously disclosed in the Park County Sheriff's Office Manual, *see* Ex. A.  Plaintiff alleges the Defendant Board and the Defendant Sheriff's Office "made representations" that Plaintiff "would not be disciplined or demoted except for serious cause" *see* Compl. ¶ 73, but Plaintiff offers no

---

page 7 above, reiterate Plaintiff's "at will" employment status. Plaintiff cannot argue he was unaware of these provisions, because on September 29, 2013, he signed a written acknowledgment of his receipt of the Handbook. The signed acknowledgment states: "I acknowledge and understand that this handbook is not a contract of any kind, whether express or implied, or a promise of any kind from the County to me."

facts or citations to the Manual or other authority to support this conclusory allegation.

To the extent Plaintiff alleges he "reasonably relied" upon the disciplinary procedures contained in the Manual, *see e.g.* Compl. ¶ 42, Plaintiff again fails to address the Manual's disclaimer that Plaintiff was employed "at will," as well as the Sheriff's ability to mandate disciplinary action at the level the Sheriff deems appropriate. *See* Ex. A, Policy 309(IV)(A)(4); 320(IV)(F).  Plaintiff also fails to allege facts showing how he relied on the alleged promises to his detriment.  There is no detrimental reliance because Plaintiff quit within a few hours of being demoted.  *See* Compl. ¶¶ 43, 45. Plaintiff's Complaint fails to allege facts to support a plausible promissory estoppel claim, and the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

F.  **Sixth Claim for Relief:  Plaintiff's Intentional Interference with Contract Claim is Barred by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101, *et seq.***

Plaintiff asserts a claim against Sheriff Wegener and Captain Hancock individually for intentional interference with contract.  Tortious interference claims lie in tort.  *See e.g. Preston v. Atmel Corp.,* 560 F. Supp. 2d 1035, 1037 (D. Col. 2008). Public employees such as Defendants Wegener and Hancock are immune from all claims that lie or could lie in tort, unless the claim falls within the specifically enumerated areas for which immunity has been waived, or unless the act or omission causing the injury was willful and wanton.[5]  C.R.S. § 24-10-118(2); *Moody v. Ungerer,* 885 P.2d 200,

---

[5] The CGIA defines the term "public employee" as "an officer, employee, servant, or authorized volunteer of the public entity. . . ."  C.R.S. § 24-10-103(4)(a).  Wegener is the elected Sheriff of Park County.  Hancock was, at all relevant times, an employee of the Sheriff's Office.  Both are public employees for purposes of the CGIA.

204 (Colo. 1994).  Immunity has not been waived for Defendants' alleged "interference" with Plaintiff's "contract."[6]  *See* C.R.S. § 24-10-106.  The Court lacks subject matter jurisdiction over Plaintiff's Sixth claim, and should dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(1).

Further, the CGIA requires a plaintiff asserting that a public employee has engaged in willful and wanton conduct to set forth "the specific factual basis of such allegations . . . in the complaint."  C.R.S. § 24-10-110(5)(a).  Failure to plead the specific factual basis of an allegation of willful and wanton conduct shall result in the dismissal of the claim for failure to state a claim.  C.R.S. § 24-10-110(5)(b); *Peterson v. Arapahoe Cnty. Sheriff,* 72 P.3d 440, 444 (Colo. App. 2003).  Conclusory allegations are insufficient.  *Wilson v. Meyer,* 126 P.3d 276, 282-83 (Colo. App. 2005).  "Whether a plaintiff has pled sufficient facts to state a claim alleging that a public employee's acts or omissions were willful and wanton is a threshold determination to be made by the court."  *Gray v. University of Colo. Hosp. Auth.,* 284 P.3d 191, 198 (Colo. App. 2012) (citing *Rohrbough v. Stone,* 189 F. Supp. 2d 1088, 1097 (D. Colo. 2001)). The standard for making this threshold determination is set forth in *Gray*:

> Our Supreme Court has not adopted a controlling definition of the phrase "willful and wanton" for purposes of the CGIA.  It has, however, referred to three definitions.  As pertinent here, those definitions indicate that, to be

---

[6] One might infer that the alleged "interference" with Plaintiff's "contract" was his pending demotion or the alleged "constructive discharge."  However, the Complaint fails to allege that Captain Hancock was in any way involved in the decision to demote Plaintiff.  As to Sheriff Wegener, he is the head and alter ego of the Sheriff's Office, Plaintiff's employer. A party cannot tortiously interfere with its own contract and there was no "third party." This entirely defeats any tortious interference claim as it pertains to Plaintiff's demotion and supposed constructive discharge.  *See Koch v. Bd. of County Comm'rs of Costilla County,* 774 F. Supp. 1275, 1276 (D. Colo. 1991).

> willful and wanton, public employees must be consciously aware that their acts or omissions create danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk.
>
> Thus, a complaint must "do more than merely assert" that a public employee's acts or omissions were willful or wanton; it must, at a minimum, also "set forth facts to support a reasonable inference" that the employee was consciously aware that his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk.

*Gray,* 284 P.3d at 198-99 (citations and internal citations omitted).

Plaintiff's Complaint fails to allege facts that would support the elements of an intentional interference with contract claim or a determination that Wegener's and Hancock's conduct was willful and wanton.  The Complaint contains only four factual allegations pertaining to the claim.  They are as follows:

- Plaintiff had an employment contract.  Compl. ¶ 79.
- Defendants [Wegener and Hancock] knew that Plaintiff had such a contract and/or had knowledge of facts which should have caused them to know of the contract.  *Id.* ¶ 80.
- Defendants, with this knowledge, intentionally and improperly induced the third Parties to breach the contract.  *Id.* ¶ 81.
- Defendant's conduct was willful and wanton.  *Id.* ¶ 82.

As discussed in Section 4 of this Motion, Plaintiff had, as a matter of law and fact, no employment contract with the Park County Sheriff's Office.  Plaintiff served in his post at will.  C.R.S. § 30-10-506; *Williams,* 655 Fed. App'x at 686-88.  Assuming an employment contract existed, the allegations referenced above fail to allege that Sheriff Wegener and Captain Hancock were "consciously aware that [their] acts or omissions created danger or risk to the safety of others, and that [they] acted, or failed to act, without regard to the danger or risk."  *Gray,* 284 P.3d at 198-99.  The Complaint

25

contains nothing but conclusory allegations and a rote recital of the elements of a claim for intentional interference with contract.  This does not come close to meeting the CGIA's unequivocal requirement that "the specific factual basis" of a public employee's alleged willful and wanton conduct be stated in the Complaint.  This failure requires dismissal of Plaintiff's claim pursuant to C.R.S. § 24-10-110(5)(b) and Fed. R. Civ. P. 12(b)(6).

Should the Court conclude the Complaint alleges facts sufficient to demonstrate willful and wanton conduct on the part of Sheriff Wegener and Captain Hancock, Defendants request the Court to suspend discovery in this matter and order an evidentiary hearing on the issue, as required by *Martinez v. Estate of Bleck*, 379 P.3d 315 (Colo. 2016).

G. **Seventh Claim for Relief:** **Plaintiff Fails to Allege a Plausible Claim for Defamation against Defendant Wegener.**

Plaintiff's Seventh Claim for Relief asserts claims against Sheriff Wegener individually for defamation.  Defamation claims such as this are, of course, tort claims. *See e.g. Gallagher v. Bd. of Trustees for Univ. of N. Colo.,* 18 P.3d 837 (Colo. App. 2001). Immunity has not been waived for Defendant Wegener's alleged defamation, and dismissal of Plaintiff's Seventh claim is proper under Fed. R. Civ. P. 12(b)(1).

Plaintiff also fails to sufficiently allege the elements of a defamation claim or that Defendant Wegener's conduct was willful and wanton.  Plaintiff's Complaint contains only four allegations pertinent to the defamation claim:

- After Plaintiff was constructively discharged, "Sheriff Wegener made false and stigmatizing comments about Sgt. Tonjes designed to scapegoat Sgt. Tonjes and deflect blame away from himself.  For example, on March 2,

2016, he told Brian Maas of Channel 4 News in Denver that he had made the decision to demote Sgt. Tonjes and that 'it was related to the handling of how the deputies responded [at the Wirth scene].' Based on his interview with Wegener, Maas reported that 'a Park County Sargent [sic] was in the process of being demoted and then resigned Monday over the tactics that lead [sic] to the Feb. 24 death of Cpl. Nate Carrigan.'" Compl. ¶ 44.

- "Defendant Wegener made false and stigmatizing statements regarding Plaintiff Tonjes." *Id.* ¶ 84.

- "As a result of Defendant's defamatory statements, Plaintiff Tonjes has suffered loss of reputation and ability to find re-employment." *Id.* ¶ 85.

- "Defendant's defamatory statements were willful and wanton and taken in reckless disregard of [Plaintiff's] rights and feelings." *Id.* ¶ 86.

The allegations contained in paragraphs 84, 85 and 86 of the Complaint are merely conclusory rote recitations of the elements of a defamation claim and must be ignored for purposes of this analysis. *Parker v. Salzman,* 2014 WL 3561119, *9 (D. Colo. 2014). The Court is left with only one factual allegation which, when reduced to its essence, merely asserts that Sheriff Wegener stated Plaintiff's demotion was "related to the handling of how the deputies responded" and that this statement was untrue. Compl. ¶ 44. To the contrary—this statement, if made, was entirely true and thus not defamatory. It is also constitutionally protected since Plaintiff is a public figure and will be unable to establish the "actual malice" required by *New York Times v. Sullivan,* 376 U.S. 254 (1964).

Assuming Wegener's alleged statement was false and not constitutionally privileged, it falls far short of stating facts sufficient to show willful and wanton conduct. The case of *Wilson v. Myer,* 126 P.3d 276 (Colo. App. 2006) is particularly instructive on this point. In *Wilson*, a citizen and candidate for a school board sued a board member for defamation and alleged the board member's conduct was willful and wanton. The

board member had allegedly made false and defamatory statements about the plaintiff (including accusations of criminal conduct) in a school board meeting, which were reported in the local newspaper.  The Court of Appeals affirmed the trial court's dismissal of the defamation claim for failure to state a claim.  The court recited the established rule that "it is not enough for Wilson to have stated general allegations of willful and wanton conduct" because the CGIA requires a "specific factual basis" of willful and wanton conduct in the complaint.  The court applied this rule to defamation claims such as the one posed by Plaintiff here:

> Although "specific factual basis" is not defined in the CGIA, the phrase is unambiguous.  The statute "requires that a plaintiff set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly"; conclusory allegations are insufficient.
>
> Accordingly, to state a claim for defamation against Keck, Wilson was required to do more than merely assert that Keck made statements in reckless disregard of the truth.  She was also required to set forth specific facts to support a reasonable inference that Keck recklessly disregarded the consequences of her actions. . . .
>
> Wilson's second amended complaint may be construed to allege that Keck made specific statements, knowing they were false. But the complaint is devoid of specific facts suggesting that Keck acted recklessly with respect to the consequences of her actions. Wilson did not allege any facts to show that Keck was aware her conduct would cause the alleged harm. . . . Nor did Wilson allege facts to show that Keck's conduct was specifically calculated to cause the alleged harm. . . .
>
> Accordingly, we conclude that Wilson's second amended complaint failed to satisfy the requirements of C.R.S. § 24-10-110(5)(a) and was subject to dismissal under C.R.C.P. 12(b)(5).

126 P.3d at 282-83 (internal citations omitted).

The same analysis applies here.  Plaintiff's Complaint may be construed to allege that Wegener made a statement regarding Plaintiff's demotion, and that the statement was untrue.  It might even be construed to allege that Wegener knew his statement was

false.  But under *Wilson* that is not enough.  Just as in *Wilson,* "the complaint is devoid

of any specific facts suggesting that [Wegener] acted recklessly with respect to the

consequences of [his] actions."  Just as in *Wilson,* Plaintiff "did not allege any facts to

show that [Wegener] was aware [his] conduct would cause the alleged harm."  And just

as in *Wilson*, that failure requires the dismissal of the defamation claim against

Wegener pursuant to C.R.S. § 24-10-105(b) and Fed. R. Civ. P. 12(b)(6).

Accepting every factual allegation of the Complaint as the unvarnished truth,

Plaintiff fails to allege facts sufficient to show willful and wanton conduct.  Under settled

Colorado law, that defect is fatal.  Defendant Wegener is immune from liability for the

tort of defamation under the CGIA and Plaintiff has not alleged any facts sufficient to

establish that Wegener's conduct was willful and wanton so as to deprive Wegener of

that immunity.  The result is that the defamation claim against Wegner must be

dismissed for failure to state a claim.  As with Plaintiff's Sixth Claim for Relief, should

the Court conclude that Plaintiff's Complaint does state a plausible claim for defamation,

Defendant Wegener requests the Court to suspend discovery and order an evidentiary

hearing on the issue of whether Defendant Wegener's conduct was willful and wanton,

as required by *Martinez v. Estate of Bleck, supra.*

### H. The Board of County Commissioners for Park County is Not a Proper Defendant.

With the exception of intentional interference with contract and defamation, all of

Plaintiff's claims are asserted against the Board of County Commissioners for Park

County ("Board").  The Board is not a proper defendant because, pursuant to C.R.S. §

30-10-506, the Board does not have the power to make or review the employment

decisions of Defendant Park County Sheriff Fred Wegener.  Plaintiff further fails to plead facts that demonstrate the Board had any involvement in the actions forming the basis of Plaintiff's claims.  For these reasons, Plaintiff fails to state plausible claims for relief against the Board.

"[A] County Sheriff is a distinct position that operates separately of the County in which he or she serves."  *Isenbart v. Bd. of Cty. Comm'rs of Kit Carson Cty.*, 2012 WL 4378269, at *7 (D. Colo. Sept. 25, 2012).  Boards of county commissioners and county sheriffs are separate entities with distinct powers.  *Bristol*, 312 F.3d at 1219 (citing Colo. Const. art. XIV, §§ 6, 8).  Pursuant to C.R.S. § 30-10-506, "[s]heriffs have exclusive control over the hiring and firing of their employees."  *Id.*  A board of county commissioners is not, and cannot be, the "employer" of county sheriff's office employees.  *Isenbart*, 2012 WL 4378269, at *7.

In actions brought under 42 U.S.C. § 1983, a single employment decision by a county sheriff is an insufficient basis to confer municipal liability upon a board of county commissioners where there is no allegation the municipal entity was the "moving force" behind the alleged injury.  *Id.*  County personnel policies established by a board of county commissioners do not bind a county sheriff.  *Williams*, 655 Fed. App'x at 686 (affirming lower court's ruling).

Plaintiff fails to state any plausible claims for relief against the Board.  Plaintiff's claims are based entirely upon a single alleged adverse employment decision and a single alleged defamatory statement made by Defendant Sheriff Wegener.  Pursuant to C.R.S. § 30-10-506, the Board does not have authority to control Defendant Wegener's

employment decisions.  Plaintiff admits this fact: "Sheriff Wegener had final decision-making authority over all personnel decisions pertaining to [Sheriff's] Office employees."  Compl. ¶ 45.  Plaintiff alleges no facts that suggest the Board was the "moving force" behind Plaintiff's alleged injuries.  As in *Isenbart*, because the Board has no authority over employment matters at the Park County Sheriff's Office, Plaintiff fails to state plausible claims for relief arising under Section 1983 against the Board.

Plaintiff's Complaint is also devoid of any factual basis that the Board participated in the Sheriff's demotion decision.  Plaintiff does not identify any County policy, custom, or practice that serves as the "moving force" of Sheriff Wegener's employment decisions.  *See* Compl. ¶ 45.  And as explained in Section 4 above, the County Handbook promulgated by the Board expressly disclaimed any employment contract.  Where, as here, Plaintiff does not and cannot allege specific facts of the Board's involvement, Plaintiff's claims against the Board cannot survive.

**I. Plaintiff Has Not Alleged a "Policy or Custom" of the Park County Sheriff's Office That Was the "Moving Force" of Plaintiff's Alleged Injuries.**

A local governmental entity may be liable under Section 1983 for an alleged constitutional violation only "when execution of a government's policy or custom . . . inflicts the [alleged] injury."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  For a Section 1983 claim to survive a motion to dismiss, a plaintiff must describe specific acts and policies that "'demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  It is not enough for a plaintiff to merely identify

conduct attributable to a municipal entity; rather, the plaintiff must demonstrate that the municipal entity was the "moving force" behind the alleged injury.  *Board of Cnty. Comm'rs v. Brown*, 520 U.S at 404.

A single personnel decision is insufficient to impute municipal liability under Section 1983, even where that decision is made by a person with final policymaking authority.  *Isenbart*, 2012 WL 4378269, at *7 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404-05).  In *Isenbart*, a county undersheriff terminated the plaintiff's employment, and the county sheriff upheld the termination.  *Id.* at *1.  The plaintiff argued the sheriff's final policymaking authority over her termination imputed liability upon the board of county commissioners, the municipal entity defendant in that case. The Court roundly rejected that argument and granted the defendant's motion to dismiss, holding that "[a] single employment decision by a County Sheriff cannot be deemed a 'policy' that triggers municipal liability when there is no allegation that the municipality was the 'moving force' behind the injury alleged."  *Id.* at *7 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404-05).

Plaintiff fails to allege that an official policy attributable to the Sheriff's Office caused or served as the "moving force" of Plaintiff's demotion and ensuing resignation. The reasoning used in *Isenbart* applies here.  Plaintiff's alleged injury derives from a single personnel decision to demote Plaintiff made by Sheriff Wegener.  *See* Compl. ¶ 35.  This single decision is not sufficient to impute liability upon the Sheriff's Office. Plaintiff has not alleged any facts showing that the Sheriff's Office was the "moving force" behind Sheriff Wegener's decision.  Sheriff Wegener's authority to demote

Plaintiff at will is pursuant to state statute, C.R.S. § 30-10-506, and the Sheriff's Office's internal policies and procedures do not have the power to limit this authority.  *Bristol*, 312 F.3d at 1219; *Nicastle*, 2011 WL 1598062, at *5.  Because Sheriff Wegener's single personnel decision to demote Plaintiff is not sufficient to impute municipal liability upon the Sheriff's Office, Plaintiff's Section 1983 claims brought against the Park County Sheriff's Office must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### J.  Plaintiff Fails to Allege Defendant Hancock's Personal Participation.

Plaintiff has asserted three claims against Defendant Mark Hancock in his individual capacity:  (1) denial of Plaintiff's Due Process property interest pursuant to 42 U.S.C. § 1983; (2) violation of Plaintiff's right to freedom of association under the First Amendment, pursuant to 42 U.S.C. § 1983; and (3) a state law claim for intentional interference with contract.  All three claims fail because Defendant Hancock did not personally participate in any of the alleged events.

Personal liability under 42 U.S.C. § 1983 must be based on the defendant's personal involvement in the allegedly unconstitutional conduct.  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted).  To adequately plead a Section 1983 claim for individual liability and sufficiently put the defendants on notice, the plaintiff must "isolate the allegedly unconstitutional acts of each defendant."  *Robbins v. Oklahoma*, 519 F.3d at 1250.  The use of collective allegations against all defendants or lists of defendants with no distinction as to which conduct is attributed to whom does not provide fair notice of a Section 1983 claim.  *Id.*  A plaintiff's failure to satisfy this pleading requirement is fatal to a Section 1983 individual liability claim and requires

dismissal under the doctrine of qualified immunity.  *See id.*; *see also Brown*, 662 F.3d at

1166.

Plaintiff fails to sufficiently allege the personal participation of Defendant Mark

Hancock in the events surrounding Plaintiff's alleged injuries.  The only conduct Plaintiff

attributes to Defendant Mark Hancock is as follows:

- At an unspecified time after February 24, 2016, Defendant Hancock "knew or suspected" that Plaintiff and former Undersheriff Gore "had expressed concern about [Defendants'] handling of the Wirth situation."  Compl. ¶ 29.

- Defendant Hancock received Plaintiff and former Undersheriff Gore as guests into his home on February 26, 2016.  *Id.* ¶ 31.

- During this visit, "the Wirth situation was discussed."  *Id.* ¶ 32.  The Complaint is silent as to what Defendant Hancock said, if anything, during this discussion. *Id.*

- Plaintiff alleges Defendant Hancock "became angry" in response to Undersheriff Gore's comment that Gore held Sheriff Wegener "fully responsible . . . for the . . . violence, death, and injuries at the Wirth eviction." *Id.* He "appeared to choke" and rose out of his chair "aggressively."  *Id.*

- At an unspecified time after the visit, Defendant Hancock "informed Sheriff Wegener" of the visit and "the statements Gore made regarding the Wirth situation," and together with Sheriff Wegener "decided to discipline or even fire Plaintiff Tonjes and Undersheriff Gore because of their opinions."  *Id.* ¶ 34.

Absent from this list is any allegation that Defendant Hancock personally

implemented any discipline against Plaintiff.  Plaintiff's demotion was implemented

solely by Defendant Sheriff Wegener.  *See* Compl. ¶¶ 39-40, 42.  While Defendants

maintain that Plaintiff did not have a Due Process right to his rank or employment at the

Sheriff's Office, the Complaint is devoid of any facts showing that Defendant Hancock

had a role in disciplining, demoting, or discharging Plaintiff so as to "deprive" him of this

alleged right.  At most, Hancock informed Defendant Wegener of a personal visit paid to him by Plaintiff and Mr. Gore and of Mr. Gore's alleged statement during this visit. Plaintiff asserts that Defendant Hancock, together with Sheriff Wegener, "decided" to "discipline or even fire" Plaintiff, but even if such were true, Defendant Hancock did not have the final authority on such decisions.  Plaintiff admits Defendant Wegener made the final decision and implemented the discipline without Defendant Hancock's involvement.  *See* Compl. ¶¶ 35-36.  Defendant Hancock's lack of participation in the final decision to demote Plaintiff also means Defendant Hancock could not have "interfered" with a contract, assuming one existed.

Plaintiff fails to sufficiently isolate Defendant Hancock's conduct or to sufficiently allege facts showing Defendant Hancock's personal participation in the events that led to Plaintiff's alleged injuries.  Without doing so, it is impossible for Plaintiff to overcome Defendant Hancock's qualified immunity defense.  Defendant Hancock should be dismissed as a Defendant on all claims asserted against him pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

On each and every claim, Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983 are fatally deficient in both the law and the facts.  As to Plaintiff's first claim, Plaintiff did not have a constitutionally protected property interest in his continued employment or rank at the Park County Sheriff's Office.  As to Plaintiff's second claim, Plaintiff fails to allege facts showing activity that invokes First Amendment protection.

As to Plaintiff's third claim, Plaintiff fails to allege facts showing he was deprived of a "liberty interest."  Plaintiff also fails to allege facts showing that Defendant Wegener or Defendant Hancock violated Plaintiff's clearly established constitutional rights, so as to overcome Defendant Wegener's and Defendant Hancock's qualified immunity.

Plaintiff similarly fails to allege plausible state law claims for breach of contract, promissory estoppel, intentional interference with contract, and defamation.  If the Court dismisses Plaintiff's constitutional claims, the Court should decline to exercise jurisdiction over Plaintiff's state law claims.  Plaintiff's state law tort claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Defendants Wegener and Hancock are immune from liability under the CGIA. Plaintiff also fails to allege any facts to assert a plausible claim for relief as to each state law claim.

As to all of Plaintiff's claims asserted against the Board, the Board is not a proper defendant because the Board had no decision-making authority over the personnel decisions within the Sheriff's Office.  Pursuant to C.R.S. § 30-10-506, the power to make those decisions is vested solely and exclusively in Defendant Sheriff Wegener. Plaintiff fails to allege any policy or custom of the Sheriff's Office that was the moving force of Plaintiff's alleged injuries.  Plaintiff also fails to sufficiently allege Defendant Mark Hancock's personal participation.

Plaintiff's Complaint may be dismissed in its entirety for failure to state a claim. Plaintiff's Sixth and Seventh Claims for Relief may be dismissed for lack of subject matter jurisdiction.  Defendants request the Court to grant Defendants' Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and enter judgment in favor of

Defendants.

**DATED** this 3rd day of May, 2017.

Respectfully Submitted,

*/s/ Herbert C. Phillips*
Herbert C. Phillips, Atty. No. 8773
The Phillips Law Offices, LLC
675 Main Street, P.O. Box 1046
Fairplay, Colorado  80440
Tel: 719-836-9005
lee@law-hcp.com
Attorney for Defendants

*/s/ Timothy P. Schimberg*
Timothy P. Schimberg, Atty. No. 10686
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, Colorado  80203
Tel: 303-298-8603
Fax: 303-298-8748
t_schimberg@fsf-law.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2017, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

John A. Culver, Esq.
Seth J. Benezra, Esq.
Adam W. Ray, Esq.
Benezra & Culver,P.C.
633 17th St., Suite 2610 Denver, CO 80202
E-mail: sjbenezra@bc-law.com
Email: jaculver@bc-law.com
Email: awray@bc-law.com
Attorneys for Plaintiff Welles Tonjes

*/s/ Eden R. Rolland*

_____

Eden R. Rolland