Defendants' Motion to Dismiss, Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.   17-cv-00487-CBS

WELLES TONJES,

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS FOR PARK COUNTY, in its official capacity;
THE PARK COUNTY SHERIFF'S OFFICE;
FRED WEGENER, in his individual capacity; and
MARK HANCOCK, in his individual capacity,

      Defendants,

---

**AFFIDAVIT OF ROSE AVEY**

---

    I, Rose Avey, being of lawful age and duly sworn, testify under oath as follows:

    1.  I am the Records Manager at the Park County Sheriff's Office.  During the time that Welles Tonjes was an employee of the Park County Sheriff's Office, my job duties included maintaining records of the Park County Sheriff's Office policy and personnel documents, including the Park County Sheriff's Office Policy and Procedures Manual ("Manual").

    2.  The Manual is subdivided into sections by topic area.  The third section of the Manual, comprised of Articles numbered 300 through 341 ("Series 300"), sets forth the policies and procedures at the Park County Sheriff's Office related to "Personnel."

3.   The Manual is updated from time to time.  I have verified that "Exhibit A," as attached to the Defendants' Motion to Dismiss, is a true and accurate copy of the version of Series 300 of the Manual that was in effect in February, 2016.

FURTHER AFFIANT SAYETH NOT.

ROSE AVEY

STATE OF COLORADO          )
                            ) ss.
COUNTY OF PARK)

SUBSCRIBED AND SWORN TO before me this 3' of May , 2017, by Rose Avey.

        Witness my hand and official seal:

            [SEAL]

                                    Notary Public

                            My commission expires: 12-2019

Patrick Cooper
Notary Public
State of Colorado
Notary ID 20144048924
My Commission Expires January 02, 2019

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date:* **10-12-2011** | *Approval:* | | *Number:* **300** |
|---|---|---|---|
| *Subject:* **INTRODUCTION / TABLE OF CONTENTS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* **III** | *Reevaluation Date:* | | *No. Pages:* **2** |

# INTRODUCTION

These articles are a guide for the administration of the Park County Sheriff's Office and the employees thereof. Any and all of these articles are subject to change by the Sheriff. The master Policy and Procedures manual for the Park County Sheriff's Office, on file in the administrative office of the Park County Sheriff's Office, shall take precedence over any discrepancies or conflictions found herein.

# TABLE OF CONTENTS

ARTICLE  301…………..………………...…………..….…CLASSIFICATION/ASSIGNMENT
ARTICLE  302.……………………….……………......…………....CIVILIAN PERSONNEL
ARTICLE  303.………………….…………..………………HIRING RECRUITMENT/SELECTION
ARTICLE  304………………….….…..……PHYSICAL/PSYCHOLOGICAL REQUIREMENTS
ARTICLE  305.………………….………………..….………………SALARY PLAN AND BENEFITS
ARTICLE  306.………………….………………..….………………………………………OVERTIME
ARTICLE  307.………………….………………..….…………………………………....AWARDS
ARTICLE  308.…………………….……………..….……………LIGHT DUTY POLICY
ARTICLE  309.…………………….………………………………………….ENDING EMPLOYMENT
ARTICLE  310.…………………….……………………………………...WORKERS COMPENSATION
ARTICLE  311.………………………….…..…………………….PERFORMANCE EVALUATION
ARTICLE  312.………………….….…..………………………….…INTEROFFICE TRANSFERS
ARTICLE  313.………………….…..………………….………………………….PROMOTIONS
ARTICLE  314.…………………..…..……………….CONDUCT RULES AND REGULATIONS
ARTICLE  315.………………….…..……………..OFF DUTY CONDUCT/POWERS OF ARREST
ARTICLE  316.………………….…..……………...SEXUAL HARASSMENT/DISCRIMINATION
ARTICLE  317.………………….…..…………………………………….PERSONAL RECORDS
ARTICLE  318.…………………….COMPLAINT HANDLING/INVESTIGATION PROCEDURES
ARTICLE  319.………………….…………………………...INTERNAL INVESTIGATION RULES
ARTICLE  320.………………….…………………………………….DISCIPLINARY ACTION
ARTICLE  321.………………….……………………………………..ATTENDANCE RECORDS
ARTICLE  322.………………….…………………………………….FAIR LABOR RECORDS
ARTICLE  323.………………….………………………………….REQUEST FOR LEAVE
ARTICLE  324.………………….………………………………….MILITARY RESERVE DUTY
ARTICLE  325.………………...……LINE OF DUTY INJURY/DEATH SURVIVOR SUPPORT
ARTICLE  326.………………….…………………………………………ARTICLE PUBLICATION
ARTICLE  327.………………….………………………FAMILY MEDICAL LEAVE ACT (FMLA)
ARTICLE  328.………………….….…………………….ADVERSE WEATHER REPORTING
ARTICLE  329.………………….….………………………………EMPLOYEE DRUG TESTING
ARTICLE  330.………………….….……………………………………..BADGE RETENTION

Defendants' Motion to Dismiss, Exhibit A

ARTICLE  331…..………………………………………………….EMPLOYEE GRIEVANCES
ARTICLE  332…..……………………..……………OFF DUTY/SECONDARY EMPLOYMENT
ARTICLE  333…..……………………………………………………………….SPECIAL EVENTS
ARTICLE  334…..………………….…………...EARLY WARNING SYSTEMS-REVERSE 911
ARTICLE  335…..…………………..……………………RESPONSE TO CIVIL LITIGATION
ARTICLE  336…..……………………..………...POLICE OFFICER DOMESTIC VIOLENCE
ARTICLE  337…..…………………..………………………………….COURT APPEARANCE
ARTICLE  338…..…………………………………………………ELECTRONIC MESSAGING
ARTICLE  339…..………………..…………...RESERVE AND AUXILLARY OFFICERS
ARTICLE  340…..…………………………...……………….....…….MASTER PATROL DEPUTY
ARTICLE  341…………………………………………………………………….SOCIAL MEDIA

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | *Number:*  301 |
|---|---|---|
| *Subject:*  **CLASSIFICATION / ASSIGNMENT** | | |
| *Reference:* | *Standard:* | |
| *Chapter:*  III | *Reevaluation Date:* | *No. Pages* 2 |

## I.  PURPOSE:
To set forth the classification plan to be used by the Park County Sheriff's Office.

## II.  DEFINITIONS

JOB DESCRIPTION: A written guideline describing the essential functions of a job, including a list of general duties, responsibilities, requirements and physical demands involved.

CLASS:  A grouping of jobs for which duties and responsibilities, qualifications and conditions of employment are sufficiently alike to justify the same treatment with respect to personnel practices.

JOB:   One or more positions with duties and responsibilities that are identical in all significant respects, so that a single job descriptive title can be used to identify the job.  Example (Patrol Deputy)

POSITION: The duties and responsibilities that may be assigned to a person of a particular job classification. Example: a Sergeant or Corporal may fill The Shift Commander.

## III.  POLICY:
It is the responsibility of the Sheriff's Office to ensure that every position within the Sheriff's Office will have a written job description.  The job description shall be grouped in a grade according to a classification plan.

## IV.  PROCEDURE:

A.   The Park County Human Resource Office shall maintain a written classification plan which will be reviewed annually, and revised if necessary by the Park County Human Resources Office.   A classification plan is comprised of positions with similar duties, responsibilities, required knowledge, skills and training.  Human Resource Office groups positions into classifications for salary and benefit purposes. Sheriff's Office members consist of compensated employees and non-compensated volunteers. Job descriptions are available to all members of the Sheriff's Office through the Personnel Section.

B.   Job Descriptions:

1. All job assignments will have written descriptions of the duties, responsibilities and physical demands associated with the position.  Job descriptions should be reviewed on an annual basis.

2. All components of the Sheriff's Office shall have a statement of responsibility.  These statements shall be available to all personnel through the policy and procedure manual and the standard operating procedure manuals.

C. Job Task Analysis

A written job analysis shall be maintained for every position. The job analysis shall include, at a minimum:

1.  Duties, responsibilities and tasks.

2.  The frequency with which each task is performed.

3.  Minimum qualifications or level of proficiency necessary in the job related skills, knowledge, ability and behavior.

D.  The objective of the job analysis is to serve as the basis for the position classification and provide guidance to members and their supervisors concerning the essential functions and physical demands of the individual positions, assist in the establishment of training curricula, provide a basis for minimum requirements in recruitment, examination, selection, appointment, promotion, and performance evaluation.

E.  Development of a job description will be the responsibility of the assigned Division Commander or their designee.  Once developed, they will be submitted to the Personnel Section.  Upon review, the approved job description will be forwarded to the County Human Resource Office for classification or reclassification and formatting.  Maintenance of the job descriptions will be the responsibility of the Sheriff's Office Personnel Section.

F.  Selection of personnel for assignments within a given classification will be based on specific criteria:

1)  Skills, knowledge and abilities (SKA's) required for the specialized assignment;

2)  Formal education requirements;

3)  Length of experience;

4)  Past performance.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*:  03-01-03 | *Approval*: | *Number*: 302 |
|---|---|---|
| *Subject*:  **CIVILIAN (NON-COMMISSIONED) PERSONNEL** | | |
| *Reference*: | | *Standard*: |
| *Chapter*: | *Reevaluation Date*: | *No. Pages*: 3 |

## I.  PURPOSE:

The purpose of this policy is to establish this agency's commitment to and procedures for hiring and using civilian personnel.

## II.  DEFINITIONS:

## III.  POLICY:

The efficiency and effectiveness of law enforcement agencies is enhanced when commissioned and non-commissioned personnel are appropriately used to perform those functions that are best suited to their special knowledge, skills and abilities.  Therefore, this agency shall employ civilians for selected functions that do not require the authority of a commissioned officer, thereby freeing commissioned personnel for enforcement functions and capitalizing upon the talents of all employees.

## IV. PROCEDURE:

A.  Civilian Position Classifications: This agency has approved a number of functions as suitable for civilian placement.  In conjunction with the development of the annual budget, command staff will assess which additional positions, if any, should be authorized for civilian employment.  Current civilian-designated functions include but are not necessarily limited to the following: Administration, Media relations, Budget, Communications, Records, Animal control, Victim advocacy, Sheriff's auxiliary/reserve, and Detention Support Personnel.

B.  Authorized duties and responsibilities of civilian employees shall be defined in job descriptions maintained in this agency's personnel office.  In addition, the following shall be observed with respect to civilian employees:

1.  Civilian employees shall not be requested to perform duties and responsibilities for which a commissioned law enforcement officer is required.

a.  However, in urgent circumstances when a female officer is not available, a female civilian employee may temporarily act as an observer during the care or detention of a female or act as a witness during the photographing of a female crime victim.

2.  Civilian personnel shall not use their employment status with this law enforcement agency as authority for or responsibility to enforce the law.  Civilian employees have no

authority to take enforcement actions beyond those authorized for any citizen under the laws of this state.

3. When on light-duty status, commissioned personnel may be assigned temporarily to designated civilian positions only if:
   a. Additional qualified personnel are needed to assist in the job assignment, and the officer has or can be readily provided with the requisite knowledge and skills to adequately perform duties of the position.

C. Applicant Screening.

1. Procedures for screening applicants for civilian positions shall conform to agency policy for commissioned officers unless otherwise specified by the personnel job description.

2. All civilian employees assigned or having access to criminal history records, fingerprint files, investigative records, tactical information, emergency communications or other assignments or materials of a sensitive nature shall undergo a background investigation to include a criminal history check prior to employment.

D. Identification.

1. All civilian employees shall be issued an agency identification card containing an up-to-date photograph.

2. Civilian employees shall wear their personal identification card at all times while in the law enforcement agency and/or when dealing with the public as a Sheriff's Office employee.

E. Training

1. Civilian personnel of this agency shall be provided with the following:

   a. Pre-service training, as required, that will prepare them for their job assignments and integrate them as productive members of this agency; and
   b. In-service training that will maintain basic skills and develop new knowledge, skills and abilities for career development.

2. All newly appointed civilian personnel will receive an orientation program introducing them to this agency, to include the following:

   a. Agency role, purpose, goals, policies and procedures,
   b. Working conditions, rules and regulations, and rights and responsibilities of employees.

3. Certain civilian positions within this agency require training on specific job responsibilities prior to assuming the position.  Field training and formalized classroom instruction in these areas shall be successfully completed before duties are assumed.

4. Courses designed specifically for civilian employees will be provided on a periodic basis by and through the training authority of this agency. Announcements of course

availability shall be provided to all affected employees in a timely manner.  Participation depends upon supervisory approval.

F.    Performance Appraisal: Civilian employees are subject to periodic performance appraisal in conformance with schedules and procedures established by this agency's personnel authority.

G.    Volunteers:   Civilian volunteers serving without pay are a valuable asset to this law enforcement agency and may be used in a variety of functions that will promote the agency's efficiency, effectiveness, mission and goals. Civilian volunteers are subject to the same provisions and restrictions governing other civilian employees as defined in this policy.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 303 |
|---|---|---|---|
| *Subject:* **HIRING RECRUITMENT AND SELECTION PROCEDURES** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | | *Reevaluation Date:* | *No. Pages:* 3 |

**I. PURPOSE:** To establish a standardized procedure to select the most qualified applicants.

**II. DEFINITIONS:**

COMMISIONED EMPLOYEES:   Those employees that possess a Deputy Sheriff's commission.

NON-COMMISIONED EMPLOYEES:   Those employees that do not possess a Deputy Sheriff's commission.

**III. POLICY:** It shall be the policy of the Sheriff's Office to recruit, hire and retain the most qualified personnel in accordance with established Park County Policy, in accordance with applicable Equal Employment Opportunity Commission (EEOC) and Americans with Disabilities Act (ADA) guidelines. Park County, including the Sheriff's Office, is an "at will employer." All employees of the sheriff's office shall be sworn personnel and be given an "Oath of Office"

**IV. PROCEDURE:**
Applicants for commissioned positions will receive an accumulative score at the end of the testing process. The scores will be used to place the qualified applicants onto a hiring list. Applicants who are screened out will receive a letter stating they are no longer being considered for the requested position. Non-Commissioned will be advertised and selected as openings occur.

A. NEW HIRES:

1. APPLICATION for Commissioned/Non-Commissioned Positions:
   Applicants will follow detailed instructions on how to complete the applications. The applicants will be screened out at this point for any of the following reasons:
   A) Incomplete application (partial answers)
   B) Failure to attach required documentation
   C) Questions left unanswered
   D) Illegible
   E) Not typed or printed
   F) Felony convictions
   G) Under 21 years of age for patrol/jail positions—18 years of age for communications.
   H) Not a United States Citizen

       I)  Conviction involving crimes of moral turpitude

2.  WRITTEN TEST FOR COMMISIONED POSITIONS:

The written test will be given at a pre-determined location.  Applicants will be required to present a legal and valid driver's license or they will not be admitted into the testing location.  Test results will be made available at the test location.  Applicants who fail the test will be screened out at this point.  Applicants who pass the test will be scheduled for a physical examination, psychological examination, and urinalysis test.

3.  ORAL BOARD FOR COMMISSION POSITION:

The Board will ask the applicants questions approved by the Sheriff.  A Staff Officer will be present at the Oral Board interview to insure the same questions are asked of all applicants.   Letters of recommendation from Staff Officers will be considered during the Oral Board interview.  The Board will give each applicant an accumulative number score based on all testing phases.   Each applicant who successfully completes the testing process will be placed on a hiring list. The Sheriff will have the final authority.

4.  ADDITIONAL APPLICANT REQUIREMENTS FOR COMMISIONED POSITIONS:

In addition to the above mention testing requirements, perspective commissioned employees will also comply with the following:
A)  Openings will be advertised in-house for ten(10) days prior to outside advertisement.
B)  Pass a thorough background investigation.
C)  Pass a psychological examination
D)  Pass a county physical examination at the time of employment.
E)  Pass Drug Urinalysis test at the time of hire.
F)  Physical fitness performance evaluation in accordance with ADA standards at the time of hire.

7.  NON COMMISIONED HIRING PROCESS:

A)  Non-commissioned positions will be advertised in-house for a minimum period of ten (10) days.
B)  Positions not filled by in-house personnel will be advertised through the County Human Resources Office for a minimum period of ten (10) working days.
C)  Applications will be transmitted to the Sheriff's Office Personnel Section for EEO documentation and then forwarded to the Division Commander over the open position.
D)  The Division Commander may then form an oral board or designate a supervisor to conduct the interviews with the candidates.
E)  The Division Commander will submit the list of qualified applicants to the Sheriff. The list will be listed in rank order beginning with the most qualified applicant.
F)  The Sheriff will select the most qualified person of the top three applicants.
G)  If more than one opening exists, the selection range will be expanded by one (1) applicant for each open position.
H)  The hiring list will be in effect for a period of six months from the closing date.
I)  Applicants will be expected to pass a criminal background check, County physical, and may be subject to a re-examination, if necessary.

8.  RESIDENCY REQUIREMENTS:

A)  Commissioned PATROL officers will live within their assigned district in the county or within fifteen (15) minutes normal safe drive time to the district substation, if outside the county.
B)  All other personnel are not required to reside within Park County.

9.  PROBATIONARY PERIOD:

A)  Commissioned personnel will be on probation for one (1) year from date of employment and may be extended for a period of up to six (6) months for training or disciplinary purposes.
B)  Non-Commissioned personnel will be on probation for one (1) year from the date of employment and may be extended for a period of up to three (3) months for training or disciplinary purposes.

B.  RE-EMPLOYMENT:

1.  Permanent employees who resign their position voluntarily may be considered for re-employment based on the needs of the Office and their past employment record. Permanent employees who are terminated for cause or under the Provisions of CRS 30-10-506, as amended, are not eligible for re-employment.

2.  Personnel on the re-employment list may be re-employed at the grade and pay scale determined by the Sheriff.

3.  All personnel re-employed must satisfactorily complete a physical and background examination.

4.  The re-employment list will be taken into consideration over new employee hiring lists when vacancies occur.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 304 |
|---|---|---|---|
| *Subject:*  **PHYSICAL AND PSYCHOLOGICAL REQUIREMENTS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 3 |

**I.  PURPOSE:**

The Sheriff's Office encourages all members to maintain the proper level of physical and psychological fitness to accomplish their essential job functions.  It is essential that members possess the proper level of physical conditioning to effectively conduct their duties.

**II.  DEFINITIONS**:

LIGHT DUTY:  Duty performed by an employee who is recovering from a long term **non-duty** related injury or illness.  The duty is performed in a position authorized by the Sheriff's Office.  That position must be vacant at the time the injured/ill employee becomes available for light duty. See Policy 308.

**III. POLICY:**

It shall be the policy of the Sheriff's Office to ensure personnel meet the necessary physical and psychological requirements of their assigned position. Furthermore it is the policy of the Sheriff's Office to comply with the provisions of the Americans with Disabilities Act (ADA) and the Equal Employment Opportunity Commission (EEOC).

**IV.  PROCEDURE:**

A. PHYSICAL and PSYCHOLOGICAL REQUIREMENTS:

1. Because it is the mission of the Sheriff's Office to protect the public safety, all members of the Sheriff's Office are to be physically and psychologically able to perform their assigned duties.   Therefore, employees may be required to undergo physical or psychological examinations if a Division Commander has reason to believe that an employee's fitness for duty is questionable.

2. Commissioned members must be physically and psychologically able to perform their duties as a Deputy Sheriff.  This may include patrol duty, making arrest, quelling disturbances and the supervising or transporting inmates etc.  They must be capable of using as much force as necessary, including the use of firearms and physical restraints, to fulfill their duties.

3. Non-commissioned members must posses the physical and psychological ability to perform the duties of their position.

4. All employees may be subject to a physical or psychological evaluation if necessary.

B. TEMPORARY PHYSICAL or PSYCHOLOGICAL CONDITIONS:

1. Members with temporary physical or psychological conditions which may prohibit them from performing the full duties of their position will not be permitted to work. They may use accrued sick and vacation time to remain on the county payroll until they become eligible for **Light Duty.**

2. If the member does not have enough accrued sick and vacation time to remain on the payroll, they may request a medical leave of absence without pay until they have the ability to return to full duty.

3. If the member has an extended physical or psychological condition which precludes the performance of full duty in their assigned position, but is qualified to perform duties in another vacant position in the Office, the member may request a transfer to the alternate position. The employee must accept the pay grade for that alternate position. The employee may request a transfer to their original position when they are fully qualified to perform those duties.

4. In accordance with 42 USC 2000, commissioned pregnant members will be permitted to wear civilian maternity clothing in lieu of a uniform. They will perform the full duties of their position to the degree that it is reasonable for their condition. They will not be required to use physical force or perform other duties that would jeopardize their health and welfare or that of their unborn child.

C. PERMANENT PHYSICAL OR PSYCHOLOGICAL CONDITIONS:

1. Employees who suffer permanent physical or psychological conditions, which precludes their ability to perform the full duties of their position, will not be retained in their position.

2. If an employee cannot be retained in their position due to a permanent physical or psychological condition, the Office will conduct a review to determine what positions in the Office are available for which the employee is qualified. The employee will be offered a transfer to a position for which he/she is qualified at the pay grade of that position.

3. Any employee who can no longer perform the full duties of their position, due to a permanent physical or psychological condition, will be treated on an individual basis. The Sheriff's Office shall treat employees in this status in a fair and equitable manner, and will make every reasonable accommodation to retain the employee in the Sheriff's Office or within Park County.

D. DETERMINATION OF TEMPORARY OR PERMANENT PHYSICAL OR PSYCHOLOGICAL CONDITION:

1. The Division Commander will normally decide if an employee has a temporary or permanent physical or psychological condition that does not permit the employee's full performance of duty.

2. The Division Commander may order a physical or psychological (fitness for duty) evaluation of the employee if there is doubt concerning the employee's ability to perform

the full duties of the position.   The Division Commander must document and articulate the reason for the request.  The Office will pay the cost of the evaluation.

E.  EVALUATION OF PHYSICAL OR PSYCHOLOGICAL CONDITION:

1.  An Evaluation Board will consider all permanent physical or psychological conditions and temporary physical or psychological conditions that cannot be resolved by the Division Commander.  The Board will consist of the following:
    A)  Sheriff
    B)  Undersheriff
    C)  Division Commanders

2.  The Board will consider all available information concerning the employee's ability to perform the full duties of the position.  The employee will be permitted to offer any information available to the Board.  The Board will make the final determination concerning the employee's ability to perform the full duties of the position.

F.  EMPLOYEE ASSISTANCE PROGRAM (EAP):

1.  The EAP system is for employees with personal or work related problems.  This program is a confidential support, short-term counseling and referral service to assist employees in resolving marital problems, parenting problems, and financial problems.  Additional information can be obtained through the County Human Resources Office.

2.  Employees can be directed by their Division Commander to seek counseling.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 10-05-10 | *Approval:* | | *Number:* 305 |
|---|---|---|---|
| *Subject:*  **SALARY PLAN and BENEFITS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 3 |

**I.   PURPOSE:**
A salary plan and benefits package is maintained to ensure fair compensation and proper benefits are provided to all employees.  This plan may deviate from the county plan.

**II.   DEFINITIONS**: N/A

**III.   POLICY:**
The Sheriff's Office will strive to ensure that all its personnel are provided with fair compensation and benefits.  The Office shall endeavor to ensure a sound compensation management, to provide service at a reasonable cost, compete for qualified personnel, retain competent personnel, offer advancement and promotional incentives, and reward superior service.

**IV. PROCEDURE:**
A.  SALARY:
1.  A salary plan is maintained and salaries are determined annually in accordance with the Park County Policies.  A list of salaries for Office employees showing entry-level salaries, salary differential within ranks and salary levels for special positions are provided to employees upon request.

2.  Step increases:  Park County does not have step increases.

3.  Overtime: Overtime pay and Compensatory time may be earned in accordance with the policy 306.

4.  Out of Title Pay:  Any employee who is officially appointed to fill a higher graded position in an acting capacity, by the Sheriff, is eligible for out-of-title pay after the first 30 days of filling the temporary position.  However, under exceptional circumstances, the Sheriff may grant out-of-title pay for time worked before the first 30 days (i.e., pending a possible promotion).

B.  BENEFITS:
1.  Paydays:  Employees shall be paid according to county policy.
2.  Direct Deposit:  All employees are encouraged to participate in direct deposit.

3. Vacation - Full time and job share employees earn vacation for each full month worked. An employee who begins work with the County on or before the 15th of the month will accrue vacation leave for that month. An employee who begins work on or after the 16th of the month will not accrue vacation leave for that month. An employee who terminates work with the County on or before the 15th of the month will not accrue vacation leave for that month. An employee who terminates on or after the 16th of the month will accrue vacation leave for that month. Employees will accrue vacation leave in accordance with the following schedule:

| YEARS OF SERVICE | VACATION LEAVE ACCRUAL |
|---|---|
| 1 – 5 | 8 hours per month up to 96 hours per year (see county policy for vacation accrual for the 1st year of employment) |
| 6 – 14 | 12 hours per month up to 144 hours per year |
| 15 or more | 16 hours per month up to 192 hours per year |

A) Job share employees receive one-half (1/2) of the vacation leave accrual rate based on the individual employee's years of service.

B) Vacation leave will not be granted and/or used in advance of accrual. Vacation leave will not be debited in less than one (1) hour units.

C) Employees will be allowed to carry over vacation and comp time combined when more than the amount earned within the year's time is accrued.

D) Employees who separate from County employment will be paid for the unused balance of their accrued vacation leave, set forth in (c) above. In the event of an employee's death while in County employment, the employee's estate will receive payment for all accrued vacation leave.

4. Sick Leave: applies only to full-time and job-share employees. Employees shall earn sick leave with pay at the rate of 8 hours per month to a maximum accrual of 480 hours. (See county policy for sick leave for 1st year of employment).

5. Worker Compensation: All employees are covered for work related injury or illness. See policy 310.

6. Military Leave: Up to fifteen (15) calendar days a year may be used for National Guard or Reserve forces.

7. Jury Duty: Members will be paid their normal salary while performing jury duty. Members that receive a check, from the courts, for serving jury duty will return the check to the County.

8. Bereavement Leave: Members will be granted five (5) days of sick time for deaths in the immediate family. Additional time needed will be deducted from vacation time.

Defendants' Motion to Dismiss, Exhibit A

9. Insurance:  Full time and part time members may have access to medical, dental, life, and long-term disability coverage.

10. Retirement:  It is mandatory that all employees participate in the County retirement program. Retirement benefits are based on age and years of service.  Contact Retirement Office for additional information.

11. Liability Protection:  All members of the Sheriff's Office are covered by the County Liability Insurance Program.  Specific conditions of coverage are available, by request, from the County Attorney's Office.

12. Disability:  Full time members may be eligible for long-term disability leave. Contact County human Resources for information on the Group Long Term Disability Insurance Plan.

13. For information on other benefits, contact the Park County Personnel Office.

Defendants' Motion to Dismiss, Exhibit A

# POLICY AND PROCEDURE MANUAL

| | | |
|---|---|---|
| *Effective Date*: 09-16-10 | *Approval*: | *Number:* 306 |
| *Subject*: **Overtime/On call time** | | |
| *Reference:* | | *Standard:* |
| *Chapter:* **III** | *Reevaluation Date:* | *No Pages*:3 |

**I.**   **PURPOSE:** The purpose of this policy is to provide a structure for monitoring, managing and controlling the use of personnel overtime.

**II.**   **DEFINITIONS:**

OVERTIME: Work performed in excess of 40 hours in one week or as otherwise established by state law.

Fair Labor Standards Act (FSLA) (29 U. S. C. §207(a): Federal law regulating wages and work hours to include provisions for overtime pay.

**III.**   **POLICY:** All personnel of this agency must be mindful of and exercise fiscal responsibility in the use of public funds and resources. Overtime pay requires particular attention because it constitutes a sizeable expenditure of agency revenue that is provided at premium rates. Without adequate controls, unplanned expenditures can create budget overruns and divert resources from key operational areas. Therefore, it is the policy of this agency to effectively manage the use of overtime and that of each employee to use overtime in a responsible and judicious manner.

**IV.**   **PROCEDURE:**

    A.   General Provisions

        1.   This agency conforms to overtime provisions of the FLSA and applicable state laws. Personnel shall refer to this agency's personnel pay policy, FSLA policy and labor agreements for details on exempt and non-exempt positions, circumstances in which overtime pay may be granted, rates of payment for all overtime that qualifies for payment at the premium rate and related matters.

        2.   Whenever reasonably possible, paid overtime will be used in lieu of unpaid compensatory time *off*.

Defendants' Motion to Dismiss, Exhibit A

B.   Reporting, Recording and Analysis

1.   All Overtime worked shall be approved for payment by the designated supervisor. The category of overtime work performed shall be coded in accordance with agency personnel procedure and forwarded by unit commanders to the designated agency unit for recording, accounting and analysis.
   a.   Paid overtime and unpaid compensatory time will be recorded separately.
   b.   Overtime expenditures shall be kept separately. Individual and summary data will be compiled on at least a monthly basis.
   c.   Overtime funds expended under federal or state grant purposes will be accounted for separately from those in the general budget.

2.   The designated entity shall maintain overtime records and provide individual and summary data of overtime worked on a monthly basis to responsible agency supervisors and command personnel.

3.   Unit commanders and supervisors shall monitor individual and Summary data reports of overtime expenditure. Identification of unusual, unexplained or disproportionate expenditures in overtime may include but are not limited to the following circumstances.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 08-12-09 | *Approval:* | | *Number:* 307 |
|---|---|---|---|
| *Subject:* **AWARDS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 3 |

I. **PURPOSE**:

To identify and define the different awards that may be presented by the Sheriff's Office to it's employees or citizens and the procedure and make-up of the Awards Committee.

II. **DEFINITIONS**:

EXTREME RISK: A condition or circumstance which may cause death.

SIGNIFICANT RISK: A condition which involves personal danger but is not likely to cause death.

MERITORIOUS: Deserving praise or reward.

EXTRAORDINARY: Beyond what is common or usual, very exceptional.

ACHIEVEMENT:   The act of finishing or accomplishing something that has been accomplished successfully by means of persistent endeavor.

SERIOUS BODILY INJURY: Bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree. (C. R. S. 18-1-901).

BODILY INJURY: Physical pain, illness, or any impairment of physical or mental condition. (C. R. S. 18-1-901).

CITATION: A document which describes and commends the actions of medal and/or award recipients.

III. **POLICY**:

It is the policy of the Sheriff's Office to maintain an internal awards program to recognize those deserving individuals or groups of individuals. All Sheriff's office personnel have a duty to report exceptional service and/or performance of other employees and/or citizens. Supervisors are mandated to acknowledge and recognize the efforts of their subordinates and submit them for the appropriate form of recognition.

## IV. PROCEDURE:

The Sheriff's Office expects a high level of professional conduct from all employees. However, personnel frequently perform their duties in a manner exceeding the highest expectation of the Sheriff's Office.  When such conduct occurs, official commendations will be presented.  Commendations may originate from citizens or members within the Office. Additionally, the Office will honor those citizens of the community who assist the Office extraordinarily beyond their normal civic responsibilities. The awards committee will be responsible for evaluating and classifying commendation reports and for recommending the appropriate action to the Sheriff.

A.  SWORN AWARDS, DESCRIPTION AND PRECEDENCE:

1.  **Medal of Honor**: This medal will be awarded to a member who loses their life honorably while in the performance of duty. The loss of life may be due to hostile or non-hostile action, but must occur as a direct result of law enforcement or detention service, either on or off duty. The Medal of Honor is a gold ribbon with medal attached accompanied by a certificate and a citation. There is no award bar accompanying this award.

2.  **Medal of Valor**: The highest living award for those sworn personnel who perform service above and beyond the scope of their duties under conditions that manifest an extreme risk of serious bodily injury. The recipient demonstrates extraordinary heroism and courage through voluntary action I an extremely dangerous situation. The Medal of Valor is a blue and white ribbon with medal attached accompanied by a certificate, citation, and a white award bar, with the word 'valor' in blue.

3.  **Sheriff's Distinguished Service Medal:** This award is given to a sworn member of the office who through the performance of their duties is placed in significant risk of serious bodily injury, or is injured in the line of duty under honorable conditions. The Sheriff's Distinguished Service Medal is a white ribbon with medal attached accompanied by a certificate, citation and a red and white award bar.

4.  **Medal of the Purple Heart**: Those sworn personnel who are wounded or seriously injured in the line of duty by an assailant while involved in a physical altercation. The injury must not be the result of, or concurrent with, any conduct that is less than acceptable by any standards. The Purple Heart is a purple and white ribbon with medal attached accompanied by a certificate, citation, and a purple and white award bar.

5.  **Life Saving Medal**: Awarded to sworn members of the Sheriff's Office who through an extraordinary effort contribute to the saving of a human life. Additionally, the member's actions significantly assist the life saving effort and based on a totality of circumstances, death appears imminent. The Life Saving Medal is a green and white ribbon with a medal attached accompanied by a certificate, citation, and a green and white award bar.

6.  **Meritorious Service Medal**: Those members of the Sheriff's Office who exhibit extraordinary performance above and beyond the normal scope of their duties.  The Meritorious Service Award will be a red ribbon with medal attached accompanied by a certificate, citation and a red award bar with the letter "M".

7.  **Sheriff's Commendation Medal**:  An award granted, by the Sheriff or Undersheriff, to any member(s) or citizen for an outstanding act or achievement that brings credit upon the Office and which involves performance above and beyond that required by the members basic duty assignments; or the citizen that performs an outstanding or heroic act worthy of the Office recognition. Sworn personnel will receive a red, white and blue ribbon with medal attached accompanied by a certificate, citation and a red, white and blue bar. Citizens will receive a citation and certificate.

8.  **Unit Commendation**: An award recognizing a unit, shift, section or team for an outstanding achievement by a team of individuals. This recognition is in the form of a certificate, citation and award bar.

B.  NOMINATION for AWARDS

Any Office member may nominate another Office member or private citizen by submitting a nomination on an inter-Office memorandum.  The nomination must set forth specific actions that make the nominee eligible for the particular award for which he or she is being nominated.  The nomination will be submitted through the proper chain of command to the Awards Committee, who will keep them on file for future meetings.

C.  AWARDS COMMITTEE

1.  The Awards Committee is comprised of the Undersheriff and his designees.

2.  The Awards Committee will be appointed annually by the Undersheriff.

3.  Awards will be granted by a majority vote of the committee members and upon approval of the Sheriff.  The Undersheriff or his designee will act as the committee chairperson and as such, will set the dates for committee meetings.  The Undersheriff may call special meetings if the need should arise.

D.  ADMINISTRATION

1.  The Sheriff's Administrative Assistant will ensure that an adequate supply of awards are kept on hand.

2.  The Undersheriff will arrange the presentation of awards.

E.  THE WEARING OF AWARDS

When appropriate, the recipient of an award shall wear the award on the right side pocket on the uniform shirt in accordance with policy 601.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval*: | | *Number*: 308 |
|---|---|---|---|
| *Subject:* **LIGHT DUTY** | | | |
| *Reference*: | | *Standard*: | |
| *Chapter*: III | | *Reevaluation Date*: | *No. Pages*: 2 |

**I.   PURPOSE:**

The purpose of this policy is to provide guidance for personnel requesting light duty while recovering from a **non-duty** related injury or illness.

**II.   DEFINITION:**

LIGHT DUTY:  Duty performed by an employee who is recovering from a long term **non-duty** related injury or illness.  The duty is performed in a position authorized by the Sheriff's Office.  That position must be vacant at the time the injured/ill employee becomes available for light duty.

MODIFIED DUTY:  Duty performed by an employee who is recovering from a **duty related** injury or illness.  This duty is performed in a position authorized by the Sheriff.

NON-DUTY INJURY / ILLNESS:  An injury or illness that does not occur while in the performance of duty and would not be covered under worker's compensation.

**III. POLICY:**

It is the policy of the Sheriff's Office to provide employees guidelines in which to provide and assist members with temporary duty assignments while recovering from a non-duty related injury or illness.

**IV. PROCEDURE:**

Some positions authorized on the Sheriff's Office Staffing Document that are temporarily not filled by a full time employee or vacated temporarily by leave may be designated a light duty position by the appropriate Division Commander.  These positions may, upon approval, be filled on a temporary basis by employees recovering from a **non-duty** related illness or injury.  Should the injury be determined to have a permanent limitation, the Sheriff's Office is under no obligation to accommodate the employee with a continuing light duty position.  Light duty may be approved under the following criteria:

1.   A vacancy in an authorized position must exist.

2.   Employees requesting light duty must be recovering from an extended illness or injury from a **non-duty** related injury, verified by a competent medical authority.

3.   Light duty requests will not be considered until adequate time has elapsed to accommodate recovery.  For the purpose of this policy, that time will be a minimum of four consecutive weeks. The employee must use accrued sick, vacation, holiday, compensatory, or sick bank if applicable.

4.  Prior to being considered for a light duty position, the employee must be expected to be released to full duty within three weeks.  A medical statement will be required from the employee's doctor confirming the anticipated release.

5.  Light duty will be limited to three (3) workweeks.  On a one-time basis only, a one-week extension may be authorized by the Sheriff.

6.  Personnel on light duty, not to exceed four (4) weeks, will be paid at their normal base salary.

7.  Personnel on light duty will NOT be eligible to work overtime or extra duty.

8.  The Division Commander will be responsible for placement of light duty personnel within their division.   If a position does not exist within the employee's assigned division, the request will be submitted to the Undersheriff for consideration of placement to another division.

9.  Employees requesting light duty must meet the minimum requirements of the position based on the job description.

10. Light duty does not, in any way, create a right for the employee to occupy that or any other position on a permanent basis.  Light duty positions may be deleted at anytime by the Undersheriff, or Sheriff, with or without cause.

11. Personnel with a work related injury or illness will receive first consideration for available positions.

12. Employees assigned to light duty will meet dress requirements as specified for the type position assigned.

13. The employee must notify their section supervisor, as soon as possible, following an off duty injury or illness. The employee shall also provide an estimated recovery period.

14. Once the employee has used the required leave time, they may contact their Section Commander and request, in writing, light duty status.

15. The employee requesting light duty, will provide their supervisor a list of physical limitations provided by the employee's medical provider.

16. The Section Commander will forward the request with a recommendation for approval/disapproval and position assignment through the chain of command to the Division Commander.  If a position does not exist within the employee's assigned division, the employee may be assigned to another division. The Division Commander will add their recommendation and forward the request to the Undersheriff for final approval and position assignment.

17. Upon placement of the employee in a light duty position,  the assigning Division Commander will complete a PERSONNEL ACTION REQUEST form.  Included on this form will be the light duty assignment, start date and ending date.  This form will be submitted to the Personnel Office.

18. The employee's temporary supervisor will be responsible for payroll and attendance records.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 309 |
|---|---|---|---|
| *Subject:*  **ENDING EMPLOYMENT** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 2 |

**I.  PURPOSE:**

The Sheriff's Office strives to make the process of ending employment an uncomplicated procedure.

**II.  DEFINITIONS**:

**III.  POLICY:**

The Sheriff's Office shall provide guidelines for employees ending employment.  The guidelines shall create an organized and uncomplicated process to benefit the employee, the Sheriff's Office and the County Offices.

**IV.  PROCEDURE:**

There are a number of ways to end employment with the Park County Sheriff's Office.  The methods are designed to assist the employee, Sheriff's Office Personnel Section, County Human Resources and County Payroll.  All employees, at the end of their employment, must follow these procedures to receive their final paycheck.

   A.   REASON FOR ENDING EMPLOYMENT:

   1.   Retirements:
   Employees may be eligible for retirement benefits based on age and years of service.  County Personnel Office for details on retirement. Park County does not have a mandatory retirement age.

   2.   Resignation:
   An employee of the Sheriff's Office has the right to resign at any time.  The Sheriff's Office expects at least a two week notice be provided by the employee. Employees are to provide, to their supervisor, a work schedule identifying their last day of work, and any compensatory, vacation, or sick time to be used.

   3.   Lay Offs:
   In the event the Sheriff's Office would have to reduce the work force due to funding reductions, seniority and work performance will be considered. Attempts will be made to transfer employees to another division or assignment or possibly at a lower rank.  The Sheriff has the final decision when a reduction has to be made.  Each effected employee will receive written notice at least two weeks before the change.   Employees will be reinstated to their previous position, considering budgetary constraints.   A reduction in force is not a dismissal and is not a subject for a grievance.

4.  Termination:
    The Sheriff's Office is an "employment at will" employer. Sworn employees serve "at the pleasure" of the Sheriff. Both the Employee and the Sheriff's Office have the right to end employment at any time. Employees may be dismissed for reasons discussed in Chapter III, Section 320, Disciplinary Action.

5.  Death:
    If an Employee dies, the Sheriff's Office Personnel Section will work with the person identified as the "emergency contact" to ensure that the final paycheck, insurance benefits and all necessary forms are completed.

B.  SEPARATION GUIDELINES:

1.  An Exit Interview is required upon separation. This interview will be scheduled and conducted by the separating employee's Division Commander. The findings of the exit interview, including a recommendation for re-employment, will be forwarded to the separating employee's Division Commander, who will forward it to the Personnel section. A copy will also be sent to the Sheriff through the Undersheriff.

2.  The proper paperwork will be completed for the Personnel Section upon separation in order to receive a final paycheck. This final check **may** consist of:

    A)  pay for hours worked
    B)  pay for unused vacation
    C)  retirement contributions, if applicable
    D)  Any money owed to the county by the Employee will be deducted from the Employees final paycheck.

3.  All issued equipment must be turned into the Main Sheriff's Office in Fairplay.

4.  Any equipment that is lost or misplaced, or otherwise, in an unserviceable condition because of abuse or carelessness, must be paid for by the employee. The amount of money equal to the fair market value for the equipment lost, as determined by the Division Commander, may be withheld from the employee's final paycheck.

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
## POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 310 |
|---|---|---|---|
| *Subject:*  **WORKERS COMPENSATION** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | *Reevaluation Date:* | | *No. Pages:* 3 |

**I.  PURPOSE**:
To provide guidance for members that suffer a duty related injury or illness.

**II.  DEFINITION**:

MODIFIED DUTY:  Duty performed by an employee who is recovering from a duty-related injury or illness.  This duty is performed in a position authorized by the Undersheriff.

WORKDAY:  Any portion of an employee's regularly scheduled work shift.

**III. POLICY**:
It is the policy of the Sheriff's Office to ensure a safe work environment for its employees.  However, conditions may arise that lead to the injury of a member.  When injury occurs, the first priority is to get the employee the best medical attention possible and secondly, ensure that the employee is returned to duty with full recovery.

**IV. PROCEDURE:**
All employees are covered by the State of Colorado Worker's Compensation Act, C.R.S. 8-40-101, for injuries or illnesses sustained in the scope and course of employment.

A.  NOTIFICATION:
Members must notify their immediate supervisor of any work-related injury or illness on the same day or by the end of the shift in which the injury or illness occurred.  The supervisor will notify their chain of command of any injuries.  Injuries or illnesses, which are serious and result in hospitalization or death must be reported, as soon as possible, to all levels of the chain of command, including the Sheriff, Undersheriff and the County Personnel Officer.

B.  FORMS & REQUIRED ACTION:

1.  All forms must be completed accurately and submitted to the appropriate personnel.  If the injured employee is unable to complete the necessary paperwork immediately, his/her supervisor will complete all necessary forms.  Forms are available through the Personnel Section or Administrative Division.

    A) **Employees Written Notice of Injury to Employer**:  Should be completed by the injured employee and should be signed by the employee.  This form must be completed and received by personnel within three working days.  The three part form and will be turned-in to the Personnel Section in its entirety.

B)  **Supervisor's Accident/Incident Report**: Those injuries that result in medical attention will be documented by the injured employee or their supervisor.  A copy will be forwarded to Personnel.

C)  **Personnel Notification**:  It is mandatory that the injured employee notify Personnel, by phone or in person, within 24 hours of all written notice of injury claims to ensure validation of the claim.  If the injury occurs after hours, the injured employee or their supervisor, if employee is unable due to the extent of injury, must contact Personnel, as soon as possible, on the next business day.

D)  **Excuse from Duty:**  A physician's statement must be submitted to the Division Commander and Personnel for any injury or illness which requires doctors care excusing the employee from work.

E)  **Return to Duty**:  A physician's statement must be submitted for any duty related injury or illness which requires a doctor's care, no matter how long the employee was absent from duty.  This form will be provided to the Personnel Section immediately.

C.  MEDICAL TREATMENT:
1.  Park County has the option of designating physicians for treatment of Worker's Compensation injury or illness claims as prescribed by the Act.  In case of emergency medical attention or after hours care employees should report to:

| | | |
|---|---|---|
| Denver Area | Breckenridge Medical Center | Woodland Park Med. |
| Exempla Health Care | 555 So. Park Plaza II | 350 N. Pine St. |
| | Breckenridge, CO | Woodland Park, CO |
| | (970) 453-9000 | (719) 687-3071) |

2.  Deviation from the above choices will only be accepted under the following circumstances:

A)  When life or limb is endangered.
B)  When the employee is transported directly to the nearest hospital.

D.  MEDICAL PAYMENTS:
With complete information and timely submission to Personnel, all medical expenses for treatment by designated physicians are covered as prescribed by the Act.

E.  EMPLOYEE BENEFITS:
1.  Any employee who becomes incapable of performing his or her normal work duties as a result of illness or injury incurred within the scope of employment will be deemed to be on work-related absence until the employee is medically released to resume normal work duties or modified work duties as may be allowed.  County employees who sustain a work-related illness or injury are eligible to receive statutory benefits pursuant to the Colorado Worker's Compensation Act, C.R.S.  8-40-101.

2.  The Colorado Worker's Compensation Act provides that an employee will not receive wage loss benefits for the first three (3) working days of absence due to the work-related illness or injury, unless the period of the employee's absences from work exceeds two (2) weeks from the day of the injured employee leaves work.  If an injured employee returns to work before two weeks from the date the employee initially left work, the

employee must either take three days of absence from accrued leave or take three days without pay.

3. Injured employees eligible to receive wage loss benefits under the Colorado Worker's Compensation Act and who have not been medically released to return to any work will receive sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage, not to exceed a specific maximum weekly amount calculated by the State of Colorado on an annual basis.

4. Absence due to a work-related illness or injury will be authorized only in those cases where:

   A) A first report of injury has been completed by Personnel; and

   B) an employee obtains a written statement from a designated physician concerning the employee's medical treatment and inability to return to work.

5. An employee who is absent from work due to a work-related illness or injury may be required to undergo a periodic medical examination at the County's request. The failure to comply with such a request may result in the loss of worker's compensation benefits, including wage loss benefits.

6. During the period an employee is absent from work due to a work-related injury or illness, the employee must notify the Personnel Section of their medical status on a regular basis. The required notification will be a minimum of one time per week.

7. It is the policy of the County and the Sheriff's Office to return employees injured on the job to full or modified duty as soon as medically possible. Accordingly, employees who have been released by their designated provider to return to full or modified duty will immediately notify and provide written documentation verifying their release to the Personnel Section.

8. An employee who sustains a work-related injury that qualifies as a "serious health condition" under the Family and Medical Leave Act (FMLA) will be placed on FMLA leave on the date the employee qualifies for FMLA leave.

F. MODIFIED ASSIGNMENT PROGRAM (MAP):

1. The Modified Assignment Program provides temporary work that is performed by employees unable to return to their normal job duties as a result of work-related illness or injury during the period of recuperation. All employees on MAP will be medically released to perform temporary modified duty by their designated provider. The Sheriff's Office will be given the first option over its employee for a modified duty position. If one is not available within the Sheriff's Office, Personnel will place the employee in a temporary duty position within the County.

2. An employee who is provided with a modified duty position through MAP will receive full wages based on the amount the employee was earning at the time of the work-related illness or injury. Non-sworn employees may be medically released to their regular job on a part-time basis. The employees will receive a proportionate amount of the regular full wages for those part-time hours worked. For the remainder of hours for which the employee has not been medically released to work, the employee will receive 66 2/3 %

of their average weekly wage.  Sworn employee must posses the ability to perform their assigned duties and is not subject to partial release to their original positions.

3. An injured employee placed in a modified duty position through MAP will be entitled to work in that position for a period of 90 work days, unless the employee is medically released to full duty within the 90 day period.  Following the ninety-day period, the Undersheriff has the discretion to continue the employee in the modified duty position or to request that the employee return to temporary disability status.

4. Employees on modified duty will have their attendance records completed by the immediate supervisor of the modified duty position.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 311 |
|---|---|---|---|
| *Subject:* **PERFORMANCE EVALUATION** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | | *Reevaluation Date:* | *No. Pages:* 3 |

## I.  PURPOSE:

The purpose for evaluating employees is to serve both the individual and management. The evaluation system shall foster fair and impartial personnel decisions and provide a medium for career development. It is the responsibility of the rater to use the performance evaluation to facilitate proper decisions regarding probationary employees, provide objective and fair means for measurement of individual performance and identify training needs.

## II.  DEFINITIONS:

EXTREME RATINGS: Unacceptable/Needs Improvement and Commendable/Outstanding.

ANIVERSARY DATE: Employee date of hire with the Sheriff's Office.

## III.  POLICY:

It is the policy of the Park County Sheriff's Office to ensure that the performance of each employee is accurately evaluated. The objective of the performance evaluation system is to assist in the career development of the employee, communicate feedback on performance, set goals and individual performance objectives, and provide documentation of performance based on observable behavior. The performance evaluation will be used to determine training opportunities, suitability for assignment, promotions and response to disciplinary action.

## IV.  PROCEDURE:

A.  The Park County Sheriff's Office will evaluate every employee's performance annually. Each position, rank, or job function within the Park County Sheriff's Office will have separate evaluation forms with prescribed and defined guidelines of performance in accordance with that specific job function.

B.  The automated system will provide the specific form or the rater can obtain the specific evaluation forms from the Administrative Section. The rater will review the form and set accepted performance standards with their immediate subordinate. This is done so that the subordinate knows and acknowledges what is expected of that specific job function.

1.  In order to determine the probationary employee's suitability for continued employment at the earliest possible time, all probationary employees shall be rated monthly for the first three (3) months and quarterly thereafter. It may be done more often at the discretion of the Division Commander.

C. After successful completion of the probationary period, the rate shall review a new evaluation form with their immediate supervisor, and together they shall determine specific performance objectives that the employee will attempt to attain as they relate to the position.  This review shall be a recognized counseling session, at which time the subordinate is further advised by the supervisor of the following:

    1.  Essential functions and physical demands for the position occupied.

    2.  Level of performance expected of the subordinate.

    3.  Evaluation rating criteria.

    4.  A review of the employee's in-service training file.

    5.  Mutually agreed upon goals and standards consistent with the employee's job description.

D. The employee signs the original and receives a copy of the evaluation form, which acknowledges the goals, standards of performance and any other written comments by the supervisor.

E.  At the end of each evaluation period, the employee's immediate supervisor will review the previous evaluation form as related to the previously established goals and complete an evaluation of the employee based on the performance for the previous year.

    1.  No time period, other than the previous evaluation period, shall be considered.

    2. The evaluation shall cover only that specific job function and/or rank the employee has held for that evaluation period, but may refer to future potential.

F. The immediate supervisor shall write specific comments about how the employee has met or failed to meet the performance standards for each criteria.  Comments by the rater are required when performance is either outstanding or unsatisfactory.

G. If employees are performing unsatisfactorily at anytime during the year, they shall be notified of this performance, in writing, as soon as the supervisor deems the performance is unsatisfactory.

1. Such written notification shall be made with the knowledge and approval of all the subordinate's supervisors, up to and including the Division Commander.
2. Written notification shall be signed by the employee and attached to the employee's current evaluation form which lists current goals.

F. Prior to presenting an evaluation to a employee, the rater's supervisors, up to and including the Division Commander, shall review the following areas and approve the evaluation.

    1.  The rater's supervisor shall ensure that the rater remained fair and impartial.

    2.  They shall ensure the rater applies ratings uniformly, and that the rater has previously counseled the employee concerning low productivity in performance areas, if any.

G. The evaluation shall then be presented to the employee, by the rater, and reviewed by the employee and rater together.

    1.   The employee shall be given a copy of the evaluation.

    2.   The employee shall have the opportunity to sign the completed evaluation indicating the employee has read and received a copy.

    3.   If the employee refuses to sign in the space provided, the rater shall appropriately note "refused" in the space provided.

H. In the event of a contested evaluation, the employee may appeal within five days of receipt of the evaluation to the rater's immediate supervisor, up to and including the Undersheriff.

1. The appeal must be made in writing, substantiating the basis for appeal

    2.  The immediate supervisor may include additional information, as needed, to document the evaluation.

    3.  The Undersheriff has the final authority regarding contested evaluations.

I. The employee may, at any time, after being presented the evaluation and throughout the appeal process, place comments on a separate page and attach it to the evaluation, which is retained by the Personnel Section.

J. After the evaluation process is completed and reviewed by the employee, it will be forwarded to the Personnel Section for inclusion into the employee permanent personnel file.

K. A supervisor may review the employee evaluation forms in the personnel files for the following reasons:

    1. Determining suitability for future assignment.

    3.   Employee training needs and further career development opportunities.

    4.   Determining ability to accept additional responsibility.

    4.   Effectiveness in the assigned position.

    5.   A supervisor shall not obtain a personnel file or past evaluation forms for personal use or any reason other than articulable professional job related use.

L. The Administrative Services Division shall review the evaluation process and procedures at least annually for the continuous improvement of the system and will make appropriate recommendations to the Undersheriff.

M.  Recommendations may be to:

    A)  Leave the evaluation system as is.

    B)  Modify, in some form, the current system and make recommendations for such modifications.

    C)  Do away with the current system and make recommendations for a new system.

2.  Objectives of the yearly review will be to:

    A)  Identify instances of extreme ratings and reasons for extreme ratings.

    B)  Determine the number of contested evaluations and the reasons for them.

N.  Employees who conduct performance evaluations on subordinates, shall receive periodic training on the following areas:

    1.  General subordinate counseling and evaluation.

    2.  Skills, knowledge and abilities assessment techniques.

    3.  Use of Office evaluation forms.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 312 |
|---|---|---|---|
| *Subject:* **INTEROFFICE TRANSFERS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | | *Reevaluation Date:* | *No. Pages:* 3 |

## I.   PURPOSE:

To provide commissioned and non-commissioned employees of the Office with the guidelines for cross-divisional transfers.

## II.   DEFINITIONS:

POSITION:  The duties and responsibilities, or work, assigned to one member.  Any position may be filled at the discretion of the Sheriff.

TRANSFER:  The lateral movement and/or reassignment from one division within the Office to another division.

ROTATING ASSIGNMENT  - A rotating assignment is of specified duration.  Rotating assignments shall be made to various Divisions throughout the Office.  Rotating assignments of Deputies shall be two years, with the exception of an assignment to D.A.R.E., which shall be for a period not to exceed five years and Investigations which shall be for a period not less than two years.

CORE ASSIGNMENT **-** A permanent assignment that is not subject to reassignment or rotation within a specified time frame. Core assignments exist within the entire organization. Those personnel assigned in a core position may be subject to reassignment for substandard performance.

 SPECIAL ASSIGNMENT **-** A special assignment of unspecified duration may be made to Special Weapons and Tactics, Special Operations Response Team, Public Information, Field Training Officer, School Resource Office or Mounted Patrol. Each specialized assignment shall be reviewed annually to determine if it should be continued.  Consideration shall be given to the initial circumstances requiring implementation of the assignment and a cost-benefit analysis of continuing the specialized assignment.

TEMPORARY ASSIGNMENT **-** A temporary assignment is an unspecified duration but normally not in excess of two years.   A temporary assignment may be made to any area of the Office and is made at the discretion of the Sheriff.   The duration of a temporary assignment is determined by the nature of the task(s) to be performed, or expertise to be achieved.

## III.   POLICY:

It is the policy of the Sheriff's Office to provide commissioned and non-commissioned employees with cross-divisional transfers in filling the personnel needs of the particular divisions and the enhancement of individual career development.  In order to ensure effective, efficient daily operation of each component of the Office, personnel assignments will vary by

nature and duration.  Sergeants may rotate through assignments.  Sergeants may also be able to compete for core, rotating, special or temporary assignments. Deputies may be subject to core, rotating, special, or temporary assignments.

## IV. PROCEDURE:

A.  The initial assignment shall generally be for a minimum of twenty-four months from date of hire.  This applies to sworn employees hired after January 1, 2002.

B.  Selection processes for core and rotating assignments shall be conducted periodically as openings occur.  Any employee, however assigned, may participate in any selection process for which he/she is qualified.

C.  Written notification shall be posted throughout the Sheriff's Office at least five calendar workdays prior to the beginning of the selection process.

D.  The notification shall include a list of all positions for which a selection process will be conducted, the minimum requirements for each position, and any special requirements or restrictions.

E.  In order to participate in a selection process, an employee must be eligible, not on any type of probation and meet any special requirements or restrictions by the closing date of the notification.

F.  Any interested employee shall submit a memorandum to their immediate supervisor indicating intent to compete for the position. The memorandum should include any training, expertise, experience, and special qualifications relevant to the position.

G.  Upon receipt of the employee's memorandum, the supervisor shall prepare a memorandum recommending or not recommending the employee for the position.  The memorandum shall be based on the employee's recent evaluations and any other documented behavior or performance.  The memorandums will be forwarded to the Personnel Section.  The Personnel Section will forward all relevant memorandums to the Division Commander in whose Division the vacancy exists.  The Division Commander shall determine the employee's eligibility, fitness and qualification for the assignment.

H.  Within a reasonable time period, the employee shall be advised by the Division Commander if the application has been rejected, and the reasons for rejection.

   1.  The employee may file a grievance, based on the Division Commander's decision, in writing to the Undersheriff.  The appeal must be submitted within three working days of the employee's notification of rejection.

   2.  The decision of the Undersheriff shall be final.

I.  The Division Commander in whose Division the assignment is to be made will conduct a selection process of all eligible applicants.

   1.  The selection process shall be determined by the Division Commander with the approval and authorization of the Undersheriff.

    2.   At the conc1usion of the selection process, a list of successful candidates, in rank order shall be provided to the Undersheriff.  Once the vacancies are filled, the list will be terminated unless otherwise approved by the Undersheriff.

    3.   All applicants shall be briefed on their final outcome, and upon request, shall be critiqued by a member of the selecting board.

J.   Transfer from rotational assignments shall be mandatory at the end of the specified time; however, extensions may be granted by the Sheriff or Undersheriff if the extension is determined to be in the best interest of the Office.

K.   At the conclusion of a rotating or temporary assignment, Deputies shall return to their previously assigned assignment, provided a vacancy exists.  If no vacancy exists, the employee shall be assigned to any vacancy within the Office based on the needs of the organization.  The Undersheriff shall make the final decision on employee assignments.

L.   Selection processes for special assignments shall be scheduled as needed and conducted in the same manner as Section (F) through (I).

M.   Transfer of an employee from any assignment may be directed by the Sheriff after a request from the assigned employee, or because of promotion, disciplinary action, unsatisfactory performance, or when it is deemed to be in the best interest of the employee or the Office.

**PARK COUNTY SHERIFF'S OFFICE
POLICY AND PROCEDURE MANUAL**

| Effective Date: 11-29-06 | Approval: | Number: 313 |
|---|---|---|
| Subject: *PROMOTIONS* | | |
| Reference: | | Standard: |
| Chapter: III | Reevaluation Date: | No. Pages 2 |

**I. PURPOSE:** To establish procedures for promoting personnel rank within the Park County Sheriff's Office.

**II. DEFINITIONS:**

**III. POLICY:** It is the policy of the Sheriff's Office to provide career development opportunities to it's employees and ensure the most suitable candidates are promoted to the rank of Corporal, Sergeant and Captain. This shall be accomplished in a fair and objective manner.

**IV. PROCEDURE:** Each candidate will be given a cumulative score and placed on a promotional list when the testing procedures are completed.

   A. The testing process will consist of two (2) major parts, a written test and an oral assessment. Each part will be scored to obtain accumulative scores for each candidate.

     1. **Written Test:** The written test can be the standard question answer sheet or a scenario based testing device. Candidates who do not pass the written test with a minimum score of 70% will be eliminated from the testing process.

     2. **Assessment Center:** The assessment center will consist of four to ten primarily scenario-based questions. The assessment board, comprised of three to four assessors, will score the candidates on their knowledge, skills and abilities. Employees who fail the assessment will not be eligible for promotion.

       a. A chairperson of the assessment board will be identified prior to the assessment center.

       b. Candidates who compete in the assessment center will be given the opportunity to e critiqued by the Chairperson of the Assessment Board. This is not to be construed as an opportunity to challenge the board. This is for career

development purposes only.

  **c.** The date for the critique will be announced following the assessment.

3. The accumulative score will be totaled for each candidate and listed in numerical order beginning with the top score. Each list shall be in effect for a period of six (6) months.

4. When openings exist, the Sheriff may review each candidate's personnel file, internal affairs records, and conduct interviews with the candidates and their respective chain of command.

5. Promotions will be filled from the list. Sergeant positions may be filled by appointment of the existing district Corporal at the discretion of the Sheriff.

6. The Sheriff will have the final authority of all positions.

7. The Senior Sergeant Designation is to recognize commissioned supervisors, (Sergeants) who have longevity with the department, who consistently work to improve morale, training and take on additional responsibilities such as SWAT, SORT or other activities that are of a technical or specific in nature, that provide a strong benefit to the department.

This designation, in combination with superior skills as a manager, embodies self-sacrifice and performance of service above and beyond the scope of duties under conditions that manifest a serious risk of death or bodily injury.

This designation is to acknowledge superior performance, management, dedication and does not carry with it any additional authority or superiority over other sergeants.

Defendants' Motion to Dismiss, Exhibit A

**PARK COUNTY SHERIFF'S OFFICE**
**POLICY AND PROCEDURE MANUAL**

| *Effective Date*: 11-22-2011 | *Approval:* | *Number:*  314 |
|---|---|---|
| *Subject:*  **CONDUCT RULES AND REGULATIONS** | | |
| *Reference:* | *Standard:* | |
| *Chapter:*  III | *Reevaluation Date:* | *No. Pages* 7 |

**I.  PURPOSE:**

To identify rules and regulations regarding the conduct of the Sheriff's Office members.

**II.  DEFINITIONS:**

<u>MEMBER:</u>  A commissioned and non-commissioned employee or volunteer of the Park County Sheriff's Office.

**III.  POLICY:**

It shall be the policy of the Sheriff's Office to establish general rules of conduct for its employees.  These rules will be established in accordance with existing laws as expected by law enforcement personnel and the citizens of this community.

**IV. PROCEDURE:**

A.  GENERAL RULES OF CONDUCT:

Rules and regulations are designed as guidelines for behavior in an organization.  They are not intended to cover every case that may arise, but help establish a base by which individuals will make acceptable decisions in areas that may not be specifically addressed.  Each member of the Sheriff's Office shall be provided a copy of the Police Code of Conduct and the Law Enforcement Code of Ethics, which is contained in this Policy Manual.

1.  OBEDIENCE TO ORDERS

Members will obey any order lawfully issued by a supervisor or Command Officer.

2.  VIOLATION OF RULES

Members will not commit any act that constitutes a violation of any Office rules, regulations, procedures, responsibilities, instructions or written directive.  In the event of improper action or breach of discipline, it will be presumed that the employee was familiar with the rules, policies, procedures, responsibilities, instructions or orders.  Furthermore, members will not aid, abet, or incite another in the violations of rules, duties, orders, policies, or procedures of the Office.

3.  VIOLATION OF LAWS

Members will not violate or conspire to violate city ordinances, county resolutions, state, or federal laws.  Members who are contacted, arrested, or charged with any offense, while on or off duty, will immediately notify their Division Commander.

4. ABUSE OF AUTHORITY

Members will not use their authority for personal gain, nor shall they use their position or status to avoid prosecution for any criminal activity to include traffic violations.

5. REPORTING VIOLATIONS

Members shall, upon observing or otherwise becoming aware of another's violation as specified above in #2 or #3 will report such violations to their supervisor.

6. PERFORMANCE OF DUTY

Members of the Sheriff's Office will faithfully perform their duties to the best of their knowledge, skills or abilities at all times.   Members will not read recreationally, play games, watch television or movies, or otherwise engage in entertainment while on duty, unless authorized by their supervisor.   Members will not engage in personal activities or business while on duty, which would cause them to neglect or be inattentive to duty.

7. SEAT BELT REQUIREMENT

Members and their passengers shall wear seat belts while operating a county vehicle, unless a Standard Operating Procedure exists within a Division that exempts the use of seat belts. When transporting handcuffed prisoners, members are required to fasten the seat belt restraint for the prisoner unless in the process of securing a resistive prisoner, they or the member, may sustain physical injury.

8. DRINKING ON DUTY

Members will not drink alcoholic beverages while on duty or on a "on-call basis", either in or out of uniform.

9. CALL FOR DUTY/ PHONE AND ADDRESS

Members "off duty" shall immediately report for duty upon receipt of an order to do so. Members are required to maintain a phone and/or cell phone that must have service at their residence and provide personnel with their phone number and physical address. Changes that occur must be made to personnel within 72 hours of the change.  Cell phone numbers, voice mail numbers and phone blocks that would prohibit the acceptance of calls from unidentified numbers are not suitable substitutes.

10. TARDINESS

Members of the Sheriff's Office shall be punctual in reporting for duty, court or any other time there is a specified report time.

11. RESPECT FOR COMMANDING OFFICERS AND OTHER EMPLOYEES

Members will treat Supervisors and Command personnel with the respect and courtesy due them as Supervisors and Command personnel.   Members will treat other members of the Office with the respect and courtesy due them as fellow employees.  At no time will a member record a conversation of another member without that person being advised that they are being recorded.

12. RESPECT FOR PRIVATE CITIZENS

Members will be courteous to the public.   Members will control their tempers and not engage in argumentative discussion.  They will not use curse, violent, profane, or insolent language.

13. RESPONSIBILITY TO THE PUBLIC

Members shall serve the public by direction, counsel, and in other ways not to interfere with the discharge of their official duties.  They will respect the Constitutional rights of the individuals and perform their services with honesty, discretion, fidelity and sound judgment.

14. COWARDICE

Members of the Office are expected to perform their duties in spite of personal danger. Foolhardy actions and tombstone courage are not expected; however, members are to answer calls for help from fellow Officers and private citizens, despite the personal danger involved.  Members will not shirk their duties because of personal danger.

15. SLEEPING ON DUTY

Members will not sleep on duty unless authorized by a supervisor.

16. LOITERING IN OR ABOUT THE OFFICE

Members will not linger, or loiter in or about any Office or structure of the Office or other building concerned with the Office unless their duty requires it.

17. LOITERING IN PUBLIC/PRIVATE PLACES

While on duty, members will not loiter in or about any public or private place unless their specific presence is required.

18. FALSE REPORTS

Members will not make a false report either oral or written.

19. DEPARTING FROM THE TRUTH

Members will not willfully or knowingly depart from the truth in any manner, to include giving testimony or in connection with official duties except in the lawful performance of their assigned duties.   Upon order of superior, members shall truthfully answer all questions specifically, directly and narrowly related to their scope of employment and operation of the Office that may be asked of them.

20. APPEARANCE IN UNIFORM

Members in uniform will strive to maintain a clean and neat appearance at all times, giving proper attention to personal hygiene and maintenance of the uniform so as to reflect credit upon the Office.  Members will follow prescribed regulations for uniform and personal appearance.

21. APPEARANCE IN COURT

Members appearing in court for testimony or for any other reasons will wear the prescribed uniform in the prescribed manner, or attire themselves in acceptable business attire.   Members will conduct themselves in a professional manner as to not bring discredit upon the Office.

22. NARCOTICS

Members will not use or possess for use any illegal narcotics, hypnotic, barbituate, hallucinogenic, or somnifacient drug, except according to a prescription and under the supervision of a licensed doctor or dentist.

23. DRINKING WHILE OFF DUTY

Members will not drink alcoholic beverages while off duty to an extent that renders them unfit to report for scheduled duty or results in the commission of an obnoxious or offensive act that might tend to bring discredit upon the Office.  Personnel shall not be in possession of a firearm while under the influence of alcoholic beverages.

24. CONDUCT UNBECOMING

Members will conduct themselves at all times both on and off duty in a manner that reflects most favorably on the Office.  Members will not engage in conduct prejudicial to the good order and discipline, or in conduct unbecoming a law enforcement Officer, a gentleman, or a lady.  Members will not participate in any immoral, indecent, lewd, or disorderly conduct.

25. INTIMIDATION

Members in their official capacity will not intimidate any person for personal reasons.

26. CRITICISM OF OFFICIALS

Members will not criticize the Office, the Courts, District Attorney's Office or other elected officials, except through official channels and by use of the prescribed procedures.  This rule is not intended to preclude the offering of personal opinions, while off duty, in the course of conversations deemed to be private.

27. DISRESPECTFUL OR INSOLENT LANGUAGE

Members will not utter any disrespectful, mutinous, insolent, or abusive language toward another member, supervisor, subordinate, staff officer or citizen.

28. IMPARTIAL ATTITUDE

Members, while being vigorous in enforcement of the law, will maintain a strictly impartial attitude toward complainants or violators.  Members will, at all times, consider it to be their duty to be of service to anyone regardless of race, color, age, creed, or sex.

29. GIVING NAME AND OTHER INFORMATION

Members will politely give their name and other pertinent identifying information to violators or other persons requesting it, unless such action may jeopardize an Office mission.  Business cards are provided by the Office and are appropriate for a situation of this type.

30. CONSORTING WITH PERSONS OF BAD CHARACTER

Members will not consort or otherwise fraternize or associate with known gamblers, drunkards, prostitutes, criminals, or other persons of bad character, unless it is in association with law enforcement duties.  Members shall not develop relationships with any incarcerated inmate and will report the incarceration of any person with whom they already have a relationship.

31. USE OF TOBACCO/SMOKING ON DUTY

All work areas and break areas are designated as smoke-free areas.  In addition there will be no smoking in any county owned Sheriff's Office vehicle. There is no tobacco use within twenty-five feet (25) feet of any public exit or entrance at any Sheriff's Office facility unless designated for that purpose.  Members will use discretion in the use of tobacco while in the public view, so as not to discredit the Office.  Members who use smokeless tobacco will not expectorate in an offensive manner.

32. SOLICITING OR ACCEPTANCE OF A BRIBE, GIFT OR GRATUITY
Members will not solicit, offer, or accept a bribe, gift or gratuity.  Members will not trade, barter, accept or purchase any item from any merchant at a rate lower than what is charged their regular customer, or what is considered to be below the fair market value of the item.  Members will not receive any article, whatsoever, whether as a gift or as the result of purchase or trade, from suspects, prisoners, persons recently arrested, or from gamblers, prostitutes, or from bondsmen or other persons whose interests may profit from information obtained from law enforcement, or from friends, relatives, or associates of these people.

33. GIVING TESTIMONIALS, SEEKING PUBLICITY
Members will not give testimonials or permit their names or photographs to be used for advertising purposes without the approval of the Sheriff.  Members will not seek personal publicity either directly or indirectly in the course of their employment.

34. SOLICITING BUSINESS
Members will not solicit subscriptions or sell anything on duty without the approval of the Sheriff or Undersheriff.

35. ACCEPTANCE OF REWARDS
Members will not accept rewards from individuals or organizations for an act that is their duty to perform or is done during the normal course of duty.  Members will not file or apply for rewards from the military services for the apprehension or deliverance to military authorities of AWOLS or deserters.  If any individual or organization desires to make a contribution to the Office in appreciation for services provided by the Office or by an Office member, the funds will be deposited to the County General Fund that is used to benefit all employees.

36. APPROPRIATING PROPERTY
Members will not appropriate any lost, found, evidential, or Office property to their own uses.

37. DESTRUCTION OF EVIDENCE
Members will not destroy evidence unless lawfully ordered to do so by their supervisor or the court having jurisdiction.

38. MISUSE OF OFFICE EQUIPMENT
Members will not use Office vehicles for personal or private affairs unless the use is approved by the Division Commander or the Sheriff.  Members will use care in handling of Office or County property. Members will not willfully, damage, misuse, neglect, abuse, or lose County or Office property.

39. FAILURE TO MAKE REPORTS
Members will not fail to make or destroy information relating to official business or investigations of criminal activity.  Neither will they alter or destroy information relating to official business or an investigation of criminal activity.

40. INTERFERENCE WITH INVESTIGATION
Members will not interfere with or inhibit lawful investigation or reporting of criminal activity by this or any other law enforcement agency.

41. RELEASING INFORMATION
Members will not release official information to those not entitled to it, nor will they inhibit the release of information to those who have a right to the information.

42. RESPECT FOR NATIONAL COLORS
Members, on or off duty, will show appropriate accepted respect for the National Colors and Anthem. When in uniform, commissioned personnel will render a military salute for the National Anthem or when the National Colors are passing in review.

43. TRIVIAL OFFENSES
Members will not make arrests when a warning or citation would suffice.

44. TREATMENT OF OFFENDERS/ PRISONERS
Members will not mentally or physically abuse a prisoner in their custody.  Members will not allow a prisoner in their custody to be mentally or physically abused by anyone.

45. DELAYING AN ARREST - AIDING ESCAPE
Members will not engage in action that would prevent or delay an arrest, nor will they aid in the escape of a prisoner.

46. EQUIPMENT, CARRIED ON PERSON
All deputies that are commissioned peace Officers are authorized to carry an Office approved weapon while off duty.  When carrying a weapon off duty, personnel will carry their badge and identification cards.   Additional information can be found in Policy 603.

47. UNIFORM RESTRICTION WHILE OFF-DUTY
Deputies will wear their uniform only when required for duty or decorum.  Deputies may wear their uniform in transit to and from duty or other official functions requiring wear of the uniform. Members who are off duty and in uniform will conduct themselves as if they were on duty.

48. TESTIFYING IN CIVIL CASES
Members shall not testify in civil cases unless legally summoned or unless such civil suit is initiated by the member.   Members will not provide statements of any type for a civil case to attorneys, investigators, or others, without being legally summoned.  Any member subpoenaed to testify or provide a statement for the defense in any trial, or against Park County, or against the interest of the Office in any hearing or trial shall notify the Sheriff and District Attorney upon receipt of the subpoena.

49. SERVICE OF CIVIL CASES
Members shall not serve Civil Processes except those initiated by the courts.

50. INITIATION OF CIVIL CASES
Members shall not initiate civil action arising out of their official duties without first notifying the Sheriff by Intra-Office Memorandum.

51. POLITICAL ACTIVITIES ALLOWED
Personnel of the Sheriff's Office may participate in political activities and political campaigns while they are off-duty, so long as these activities are lawful and do not result in inefficient or ineffective performance of duty, or reflect discredit upon the Sheriff's Office.  Personnel, excluding the Sheriff, will not engage in political activity of any kind

while on duty.

52. USE OF FORCE
Members will not use more force than what is reasonable and necessary to apprehend or subdue anyone.  They will be treated in a fair and humane manner and will not be humiliated, ridiculed, or taunted.  For additional Information see Policy 501.

53. FEIGNING ILLNESS
Members will not feign illness or injury in an effort to avoid duty.

54. ENDORSEMENTS OR REFERRALS
Members in their official capacities will not recommend or suggest, in any manner, the employment or procurement of any particular product, professional service, or commercial service (attorney, bonding agent, towing company, or ambulance service) to any non-employee or inmate.

55. POSTING BAIL
Members will not post bail for any person arrested, except for members of their own family.

56. REMOVAL / DESTRUCTION OF RECORDS
Members will not remove or destroy departmental records or reports from the Office where they are maintained without proper authority.

57. VIOLENCE IN THE WORK PLACE
Members of the Sheriff's Office will not maliciously threaten, strike, or harass, any other member of the Sheriff's Office or any other employee of a County Office.

# PARK COUNTY SHERIFF'S OFFICE

# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval*: | *Number* 315 |
|---|---|---|
| *Subject:* **Off-Duty Conduct: Powers of Arrest** | | |
| *Reference:* | *Standard:* | |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages:* 2 |

**I.   PURPOSE:**
The purpose of this policy is to provide guidelines to officers regarding acceptable criteria for effecting an off-duty arrest.

**II.  DEFINITIONS:**
Personally involved: An officer is deemed personally involved where the off-duty officer, a family member, or a friend becomes engaged in a dispute or incident involving a personal matter with the person to be arrested or any other person connected with the incident.  This does not apply to situations where the police officer is a victim of crime.

**III. POLICY:**
Off-duty officers are often faced with situations involving criminal conduct that they are neither equipped nor prepared to handle in the same manner as if they were on duty.  This may lead to unnecessary injuries to off-duty officers, and confusion for those on-duty officers arriving at the scene trying to correctly assess the facts.  In order to promote safety and efficiency, it is the policy of the Park County Sheriff's Office to determine and regulate those situations and locations within which a commissioned member is permitted to make an arrest while off-duty.

**IV.   PROCEDURE:**

A.  Liability Protection
Officers of this agency have liability protection for the on- and off-duty performance of official duties.  This protection does not extend to acts intended to cause injury or damage, or to those actions that the officer knew, or reasonably should have known, were in conflict with the law or the established policies of this agency.

B.  Permitted Off-Duty Arrests
When off-duty and within the legal jurisdiction of this law enforcement agency, an officer may make an arrest only when:

1. The arresting officer is not personally involved in the incident underlying the arrest; and

2. There is an immediate need to prevent a crime or apprehend a suspect; and

3. The crime would require a full custodial arrest; and

    4. The arresting officer possesses appropriate police identification.

C.  Off-Duty Responsibilities

    1. While off-duty, the officer is responsible for immediately reporting any suspected or observed criminal activities to on-duty authorities.

    2. Except as allowed by this policy, off-duty officers should not enforce minor violations such as harassment, disorderly conduct, or other nuisance offenses. On-duty personnel shall be contacted to respond to the situation where an off-duty officer becomes aware of such violations.

    3. Where an arrest is necessary, the off-duty-arresting officer shall abide by all departmental policies and procedures.

D.  Prohibited Off-Duty Arrests
Officers of this agency may not make an arrest off-duty:

    1.  When the arresting officer is personally involved in the incident underlying or the arrest; or

    2. When engaged in off-duty employment of a non-police nature, and the officer's actions are only in furtherance of the interests of the private employer; or

    3. When the arrest is made solely as enforcement of a minor traffic regulation. Despite the fact that a police officer has police powers and responsibilities 24 hours a day throughout the jurisdiction, the off-duty officer should not enforce minor traffic regulations.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date:* 05/18/2010 | *Approval:* | *Number:*  316 |
|---|---|---|
| *Subject:*  **HARRASSMENT AND DISCRIMINATION IN THE WORKPLACE** | | |
| *Reference:* | *Standard:* | |
| *Chapter:*  III | *Reevaluation Date:* | *No. Pages:*  6 |

### I.    PURPOSE:

The purpose of this Policy is to clearly establish the Park County Sheriff's Offices' commitment to provide a work environment free from harassment, to define discriminatory harassment, and to set forth the procedure for investigating and resolving internal complaints of harassment. Because of the tremendous importance of a workplace free from any form of harassment, this policy **shall** be reviewed by each supervisor or manager to his or her personnel on an annual basis. Additionally, during each employee's annual performance evaluation, this policy shall be fully discussed with each employee, supervisor and manager to ensure that it's contents are known by the employee.

All jobs with the Park County Sheriff's Office are extremely important to the public safety of our community. It is critical that all employees treat all other employees with dignity and respect. Because of the unique circumstances present in many police department jobs, it is the responsibility of each and every employee, supervisor and manager to make sure that there is no inappropriate behavior occurring in the workplace. Inappropriate behavior, which impacts the workplace, or has the potential to impact the workplace will not be tolerated.

This Policy applies to all terms and conditions of employment, including but not limited to hiring, placement, promotion, disciplinary action, layoff, reinstatement, transfer, leave of absence, compensation and training.

### II.    DEFINITIONS:   For purposes of clarification, harassment includes but is not limited to the following behaviors:

VERBAL HARASSMENT: Epithets, derogatory comments, slurs, propositioning, or otherwise offensive words or comments on the basis of race, religious creed, color, national origin, ancestry disability, medical condition, marital status, pregnancy, sexual orientation, gender or age, whether made in general, directed to an individual, or to a group of people regardless of whether the behavior was intended to harass. This includes but is not limited to inappropriate sexually oriented comments on appearance, including dress or physical features, sexual rumors, code words, and race oriented stories.

PHYSICAL HARASSMENT: Assault, impeding or blocking movement, leering, or the physical interference with normal work, privacy or movement when directed at an individual on the basis of race, religious creed, color, national origin, ancestry, disability, medical condition, marital status, pregnancy, sexual orientation, gender or age. This includes pinching, patting, grabbing, inappropriate behavior in or near bathrooms, sleeping facilities and eating areas, or making explicit or implied threats or promises in return for submission to physical acts.

<u>VISUAL FORMS OF HARASSMENT:</u>  Derogatory, prejudicial, stereotypical or otherwise offensive posters, photographs, cartoons, e-mails, notes, bulletins, drawings or pictures on the basis of race, religious creed, color, national origin, ancestry, disability, medical condition, marital status, pregnancy, sexual orientation, gender or age. This applies to both posted material or material maintained in or on Park County Sheriffs Office equipment or personal property in the workplace.

<u>SEXUAL HARASSMENT:</u>   Any act which is sexual in nature and is made explicitly or implicitly a term or condition of employment, is used as the basis of an employment decision, unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment.

## III.  POLICY:

Harassment of an applicant, client, contractor, business invitee, customer or employee by a supervisor, management employee, or co-worker on the basis of race, religion, color, national origin, ancestry, disability, medical condition, marital status, pregnancy, sexual orientation, gender or age is explicitly in violation of State and/or Federal law and will not be tolerated by the Park County Sheriff's Office.

Employees found to be participating in any form of job based harassment or retaliation against another employee shall be subject to disciplinary action up to and including <u>termination from employment</u>.

## IV.   PROCEDURE:

A.   Responsibilities

1.   Management:   It is the responsibility of management to develop this policy, keep it up to date, and to ensure that any violation of this policy brought to their attention is dealt with fairly, quickly, and impartially. All managers are also required to set the proper example at all times.

2.   Supervision: It is the responsibility of supervision to enforce the policy, to make a quarterly review with each employee to ensure they know the policy and to regularly check the workplace and environs to make ensure the policy is being followed. When a deviation from this policy is noted or reported, supervisors shall bring this information to management immediately. Additionally, supervisors are required to set the proper example at all times.

3.   Workers: It is the responsibility of each and every employee to know the policy and to follow the policy. It is imperative that every employee treats every other employee with dignity and respect so as to facilitate a sound professional work environment.

B.   Workplace Relationships

1.   The First Amendment allows anyone to associate with anyone else they desire. It is natural for people who meet in the workplace to sometimes become romantically involved, and it is not the Department's intent to interfere with any dating relationship. Any involvement between employees must be voluntary and desired by both parties. However, many problems have developed in police departments because of dating relationships, and they can interfere with our goal of having a sound

professional work environment. It is not inappropriate for a person to ask out a co-worker.

2.   However, if you do not want to go out with another employee, it is imperative that your response to the request is firm and definite. After this firm, definite response has been made, it is inappropriate for the requesting party to make any further attempt to initiate a dating relationship. Repeated requests for a dating relationship constitute Sexual Harassment. It is also inappropriate for any relationship to interfere with normal work operations in any manner. Personnel who desire to become involved with someone in the workplace must be aware of the following guidelines.

a.   There shall be no dating activities on company time or company property.

b.   There shall be no use of company property to arrange dating activities.

c.   All behavior between employees shall be behavior conducive to a sound professional work environment at all times when on company property or on company time. Hand holding, kissing, hugging, sexual comments and other behavior generally associated with a dating relationship are inappropriate while on company time or company property.

d.   Any relationship involving personnel at different levels on the chain of command (or where one party has functional supervision over another) shall be reported by the person of higher rank to his/her supervisor immediately. Failure to report this relationship is a violation of this policy. The manager receiving this information shall immediately contact Personnel and inform them of the relationship. Personnel shall contact the Chief Officer and make recommendations to ensure that this relationship will not detract from a sound professional work environment. Such recommendations may include the transfer of the higher-ranking person to another unit or another shift.

C.   Complaint Procedure

1.   Confrontation

If any person feels they are the victim of any form of harassment, they should inform the person(s) participating in this behavior that he/she finds it offensive. This one on one confrontation has been demonstrated to be an effective way to end harassing behaviors. If the inappropriate behaviors do not stop, the offended employee can initiate either an informal or formal complaint as described below. Because confrontation is difficult for some people and because of the complex nature of harassment, employees are not required to confront an offending party prior to initiating this complaint procedure.

2.        Informal Complaint

Any employee, client, contractor, customer or job applicant who believes he or she is a victim of discriminatory workplace harassment should make a complaint orally or in writing with any of the following:

a.        Immediate supervisor.

b.        Any supervisor or manager within or outside of their department.

c.        Any Division head.

d.        The Director of Personnel & Employee Relations or his/her designee.

3.        Any supervisor, manager or division head that observes inappropriate behavior or receives a harassment complaint <u>shall</u> notify the Director of Personnel & Employee Relations and/or Personnel management staff immediately.

4.        An informal resolution will be attempted whenever appropriate. If the informal resolution process is unsuccessful, the complainant may direct a formal complaint to the Personnel Division.

D.        Formal Complaints

1.        Preliminary Complaint  (preliminary complaint can be a verbal or written)

a.        Filing of a Preliminary Complaint

Any employee, client, customer, contractor or applicant who alleges to be a victim of discriminatory workplace harassment should, within 30 calendar days of the alleged incident:

1) Contact his/her supervisor OR

2) Contact the Director of Personnel & Employee Relations or his/her designee at the Personnel Division.

2.        Time Extension

The Director of Personnel and Employee Relations may extend the time requirements set forth in this procedure when he/she determines it is in the best interests of fairness and justice to the parties involved.

3.        Review of Preliminary Complaint

Upon notification of a harassment complaint, the supervisor and/or the Personnel Division designee shall conduct an initial investigation to make a preliminary determination as to whether there is any merit to the complaint. If no merit is found, the supervisor and/or the Personnel

Division designee may still meet with the parties involved to attempt to conciliate the complaint or conflict between the parties.

4.    Formal Complaint

    a.    If after an initial investigation is conducted, there is no resolution and/or no conciliation of the preliminary complaint, a formal written complaint can be filed by the complainant. The Personnel Division will issue a Discriminatory Workplace Harassment Form to the complainant. This form shall be completed, signed and returned to the Personnel Division within five (5) days after issuance.

    b.    Upon receipt of the formal written complaint, the Personnel Division will contact the alleged harasser(s) who will be informed of the basis of the complaint, will be given a copy of Form, and will be provided an opportunity to respond. The response shall be in writing, addressed to the Director of Personnel and Employee Relations, and received by the Personnel Division within ten (10) calendar days after being notified of the complaint. Concurrently, a formal investigation of the complaint may be commenced.

E.    Review of Response and Findings

1.    Upon receipt of the response, the Personnel Division Designee may further investigate the formal complaint. Such investigation may include interviews with the complainant, the accused harasser(s), and any other persons determined by the Personnel Division Designee to possibly have relevant knowledge concerning the complaint. This may include victims of similar conduct.

2.    Factual information gathered through the investigation will be reviewed to determine whether the alleged conduct constitutes harassment, giving consideration to all factual information, the totality of the circumstances including the nature of the verbal, physical, visual or sexual conduct and the context in which the alleged incident(s) occurred.

3.    The results of the investigation and the determination as to whether harassment occurred shall be final and binding and will be reported to appropriate persons including the complainant, the alleged harasser(s), the supervisor and the division head within twenty (20) calendar days from the receipt of the response.

F.    Disciplinary Action

If harassment is determined to have occurred, the Director of Personnel & Employee Relations shall take and/or recommend to the appointing authority prompt and effective remedial action against the harasser. The action will be commensurate with the severity of the offense, up to and including termination from employment. If discipline is imposed, the nature and extent of the discipline will not divulged to the complainant.

G.    Retaliation

Retaliation in any manner against a person for filing a harassment charge or initiating a harassment complaint, testifying in an investigation, providing information or assisting in an investigation, is expressly prohibited and subject to disciplinary action up to and including removal. The Director of Personnel & Employee Relations will take reasonable steps to protect the victim and other potential victims from further harassment, and to protect the victim from any retaliation as a result of communicating the complaint.

H.    Confidentiality

Confidentiality will be maintained to the fullest extent possible in accordance with applicable Federal, State and local law.

I.    False Complaints

Any Complaint made by an employee of Park County Sheriff's Office regarding Job Based Harassment which is conclusively proven to be false, shall result in discipline. This discipline may include dismissal from employment. This section is not intended to discourage employees from making complaints regarding Job Based Harassment. However, false complaints adversely impact the workplace and the career of the accused, even when disproved, and will not be tolerated.

J.    Limitations

The use of this procedure is limited to complaints related to discriminatory workplace harassment on the basis of race, religion, color, national origin, ancestry, disability, medical condition, marital status, pregnancy, sexual orientation, gender or age. All other complaints shall be handled through the Employee Grievance Procedure as established by the Employee Policy Manual.

K.    Distribution

This policy shall be disseminated and kept on file within the Policy and Procedure Manual by all employees the Park County Sheriff's Office. Any questions, concerns or comments related to this policy should be directed to the Director of Personnel & Employee Relations or his/her designee.

# PARK COUNTY SHERRIF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 317 |
|---|---|---|---|
| *Subject:* **PERSONNEL RECORDS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | *Reevaluation Date:* | | *No. Pages:* 3 |

**I. PURPOSE:**
To provide guidance on the access and the control of members personnel records.

**II. DEFINITIONS**:

**III. POLICY:**
It is the policy of the Sheriff's Office to maintain personnel files on each employee. The Sheriff's Office shall make provisions whereby an employee's personnel file is reviewed in a structured and controlled manner and not indiscreetly viewed for non-official purposes.

**IV. PROCEDURE:**
A. Review of Records:
Any person reviewing a personnel file will be required to complete the review log enclosed in each file. If copies are required, it must be annotated on the log as appropriate. Copies will not be released outside the agency without proper release documentation.

Internal Review:

1. Personnel records may be viewed by the following persons only:
   A) The member in interest.
   B) The Personnel Section.
   C) Supervisory personnel in the rank of Sergeant and above.

2. Personnel records may be reviewed only when access is necessary in the performance of duty.
   A) Promotional recommendation
   B) Performance evaluation
   C) Transfer consideration
   D) Disciplinary issues
   E) Award consideration
   F) Training issues

External Review:

3. Access may be granted to individuals outside the agency with one or more of the following:
   A) Personnel Information Release Form (signed by the member)
   B) The Park County Attorney's Office

    C)  A Subpoena, or Request for Records from an Officer of the court, upon request for en-camera review.

B.  Location of Records:

1.  Personnel records are maintained in the Personnel Section.  Personnel records will not be removed from this section unless directed by the Sheriff or Undersheriff.

2.  Personnel records will ONLY be maintained in the Personnel Section.  They will NOT be maintained in any other location such as a computer, or manual filing system or desk drawers.  This does not preclude those in a supervisory rank from maintaining a temporary active working file for evaluation and corrective actions only.  These active working files are limited to 12 months in duration and must be purged.  The 12-month period will begin following the employee's performance evaluation and purged following the subsequent performance evaluation.

3.  The following information will not be stored, printed, reprinted from Sheriff's Office rosters, transmitted or distributed in any form unless authorized by the Sheriff.

    A)  Social Security Number
    B)  Date of Hire
    C)  Date of Birth
    D)  Home Address
    E)  Date Terminated
    F)  Spouse's Name
    G)  Rate of Pay
    H)  Telephone Numbers

C.  Contents of Record:

1.  The following information is contained in a personnel file.

    A)  Original Application
    B)  Evaluation
    C)  Disciplinary Actions
    D)  Verification of Employment
    E)  Letters of Appreciation, Commendation, Promotion, or any other forms of recognition
    F)  Certificates of Training
    G)  Demographic Information
    H)  Personnel Action Requests (promotions, transfers, demotions)
    I)  Requests for Transfer or Promotion
    J)  Payroll Change Request
    K)  Personnel Inventory

D.  Accuracy of Records:

1.  An employee who wishes to challenge information contained in his/her personnel file will notify the Undersheriff by memorandum through the chain of command.  The memorandum will include the following:

    A)  The specific information challenged; and

        B)  any argument, evidence or documentation the employee may have to support his/her position.

   2.  The Undersheriff will respond in writing with his findings within ten (10) working days.

   3.  Copies of the employee's request for a personnel file revision and the Undersheriff reply will be placed in the personnel file except under the following circumstances:

        A)  If the information provided is negative in nature; or

        B)  if the Undersheriff has granted the employee's request for the revision or expungement.

E.  Medical Information:
   1.  The Personnel Section shall be responsible for the control and maintenance of employee medical information.
   2.  All employee medical information shall be stored in a private medical file.
   3.  Medical files shall be stored in a secured manner and treated confidentially.

E.  Release Of Personnel Information/Employment Inquiries:

   1.  Information will be released in writing only.  All written inquiries must go through the Personnel Section and contain a Release of Information form.  Personnel will check for verification of the signature on the Release of Information Waiver.  The Personnel Section will verify the signature and forward it back to the person receiving the inquiry.  Upon completion of the inquiry, it will again be forwarded to the personnel section for filing and mailing purposes.

   2.  All oral employment verifications and inquiries will also go through the Personnel Section.  Information will not be given over the telephone by any employee of the Sheriff's Office concerning employment history on past or present employees.  Only the Personnel Office is authorized to release the following information:

        A)  The date of employment.
        B)  The date of resignation/termination.
        C)  The position held.
        D)  Verification of salary.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:*  318 |
|---|---|---|---|
| *Subject:*  **COMPLAINT HANDLING/INVESTIGATION PROCEDURES** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* | *Reevaluation Date:* | | *No. Pages:* 4 |

**I.  PURPOSE:**

   To provide guidance for the proper and consistent handling of both internal and external complaints.

**II.  DEFINTIONS:**

   INTERNAL COMPLAINT:  Complaints made by a member of the Sheriff's Office.

   EXTERNAL COMPLAINT:  Complaints made by civilians.  All complaints will be accepted whether in person, by third party, over the telephone, mailed anonymously or through the media.  If the complainant is intoxicated they will be advised to make an appointment when their condition improves.

   INTERNAL INVESTIGATION:  Investigations conducted and documented by the Investigations Division.

   PERSONNEL INVESTIGATION:  Investigations conducted and documented by the accused employee's immediate supervisor.

   PRELIMINARY INVESTIGATION:  The initial gathering of memos, reports and other evidence used to establish the validity of the complaint and identify the investigating authority.

**III.  POLICY:**

   It is the policy of the Sheriff's Office to conduct fair and impartial investigations of legitimate complaints.  It is the commitment of this Office to clear employees who are falsely accused and discipline those who violate policy and procedures.

**IV.  PROCEDURE:**

   A.  RECEIPT OF A COMPLAINT
       1.  Upon receipt of a complaint, a supervisor or the acting shift commander will complete a Memorandum of Complaint.  If the complaint is made in person, the supervisor shall attempt to have the complainant complete a standard Voluntary Statement Form.

2. The receiving supervisor should then conduct a Preliminary Investigation.

3. The supervisor will forward the complaint and any information gathered to the accused employees Division Commander via the chain of command.

4. The Division Commander will review the information and determine if further investigation is necessary;

    A) If no further investigation is necessary, the Division Commander shall forward all information to the Undersheriff for review and filing.

    B) If further investigation is necessary, the Division Commander will forward the information to the accused employee's immediate supervisor or Investigations, depending on the seriousness of the allegation(s).

## B.  INVESTIGATION AUTHORITY

1. **LEVEL I:**  Serious policy violations such as, but not limited to: Discrimination, Sexual Harassment, Violation of Laws, Use of Force, employee against employee complaints, and other complaints at the direction of the Sheriff and Undersheriff. Complaints of this nature will be accepted indefinitely.

    **RANGE OF DISCPLINE:** All levels of discipline.

    **INVESTIGATING AUTHORITY**: Investigations Division.

2. **LEVEL II:**  Policy violations such as Disobedience to Orders, Performance of Duty, or willful misconduct and repeated Level III complaints.  Complaints of this nature will be accepted up to one year after the date of occurrence.

    **RANGE OF DISCIPLINE:**  Letter of counseling through suspension without pay, not to exceed 10 days.

    **INVESTIGATING AUTHORITY**: Accused employee's immediate supervisor or the Investigations Division.

3. **LEVEL III:**  Courtesy complaints of rudeness, disrespect, impartiality,  procedural complaints of procedures specifically related to the employee's duty assignment, handcuffing, traffic stops,  supervisory issues such as tardiness, minor procedural errors, traffic accidents, failure to show up for court, minor sick time abuse. Complaints of this nature will be accepted up to six months after the date of occurrence.

    **RANGE OF DISCIPLINE:**  Letter of Counseling, Probation, Letter of Reprimand.

    **INVESTIGATING AUTHORITY**: Complaints may be investigated by the accused employee's immediate supervisor.  If an employee has three or more Level III complaints with the same type circumstances within any one-year period, the complaint should be investigated as a Level I or II complaint.

**C.  Procedures for Documentation on Level I and II Complaints:**

1.   Investigations Division and Personnel Investigations of <u>Level I and II</u> complaints will be set up in the same format.  This will ensure uniformed complaint procedures.  The following is a guide to properly set up and complete an investigation:

    A) A case number will be obtained from the Investigations Division for each investigation.

    B) The case number will list the year, sequential number and complaint level (Example – 2003-1-II.

    C) The investigative report will list the allegation(s), a complete summary of all information and evidence found in the investigation, summary of interview with the complainant, summary of interview with the accused employee, witness statements and conclusions by the investigator.

    D) Further, it will include all start and finish times for the interviews.

    E) The report will include a search of the personnel records for any previous founded complaints or personnel actions.

    F) After completing the investigation and obtaining all necessary information, the completed investigation should be sent through the accused employee's Chain of Command, beginning with the immediate supervisor.  Each member in the Chain of Command will submit a memo substantiating their findings and recommended disciplinary actions, if applicable.  The following are the dispositions:

        **SUSTAINED -** The allegation is substantiated, the misconduct did occur.

        **NON-SUSTAINED -** The allegation is not substantiated. There is not sufficient evidence to prove or disprove the allegation.

        **UNFOUNDED -** The allegation is false, or not factual; no misconduct; the incident did not occur or involve the accused employee.

        **EXONERATED -** The incident occurred but the accused employee acted lawfully and properly.

        **MISCONDUCT NOT BASED ON COMPLAINT -** Substantiated (sustained) misconduct, not alleged in the complaint, but disclosed by the investigation.

2.  Upon review by the accused employee's Chain of Command, the investigation will be forwarded to the Undersheriff.

3.  The Undersheriff will then hold a fact-finding meeting with the accused employee.

4.  The Undersheriff will then make final recommendations to the Sheriff.

**D.  Procedures for Documentation of Level III Complaints:**

1.  <u>Level III</u> complaints may be documented in memorandum form.

2.  The immediate supervisor of the accused employee will forward the complaint and any other information retrieved during the Preliminary Investigation, to the accused employee for a written response.

3.  The accused employee will respond to the allegations in memorandum form and return it to their immediate supervisor.

4.  If necessary, the supervisor will investigate the complaint further.

5.  The documentation will be reviewed by each supervisor in the accused employees Chain of Command.

6.  Each supervisor will review the information and enter their findings.

7.  The Division Commander will have the final review of authority over Level III complaints.

   A)  Upon completion, all documentation including the action taken, if any, will be forwarded to the Administration Division.

   B)  If disciplinary action is taken, copies will be forwarded to the Administration Division.

**E.  Notification to Complainant:**
1.  Upon completion of the investigation and approval of the Undersheriff, the complainant shall be notified in writing of the results of the investigation.  This letter will be completed by the investigating authority.  A copy of the letter will be placed in the file. This applies to all levels of investigation.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:*  319 |
|---|---|---|---|
| *Subject:*  **INTERNAL INVESTIGATIVE RULES** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* | *Reevaluation Date:* | | *No. Pages:* 4 |

**I.  PURPOSE:**

To provide guidelines to employees on the Sheriff's Office internal investigation rules and procedures.

**II.  DEFINTIONS:**

MEMBERS: All commissioned and non-commissioned employees or volunteer (Posse, Cadet, etc.) of the Park County Sheriff's Office.

FORMAL INVESTIGATION:  Any internal investigation titled a level I or II as defined in policy 318.

CONFIDENTIAL INVESTIGATION:  An allegation of misconduct in which it would be detrimental to the investigation to follow the standard notification of investigation procedures.   These investigations will be conducted by the Investigation's Division at the Sheriff or Undersheriff's direction.

**III. POLICY:**

It is the policy of the Sheriff's Office to investigate allegations of misconduct by any employee, in a fair and thorough manner.  The Sheriff's Office will respect the rights of the employee so long as its responsibility to conduct a complete investigation in search of facts is not jeopardized.

**IV. PROCEDURE:**

A.  CONFIDENTIALITY:

1. Members will not discuss or attempt to solicit any details of a matter under investigation.
2. Internal Investigations will be treated in strict confidence.  This information will be disseminated and used on a need to know basis only or in cases where dissemination would be for the good of the Sheriff's Office.

B.  NOTIFCATION OF INVESTIGATION:

1. The "Notification of Investigation" letter will be issued to the accused employee and their Division Commander prior to a formal interview if the investigator is not within the accused employee's chain of command.   This does not preclude a supervisor or

investigator from conducting a preliminary interview. This letter shall contain, unless it is a confidential investigation, the following information:

A)  The name of the complainant.

B)  The date of the alleged incident(s).

C)   Any possible policy violation(s).

D)  Any report numbers, summons.

E)  A brief summary of the allegation.

C.  INTERVIEWS:

1.  Before interviewing any accused employee, the employee will be given a Garrity Advisement Statement that he/she will read, have explained, if necessary, and sign.  In an interview with an employee, the questions shall be narrowly and directly related to the matter under investigation or in reference to a performance of duty issue.

2.  The accused employee may record the contents of the interview or request an audiotape copy of the interview if recorded by the investigator.  The Sheriff's Office will not be responsible for encumbering any of the cost associated with the request.

A)  If an accused employee chooses to tape a formal interview, they will advise the interviewer of the tape prior to any recording.

B)  If the taped interview is transcribed, the accused employee may request a copy of their interview.

3.  An accused employee may have legal representation present during a formal interview. The cost of the representation will be at the employee's cost and the legal representative will comply with the following guidelines:

A)  Will not interfere with any portion of the actual interview.

B)  Will not answer any questions for the accused employee.

C)  Will not cross-examine, at anytime, the accused employee or the authority conducting the interview.

D)  If the legal representative has any procedural questions of the investigator, he/she may direct these questions following the interview.

4.  A member may be ordered, at any time, to truthfully answer questions and cooperate with an internal investigation.

5.  Employees will be interviewed on duty whenever possible.  A log of all employees interviewed during off-duty hours will be maintained.  After the investigation is completed, all Office employees who were involved in the investigation on their off-duty hours will be entitled to compensation.  Any employee suspended without pay prior to an

investigation, and found in violation as accused, will not be entitled to overtime compensation.

6. If criminal violations are apparent, the investigator will immediately suspend the investigation and advise the Undersheriff.

D.  POLYGRAPHS:

1. All employees of this Office must submit to a polygraph examination when ordered by the Sheriff, Undersheriff or designee.

2. Polygraphs may be ordered when a person has knowledge of a situation under investigation by the Office or when the employee's honesty, unity or loyalty has come into question.

3. Any employee who refuses to submit to a polygraph examination when so ordered by the Sheriff, Undersheriff, or designee, may be terminated for disobedience of an order.

4. When the investigation is based solely on information from the complainant, the infraction is non-criminal, and no corroborating information has been discovered, the employee may not be required to submit to a polygraph examination, unless the complainant also submits to one.

E.  SEARCHES:

1. A commissioned member may, at any time, be ordered to submit to a blood test, urine test, lineup, breath test, voice print, handwriting exam, photos taken, or other non-testimonial evidence test.  Refusal to submit can result in disciplinary action up to and including dismissal.  If criminal prosecution of the employee is contemplated, the employee shall be entitled to counsel or other representation present where provided by law.

2. An employee's personal property shall not be subject to search and seizure without probable cause and a warrant where required by law.  Office property, such as vehicles, work areas, stations or lockers, may be searched without consent at any time, even if assigned to or used exclusively by a single employee.

3. Office communication facilities may be monitored at any time, under conditions permitted by law.  Other communications or conversations may be monitored at any time, under conditions permitted by law.

4. If the investigation determines that there are additional acts of misconduct on the part of the employee that are not included in the original complaint, these acts will be included as a part of the investigation.

F.   CONCLUSION OF THE INVESTIGATION:

1.   Internal investigations should be completed within 20 working days; this does not include the review period, unless exigent circumstances exist.  These will be determined by the Undersheriff.

2.   Accused members will be notified in writing at the conclusion of the investigation.  The document will include the following:

   A)  Findings of each allegation.

   B)  A brief statement summarizing the allegation as it relates to policy violation.

   C)  Intent of disciplinary action, if any.

3.   The Complainant will be notified in writing upon conclusion of the investigation.

G.   RECORDS:

1.   Internal investigations will be considered confidential.
2.   Members will not be authorized to review these investigations.
3.   Active Members may inquire as to their own internal affairs history.  They will be provided the following information:
   A)  Date of the investigation

   B)  Case number

   C)  Allegations

   D)  Findings of the investigation

   E)  Disciplinary Action received, if any.

H.   FALSE REPORTING:

1.   The interviewer will ensure that the complainant understands the State Statute concerning "False Reporting to Authorities" prior to signing the complaint.

2.   If it is determined that a citizen has <u>knowingly</u> made a false report against an officer, the investigator will pursue the filing of a case report, under the provisions of C.R.S. 18-8-111 <u>(False Reporting to Authorities)</u>, against the citizen.

3.   The guilt or innocence of the complainant must be decided by the court and the investigator will not consider the dismissal of criminal charges in exchange for dropping internal complaints.  If, during the course of the internal investigation, it is discovered that the criminal charges filed against the complainant are not valid, the Undersheriff will be notified and he will determine the action to be taken.

Defendants' Motion to Dismiss, Exhibit A

4.  If the investigation determines that there are additional acts of criminality on the part of the complainant, this information will be forwarded to the proper prosecutor with the District Attorney's Office.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*:03-12-12 | *Approval:* | | *Number:* 320 |
|---|---|---|---|
| *Subject:* **CORRECTIVE AND DISCIPLINARY ACTION** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*:   III | *Reevaluation Date:* | | *No. Pages:* 5 |

**I. PURPOSE:**

To provide guidance on the proper administration of corrective action and discipline to members of the Sheriff's Office.

**II. DEFINITIONS:**

LEVEL I COMPLAINTS:   Serious policy violations such as Discrimination, Sexual Harassment, Violation of Laws, Use of Force, or allegations which may result in criminal charges and others at the direction of the Sheriff or Undersheriff.

LEVEL II COMPLAINTS:  Policy violations such as Disobedience to Orders, Performance of Duty, Conduct Unbecoming, or willful misconduct and repeated Level III complaints of the same type circumstance.

LEVEL III COMPLAINTS: Courtesy complaints of rudeness, disrespect, impartiality. Procedural complaints specifically related to the accused employees duty assignment such as handcuffing procedures or traffic stops, supervisory issues such as tardiness, minor procedure errors, traffic accidents, failure to report for court, minor sick time abuse.

INTERNAL AFFAIRS INVESTIGATION:   Internal Investigations conducted and documented by the Investigations Section.

PERSONNEL INVESTIGATIONS:  Internal Investigations conducted and documented by the accused employee's Chain of Command.

ADMINISTRATIVE LEAVE:  Relieved temporarily from duty with pay. It is not exclusive for pre-disciplinary situations.  Administrative leave will not be considered disciplinary action.

LETTER OF COUNSELING:  Memorandum documenting the accused employee's verbal counseling of a policy violation.  The letter will be formatted as a standard memorandum titled "Letter of Counseling" and will contain a brief explanation of the circumstances surrounding the policy violation. This will be prepared by the employee's supervisor.

LETTER OF REPRIMAND:  Memorandum documenting the accused employee's reprimand of a policy violation.  The letter will be prepared by the accused employees Division Commander and formatted as a standard memorandum titled "Letter of Reprimand."  The letter will contain a brief explanation of the circumstances surrounding the policy violation.

PROBATION: The Undersheriff may impose probation when the accused employee willfully or intentionally violates Policy and Procedures, to include gross or wanton negligence in the performance of duty or when the employee's performance is unsatisfactory. The Sheriff may agree with the time period, reduce it or add to the probation period set by the Undersheriff. Performance Evaluations/progress reports will be conducted at least every thirty days (30) days until the probation period ends. The supervising officer may allow the probationary period to expire, or request an extension, presented to the Undersheriff.

SUSPENSION WITHOUT PAY:  Relieved from duty for a specified number of days without pay or any other type of compensation.  Suspension without pay will only be authorized by the Sheriff or Undersheriff in the absence of the Sheriff.

DISCIPLINARY DEMOTION: Reduced by one or more levels of rank.  Disciplinary demotion may be imposed when the accused employee willfully engages in misconduct or intentionally violates Policy and Procedure.  Disciplinary demotion will only be authorized by the Sheriff.

TERMINATION: Termination of employment with Office. Only the Sheriff, or Undersheriff may terminate an employee.

REMEDIAL TRAINING:  A form of discipline used to correct a specific deficiency. (See 412)

**III. POLICY:**
 It is the policy of the Sheriff's Office to teach and correct the inappropriate behavior of the members through fair and consistent, disciplinary sanctions without regard to race, creed, color, sex, age, or national origin.  This will be accomplished by conforming to the established due process requirements.  Through a defined and formal process, the high standards of the Sheriff's Office will be maintained.

**IV. PROCEDURE:**
   A. DISCIPLINARY PROCESS:
      Allegations of employee misconduct will be thoroughly investigated and documented.  In every case the accused employee will be advised of the allegations and be given the opportunity to provide a statement, either in written memorandum form or verbally in an interview.

   1. Level I, II
      Upon completion of the investigation and a review by each member in the accused employee's Chain of Command, the investigation will be forwarded to the Investigations Section.

      A) The Investigations Section will submit the investigation to the Undersheriff.  The Undersheriff may:

       1) Agree with recommendations from the accused employee's Chain of Command.
       2) Reject the Chain of Command's recommendation (s).
       3) Request additional information.
       4) Recommend to the Sheriff disciplinary action to a lesser or greater level than the Chain of Command's recommendation.

  B) Upon the decision of the Undersheriff, the accused employee will receive a Notification of Finding. The notification will contain the intended disciplinary action. The accused employee may:

       1) Accept the disciplinary action as written.
       2) Appeal the decision to the Sheriff.

  2. Level III
  Upon completion of the investigation and review by each member in the accused employee's Chain of Command, the investigation will be forwarded to the Division Commander.
  A) The Division Commander may:

       1) Agree with recommendations from the accused employee's Chain of Command.
       2) Reject the Chain of Commands recommendation (s).
       3) Request additional information.
       4) Administer disciplinary action to a lesser or greater level than the Chain of Command recommendation.

  B) Upon the decision of the Division Commander, the accused employee will receive a Notification of Finding. The notification will contain the intended disciplinary action. The accused employee may:

       1) Accept the disciplinary action as written.
       2) No appeal to the Undersheriff or Sheriff on Level 3 complaints.

B. DISCIPLINARY RANGES:
  1. Level I complaints may carry any of the following disciplinary actions, or any combination thereof:
  A) Letter of Counseling
  B) Remedial Training
  C) Letter of Reprimand
  D) Probation
  E) Suspension without pay, not to exceed 30 days.
  F) Disciplinary Demotion
  G) Termination

  2. Level II complaints may carry any of the following disciplinary actions, or any combination thereof:
  A) Letter of Counseling
  B) Remedial Training
  C) Letter of Reprimand
  D) Probation

E)  Suspension without pay, not to exceed 10 days.
F)  Disciplinary Demotion
G)  Termination

3.  Level III complaints may carry any of the following disciplinary actions, or any combination thereof:
A)  Letter of Counseling
B)  Remedial Training
C)  Letter of Reprimand
D)  Probation

C.   ADMINISTRATIVE LEAVE:
Administrative Leave may be ordered by the accused employee's Division Commander or the senior-ranking supervisor within the Chain of Command. The Undersheriff will be notified of the administrative leave and reasons thereof on the next duty day. The following circumstances may be considered in determining if Administrative Leave is appropriate:

1.  The accused employee is pending disciplinary action and the Division Commander or senior ranking supervisor determines, the accused employee would cause a disruption to the good order of the Office.
2.  If the accused employee has used his/her firearm in the performance of duty.
3.  If the accused employee is involved in a serious accident involving a County vehicle.
4.  If the accused employee is not fit for duty due to alleged drug or alcohol use, or some other physical impairment.

D.  SUSPENSION WITHOUT PAY
Suspension without pay can only be ordered by the Sheriff or Undersheriff in the absence of the Sheriff. The following circumstances may be considered in determining if the accused employee should be placed on Suspension without Pay:

1.  If the accused employee is pending criminal charges or criminal action.
2.  If the accused employee engaged in misconduct that would endanger the public trust if the employee remained on duty.
3.  If recommended by the accused employee's Chain of Command for disciplinary reasons.
4.  Other circumstances the Sheriff or Undersheriff find appropriate.

E.  APPEAL PROCESS:
1.  Level I & II
The accused employee will have three (3) working days to request in writing, an appeal to the findings or intended disciplinary action. The request will be in memorandum form containing the basis for the accused employee's appeal. The request will be sealed in an envelope and submitted to the Undersheriff. The Sheriff will set an appointment for the appeal. The accused employee will be notified in writing of the date, time and location of the appointment.

2.  Level III
There will be NO appeal to the Sheriff or Undersheriff.

3.  Civilian Personnel
    Non-Commissioned employees will follow the appeal process as stated in this policy.

4.  Legal Representation:
    A)  Employees who desire legal representation during the appeal process may do so at their own expense.  The legal representative will not use the appeal process for the purpose of challenging policies or procedures.  The legal representative and the employee will follow the established guidelines:

        1)  The appeal date will be set by the Sheriff or Undersheriff and will not be altered or changed to accommodate the schedule of the employee or their legal representative.
        2)  For those that choose to have legal representation, the expense of the legal representative will be the responsibility of the employee.
        3)  The employee or their attorney may provide an opening statement.  At the conclusion of the opening statement, the discussion will be limited to the Sheriff or Undersheriff and the accused employee unless the Sheriff or Undersheriff invites comments from those persons present.  During this discussion the legal representative will not:

            a)  interfere in any manner during the appeal,
            b)  answer any questions for the accused employee, or
            c)  Cross-examine the accused employee, the Sheriff, Undersheriff or anyone present.

        4)  Following the discussion the Sheriff or Undersheriff may offer the legal representative the opportunity to make comments or ask procedural in nature questions.
        5)  Investigation, including personnel investigations, records are considered confidential and will not be considered for release to the accused employee or their legal representative.

F)  Sheriff
    The Sheriff's policy on the administration of corrective action is to provide guidance and fairness. The Sheriff reserves the ability to mandate disciplinary action to a lesser or greater level than the 'chain of command's recommendation.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 321 |
|---|---|---|---|
| *Subject:* **ATTENDANCE RECORDS** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*:  III | *Reevaluation Date:* | | *No. Pages:* 4 |

**I.  PURPOSE:**

Provide guidance for the proper completion of attendance records.

**II.  DEFINITIONS:**

NON-EXEMPT:   Employees classified by the Fair Labor Standards Act (FLSA) as non-administrative or non-executive positions.  All ranks of Sergeant and below are considered non-exempt positions.

EXEMPT:  Employees classified by the Sheriff as administrative or executive positions.

TIME EARNED:  Those hours worked above the employees normal work schedule.  If a person typically works a 10-hour shift and works 12 hours, then 2 hours would be considered time earned for the purpose of this policy.

OVERTIME:  Pay compensation at one and one half (1 ½) times the hourly rate.

COMPENSATORY TIME:  Time of compensation at a rate of one and one half-(1 ½) times.

CASUAL TIME:  Time for time worked in terms of compensation.

WORK CYCLE:  Attendance record cycle of seven (7) days for non-commissioned; attendance records cycles of 27 or 28 days for commissioned employees. (commissioned fall under the 7k exemption)

HOURS WORKED:  Includes all hours, including minutes rounded up or down to quarterly increments, worked in the performance of the assigned duty.  This does not include Extra Duty.

EXTRA DUTY:  Hours worked for an established rate of pay such as FOP, DUI grant, DFSZ grant, etc. These duties may be sporadic or occasional and solely at the option of the employee.

<u>ATTENDANCE RECORDS</u>:  Approved forms for recording the attendance and hours worked of employees.

<u>COMPENSABLE HOURS</u>: Other hours considered hours worked such as: vacation, sick time, holiday hours, training hours.

<u>SALARIED HOURS</u>:   Non-commissioned 7 day cycle will be 40 hours, commissioned employees on a 27 day cycle will be 153 hours or 28 day cycle will be 160 hours.

<u>7K EXEMPTION</u>:  The Fair Labor Standards Act regulation that gives law enforcement and fire fighting officials the flexibility to schedule employees on work cycles in excess of 7 days but less that 28 days.

**III. POLICY:**

It is the policy of the Sheriff's Office that each supervisor track and submit all hours worked, overtime, vacation, sick and other leave, as necessary, of the employee under his/her supervision.  Each supervisor shall maintain these records accurately in order to meet the Office requirements and any applicable Federal documentation requirements.

**IV. PROCEDURE:**

Employment with the County constitutes an agreement and understanding between the employee and the public agency that compensatory time off will be given in lieu of overtime pay at the discretion of the Office.  This agreement to provide compensatory time off in lieu of cash overtime compensation is a condition of employment with the County.  Any compensatory time earned by an employee constitutes a legal liability for the County.  The Sheriff's Office has the option within the limits of the Fair Labor Standards Act and its budget to determine the manner of payment for overtime worked.

A.  ATTENDANCE RECORDS:

  1.  An attendance record form will be maintained for each non-exempt employee.

  2.  When an employee performs compensable work outside their assigned unit or section, it is the responsibility of the activity supervisor to notify the employee's supervisor of the hours worked so the employee is credited with the proper work time.  Examples of work outside an assigned unit or section would be training, S.W.A.T., Honor Guard Missions or extradition.

  3.  The form will be maintained by the employee and reviewed by the Unit/Section Supervisor.

  4.  All hours worked or compensable hours will be recorded on the record daily.

  5.  The employee will be required to verify and sign the record at the end of each work cycle.

B.  COMPLETION OF ATTENDANCE RECORDS:

  1.  Attendance Records shall contain the following heading information:
       A)  Name: Last, First, MI.
       B)  Employee Number

      C)  Assigned Division

      D)  Beginning and End of Work Cycle: Month, Day, and Year

      E)  Employee Signature

      F)  Supervisor's Signature

2.   Hours shall be entered in whole number with quarterly increments for example 8.75 representing 8 hours and 45 minutes.

3.   The approved attendance records contain the following categories:

      A)  HOURS WORKED: shall be entered on this line (shall include training and court).

      B)  VAC/COMP. TIME:  Hours used for the purpose of vacation and time taken and deducted from the employee's Compensatory Log.  Time Earned shall be used prior to the compensatory time.  The YTD block shall contain the compensatory log balance as of the end of the cycle in the appropriate column.

      C)  SICK:  Hours used for illness or non-work related injury.

      D)  HOLIDAY:  Hours taken for approved holidays.

## C.  OVERTIME/COMPENSATORY TIME BOOK:

1.   The Business Manager will maintain an Overtime/Compensatory Record for each employee.

2.   A compensatory record will be maintained for each year.  It will begin on January 1st and close at the end of the pay period on December 31st.  The first entry, normally, will contain any carry over from previous year.

3.   Employees will not be authorized to carry a negative balance on the log without the authorization of a staff member within their chain of command.

## D.  MANAGING HOLIDAY TIME:

1.   Park County normally authorizes each employee 12 paid, 8 hour, holidays per year.  This is subject to change by the Board of County Commissioners (BoCC).

2.   Personnel that normally work a 5/2 schedule and are normally off on observed holidays should be granted their holiday on the observed holiday.  This would apply to units/sections that are normally closed on observed holidays such as Administration, Records, Investigations, Training, etc.  If for some reason, they work the observed holiday, they must be given a day off within the same work period the holiday is observed or be granted overtime compensation.

3.   Personnel that are scheduled to work shifts that do not permit taking holidays on the observed holiday will be scheduled for the holiday time during the year.  Personnel required to work on a holiday will be compensated at a rate of 1 ½ hours per hour worked in addition to 8 hours of regular time.

4.  If an employee is not employed for the full year, they will be granted 8 hours of holiday time for each holiday they are employed during the calendar year.

5.  Due to the difference between the scheduling time and the actual dates of the holidays, it is possible for an employee to have more or less holiday time taken or earned at the time of leaving County employment.  This will be adjusted by the Personnel Section at the time of termination of County employment.

6.  Holiday time that is not granted in the calendar year it was earned, must be carried over into the New Year as overtime.

E.  HOURLY EMPLOYEES (Temporary and Part-time):

1.  Hourly employees will be assigned work periods the same as permanent employees.

2.  Hourly employees will be paid overtime for compensable hours in excess of salaried hours for the 40-hour work period.

3.  Hourly employees do not receive any benefits other than Workmen's Compensation. The only compensable time they receive is actual hours worked.

F.  EXEMPT EMPLOYEES:

1.  Exempt employees in the rank of Captain or other administrative grades will be classified as exempt employees unless otherwise directed by the Sheriff.  They will be permitted to do volunteer work without compensation.

2.  Exempt employees, except as authorized by the Sheriff or the Undersheriff, will not be compensated for overtime hours worked.  They will receive casual time as defined above.  An attendance record may be maintained for each of these personnel.  Extra duty assignments for a private employer are not authorized.  Exempt employees may perform volunteer work comparable with their rank and/or authority.

3.  In the event of natural disaster or other catastrophic event, the sheriff may deem exempt employees as non-exempt during the time period of the incident.

G.  SICK/VACATION LOG:

1.  To ensure the accurate deduction of sick and vacation time, the Sick/Vacation Log must be accurately completed.

2.  It will be the responsibility of the Business Manager to ensure that Sick and Vacation Time used by their subordinates is entered on the Sick/Vacation Log.

3.  This Log will be forwarded to the Personnel Section by the 15th of each month. Commissioned members will record this time on their monthly attendance log Personnel will then forward the information to the appropriate County Office.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number:* 322 |
|---|---|---|---|
| *Subject:*  **FAIR LABOR STANDARDS ACT (FLSA)** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*:  III | | *Reevaluation Date:* | *No. Pages:* 4 |

**I.  PURPOSE:**

To provide guidance for Sheriff's Office employees on the Fair Labor Standards Act.

**II.  DEFINITIONS:**

EXEMPT EMPLOYEES: Those employees who meet certain criteria for exemption such as professionals, command supervisors and Sheriff's staff.  The provisions of the FLSA do not apply to exempt employees.  The Business Manager will maintain a current list of exempt positions and employees.

NON-EXEMPT EMPLOYEES: Employees classified by FLSA as non-administrative or non-executive positions.  The provisions of the FLSA apply to non-exempt employees.

OVERTIME:   Overtime is the amount of compensable time earned or credited during an established work cycle that exceeds the salaried time for the work cycle.  This time must be compensated at 1 1/2 times the regular rate of pay in paid overtime or in 1 1/2 times the hours credited in compensatory time off.

COMPENSATORY TIME: Time of compensation at a rate of one and half times.

CASUAL TIME: Time for time worked in terms of compensation.

WORK CYCLE: Attendance record cycle of 7 days for non-commissioned; attendance records cycles 28 days for commissioned employees. (Commissioned fall under the 7k exemption)

HOURS WORKED: Includes all hours, including minutes rounded up or down to quarterly increments, worked in the performance of the assigned duty.  This does not include Extra Duty.

EXTRA DUTY: Hours worked for an established rate of pay such as DUI grant, DFSZ grant, etc.  These duties may be sporadic or occasional and solely at the option of the employee.

ATTENDANCE RECORDS: Approved forms for recording the attendance and hours worked of employees.

COMPENSABLE HOURS: Other hours considered hours worked such as: vacation, sick time, holiday hours, training hours.

SALARIED HOURS: Non-commissioned 7 day cycle will be 40 hours, Commissioned employees on a 28 day cycle will be 160 hours.  Others may be authorized as long as compliance with FLSA is not compromised.

<u>7K EXEMPTION</u>: The Fair Labor Standards Act regulation that gives law enforcement and fire fighting officials the flexibility to schedule employees on work cycles in excess of 7 days but less that 28 days.

## III. POLICY:

It is the policy of the Sheriff's Office to comply with the U.S. Supreme Court ruling of 1985, Garcia v. San Antonio Metropolitan Transit Authority which made the Federal Labor Standards Act (FLSA) applicable to State and local governments. Any questions that arise concerning the law or this policy should be directed to the Sheriff's Office Legal Advisor.

## IV. PROCEDURE:

A.  COMPENSABLE TIME:

1.  The following time is compensable time and must be counted in calculating work time:

   A)  All time that the employee is required to be at a workstation or required to be performing duties for the benefit of the Sheriff's Office.

   B)  All meal cycles not to exceed 30 minutes.

   C)  All meal cycles of 30 minutes or more if the employee is not permitted to use their meal cycle for personal use or have the freedom to leave the work area. The fact that an employee may be required to monitor a portable radio or have a pager on subject to call does not make the time compensable if they are free to use the time for their personal use and are free to leave the work area.

   D)  Any authorized breaks of less than 20 minutes.

   E)  All duty related court time or time waiting to be called to court.

   F)  Any standby time at a place of duty or at home when the employee must remain at a specific location. On-call with pager, portable radio, or at a telephone number does not qualify as stand-by time and is not compensable.

   G)  Call-out time when an employee is called to duty during off-duty time is compensable from the time they leave their location to the time they return to their originating location.

   H)  Volunteer work is compensable if it is the same or similar type of work as their normal duties. For example, a Patrol Deputy cannot volunteer to perform any law enforcement duties, within the county, without compensation. Compensable volunteer time must have prior approval before being worked.

   I)  Training time is compensable if it is mandatory training required by the Sheriff's Office. It is not compensable if it is optional for the employee to attend.

   J)  Travel time is compensable in the following types of situations:
      1)  Travel time on call-out time.
      2)  Travel that occurs for one (1) day out-of-town travel is compensable except for travel from their residence to the Office, airport, etc. Mealtime during travel is not compensable.
      3)  Overnight travel is compensable for actual travel time that occurs during non-working hours as well as duty hours. Meal time and commuting time in connection with overnight travel is not compensable.

K) Travel time is not compensable in the following situations:
1) Meal times during travel.
2) Commuting time to the Office, airport, etc.
3) Excessive travel time taken at the option of the employee. For example, if an employee is offered an alternate means of transportation such as an airline that would require one (1) day of travel time, but elects to drive which would require two (2) days travel time, the employee is only compensated for one (1) day of travel time.
4) Optional travel is not compensable. For example, if an employee is on an extended training program and elects to return to El Paso County for an evening or weekend, that travel is not compensable.
5) Post and preliminary work activity is compensable if it is job related and required by the Sheriff's Office. It is not compensable if it is not job related or required by the Sheriff's Office.

L) K-9 handlers will be granted one (1) hour per shift off to compensate them for the care and maintenance of their animal. This time shall be compiled.

B. ASSIGNMENT OF WORK CYCLES:

1. All non-commissioned personnel must be assigned a seven (7) consecutive day work cycle. This work cycle may begin with any day of the week. Work time in work cycle will not exceed 40 hours unless the individual is compensated at time and one-half for those hours that exceed 40 hours.

2. All commissioned personnel must be assigned a work cycle that may not exceed 28 consecutive days which is a 160 hour cycle. The work cycle may start at any hour of any day of the week. Personnel on a 5/2, 4/3 or modified 4/3 schedule will be assigned a 28-day work cycle and compensated or paid overtime for work in excess of 160 hours.

C. OFF-DUTY EMPLOYMENT WITHIN THE COUNTY:

1. Sheriff's Office employees are considered Park County employees for the purpose of FLSA. All hours worked for Park County must be calculated as compensable time during each work cycle.

2. Sheriff's Office non-exempt employees will not be permitted to work in any other capacity for Park County unless the other County Office or Department pays them overtime for all work performed outside of the Sheriff's Office.

D. TIME CALCULATIONS:

1. Time worked is measured in 1/4 hour increments. If an employee works less than 7 1/2 minutes of a quarter hour, they are not credited with time worked. If they work 7 1/2 minutes or more in a quarter hour, they are credited with 1/4 hour worked.

2. All compensable time will be calculated in hours or fractions thereof. This includes work time, holiday time, vacation time, sick time, etc.

3.  Holiday time, vacation time, sick time, compensatory time, or any other credited time other than actual hours worked, will be credited based on the normal work schedule.  If the normal workday is 8 hours, they will be credited 8 hours.  If the normal workday is 10 hours, they will be credited with 10 hours, etc.

E.  BREAKS:

1.  It is the intentions of the Sheriff's Office to grant each employee two (2), 15 minute breaks during each duty day.  If operational requirements preclude an employee from receiving the break, it will not be counted as extra time worked since they are already being paid for the time.

2.  Some employees receive paid meal cycles.  If operational requirements preclude an employee from receiving the meal cycle, it will not be counted as extra time worked since they are already being paid for the time.

3.  Employees with non-paid meal cycles will not be permitted to remain at their work stations during meal cycles or be permitted to eat meals at their work stations.  They will not be permitted to perform Office functions during their meal cycle unless the time is credited as work time.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval:* | | *Number: 323* |
|---|---|---|---|
| *Subject:* **REQUEST FOR LEAVE** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages: 3* |

**I.  PURPOSE:**

To provide guidance on the use of leave and the regulation that may apply to the different types of leave.

**II.  POLICY:**

It is the policy of the Sheriff's Office to encourage employees to take vacations each year. Furthermore, it will be the policy of the Sheriff's Office to promote a healthy workforce and encourage those employees that suffer a non-duty related injury or illness to take the necessary time off to recuperate.

**III. PROCEDURE:**

Employees are required to report for duty at the designated time and on the date specified as expected or ordered; unless the absence is reported or authorized by the member's supervisor prior to the actual reporting time.

A.  VACATION:

  1. Each employee will submit a vacation request to the section or Division Commander a minimum of one month in advance. Vacation is scheduled based on Office obligations. The amount of vacation time taken will be determined by the amount of vacation time the employee has accrued at the time the vacation is taken. For example: An employee accrues vacation at the rate of eight hours per month. The person hired in August of one year and granted vacation in August of the next year; may take 96 hours of vacation (8 hours x 12). The Sheriff's Office follows the Park County Employee Personnel Policy Manual in reference to Annual Leave Earned for county employees.

  2. A vacation schedule will be published on the monthly schedule for each Division.

  3. Seniority will be considered in granting vacation. Seniority is based on date of hire or continuous service with the Sheriff's Office. Seniority among supervisory personnel will be based on grade, time in grade, and continuous service. Personnel with seniority will be granted first choice of vacation over less senior personnel.

  4. Vacation schedules may be changed at the employees request, or when necessary to meet Office requirements.

  5. Division Commanders may grant changes to the vacation schedule when it can be accomplished without affecting another employee's schedule and will not impair the Division's ability to perform Office requirements.

  6. Division Commanders or their designee may grant vacation time other than scheduled vacation time for emergency situations.

7.  Employees not submitting their vacation requests by the deadline may be assigned vacation by the Division Commander or their designee, under articulable circumstances, unless special circumstances arise to permit a delay in submission.

8.  During the period of May 1st through September 1st, of each year, vacation leaves are limited to two (2) weeks or two (2) duty cycles for each employee.  The term vacation leave includes the use of holiday hours or compensatory time.  A duty cycle is defined as a period of continuous workdays followed by normal days off.  Examples of duty cycles are 5-2, 6-3, and 4-3, schedules.  The only exceptions to this policy are cases of emergency or those cases where exigent circumstances exist.  Exceptions to this policy can be authorized by the Division Commander.  Employees requesting time more than two work cycles shall submit the request through their chain of command to their Division Commander.

9.  Vacation time will be calculated in hours based on the normal shift schedule.  For example, if an employee's normal workday is 8 hours, the employee will be charged 8 hours of vacation time.  If the normal workday is 8 1/2 hours, the employee will be charged 8 1/2 hours of vacation time.

10.  Vacation time used will be recorded on the Sick/Vacation Log.

11.  Division Commanders may deem certain days as "non-vacation days" such as three-day holiday weekends for the purpose of minimum coverage requirements.

B.  SICK LEAVE:

1.  Sick leave is granted when an employee is sick or incapacitated by illness or injury.  Employees may use up to12 days a year for the care of their ill or injured child.  Extensions may be authorized if the illness or injury meets the criteria of the Family Medical Leave Act.

2.  Employees, upon injury or illness, will contact their immediate supervisor as soon as possible, before the start of their assigned duty shift, unless physically unable due to hospitalization.

3.  Employees are required to report their condition and progress of recovery on a continuous basis, unless the reporting is excused by their immediate supervisor.

4.  A physician's statement may be required by the Division Commander anytime an employee uses sick leave.

5.  A physician's statement authorizing an employee to return to work may be required when the employee has been on sick leave for three or more consecutive days, or when the Division Commander has reason to believe the employee is not physically fit for duty.

6.  Sick leave is to be used for purposes authorized by the County Personnel Policy and Procedure Manual.  The use of sick leave for any other purpose is considered abuse of sick leave.  Any employee abusing sick leave is subject to disciplinary action.

7.  Sick time used will be recorded on the Sick/Vacation Log.

C.  LEAVE OF ABSENSE:

1.  Leave of absence without pay must be approved by the Sheriff.

2.  Leave of absence without pay is governed by the rules contained in the County Personnel Manual.

   3.   Personnel requesting leave of absence without pay will submit a memo through their chain of command to the Sheriff.  Each member within the chain of command will attach their recommendation.

D.  ARMED FORCES RESERVE DUTY:
   1.   See Policy 324 for pertinent information.

## PARK COUNTY SHERIFF'S OFFICE
## POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-01-03 | *Approval* | | *Number:* 324 |
|---|---|---|---|
| *Subject:* **MILITARY RESERVE DUTY** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | *Reevaluation Date:* | | *No. Pages:* 5 |

**I. PURPOSE**:

To provide guidance and ensure equal treatment for any employee that is active or enlisting in a Military Reserve Unit.

**II. DEFINITIONS:**

RESERVE COMPONENT: Includes members of the Army National Guard, Air National Guard, and all branches of the Armed Forces Reserve.

RESERVIST: Means any employee of the Park County Sheriff's Office, who is a member of any Reserve component.

LEAVE OF ABSENCE: Time without pay granted for members of a reserve component to attend drills, training's or summer camps.

**III. POLICY**:

It is the policy of the Sheriff's Office to ensure compliance with Public law 93-508, enacted by Congress on 3 December 1974, established a new chapter 43 of part III of title 38, US Code. This law entitled the "Veterans Re-employment Rights" (VRR) law and provides certain protections that apply to employees of a State, or political subdivision, who are members of the National Guard or Armed Forces Reserve. It also provides re-employment guarantees for employees who leave a job to enter upon active duty in the Armed Forces. All measures of the (VRR) law and this policy apply to employees in any position, other than a temporary position, in the Park County Sheriff's Office. The law specifically applies to part time employees, as well as full time employees, provided the part time job is not a temporary position.

**IV. PROCEDURE:**

A. EMPLOYEES AND APPLICANTS WHO ARE MEMBERS OF A RESERVE COMPONENT

1. Any person who seeks or holds a position in the Sheriff's Office will not be denied hiring, retention in employment, training opportunities, entitlements, or any other "incident or advantage" of employment because of any obligation as a member of a Reserve Component." PL 93-508 Section 2021 (B)(3).

   A) If two or more equally qualified people are seeking a promotion or are applying for a position and one (1) of them is a Reservist, the Reservist shall not be denied

the promotion or hiring because of his or her membership in a Reserve Component.

B) A Reservist cannot be fired or discriminated against in any way because of his or her obligations to attend monthly drills, summer camp and other active duty for training, regardless of the inconvenience or scheduling burden that these absences create.

C) A Reservist shall not be denied any entitlement, based on seniority or other criterion, because of his or her military status.  This includes, but is not limited to, vacation rosters and scheduling of holidays and compensation time.

2.  Employees who are Reservists shall be granted leave of absence, not exceeding 15 days in any calendar year, from employment without loss of pay, seniority, status, efficiency rating, vacation, sick leave, or other benefits during the time when he/she is engaged in training or active service ordered or authorized by proper authority.

A) The Reservist will submit a request for leave to his or her Supervisor as soon as the dates of the training are made known to the Reservist.

B) The appropriate military orders will be submitted with the request or as soon as they become available to the Reservist.  The Reservist is not required to possess written orders at the time of a request for leave.  The dates for training are often known well in advance and the request should be made as soon as the dates are known, but often do not come until just prior to or sometimes after the start of training.

C) The Reservist cannot be denied the opportunity to take vacation leave just prior to or after Summer camp provided the Reservist list this on his/her normal turn on a vacation roster and all normal vacation requirements are met.  Because of the potential for an extended absence, the Reservist is requested to limit the total time of the vacation and summer camp to not more than four (4) weeks.  To deny a Reservist leave prior to or after Summer camp would violate the "incident or advantage" of employment protection of section 2021(b)(3).  Nothing, however, prevents the Office from requesting, but not mandating, a limitation on the total time of absence.

3.  A Reservist shall, upon request, be granted time off from work for the period required to perform active duty for training, (summer camp, schools, or other training requirements) or inactive duty training (drills).  The request cannot be denied and the timing of the military cannot be vetoed.  The timing, duration and frequency of the military training is determined by the military authorities.

A) The law places no limit on the duration or frequency of military training.   The Reservist should be reasonable in his or her requests for time off.  When considering training, other than drills and summer camp, the Reservist is requested to attend only that training which pertains to his or her military specialty, or will enhance the Reservist's military career development or is a bonafide need of the Armed Forces.  While the law does not address the length of reserve training, various court cases have affirmed that sections 2021(b)(3) and 2024(d) apply to Reservists attending training schools lasting several months.  The Department of Labor's position is that a school, as long as 12 months, may be reasonable, depending on circumstances.

B) The request for leave to attend summer camp, drills or other active duty for training (ADT) periods can be either oral or written.  The Reservist should submit a written request for all required training to help avoid misunderstandings and to facilitate scheduling by the Supervisor.

    C) If the Reservist receives a schedule for drills, or other training for a quarterly, semi-annual or other significant training period, he/she should submit this schedule with a memo requesting a leave for each of the scheduled dates. The Reservist is not required to submit a separate request for each training period so long as there are no subsequent changes to the schedule. Paragraphs C(2) and (3) are based on information published in Department of Labor Fact Sheet No. OASVET-86-1.

4. The Reservist must return to work at the beginning of the next regularly scheduled workday after completion of training plus the time required to travel from the place of training to the place of employment. Failure to report for work at the proper time, without adequate cause, will subject the Reservist to the normal sanctions for employees who are late for work or absent without leave.

5. Upon reporting back to work following any drill or ADT period, the Reservist shall be put back to work immediately in the same position or one of equal pay and with the same seniority, status, pay, and vacation entitlement that he or she would have had if he/she had not been absent for the training.

6. If a Reservist is hospitalized during any military training, the time the Reservist is required to report back to work shall be extended to include the date he/she is discharged from hospitalization plus any time necessary to travel from the place of hospitalization to the place of employment. The report date will be extended no more than one (1) year past the date the Reservist was released from the military training.

7. If a Reservist is not qualified to perform the duties of his or her former position because of disability sustained during military training, but is qualified to perform the duties of any other position in the Sheriff's Office, the Reservist shall be offered employment and, if the Reservist so requests, he/she shall be employed in an other position he/she is qualified and provides the employee the nearest approximation of seniority, status, and pay of his/her original position.

8. A Reservist whose drill dates or other short ADT periods fall on scheduled work days will be allowed to make up time lost from work due to the military training in accordance with the stipulations listed below.

    A) A Reservist may be allowed to switch workdays with another willing employee provided the switch is made solely for the purpose of allowing the Reservist to attend military training.

    B) A Reservist may be authorized to work on their scheduled days off to make up for days missed due to military training, provided there is valid work for the Reservist to perform. The final decision to switch day(s) for the Reservist will rest with the Reservist's Supervisor.

    C) The total number of days a Reservist is allowed to make up in (A) and (B) above will not exceed three (3) days in any one (1) calendar month.

    D) The Reservist will be allowed to take holidays or compensation time on work days that he/she is scheduled for military training. The Reservist must, either orally or in writing, request that holiday or compensation time be used on the day(s) of the military training.

9. A Reservist cannot be required to use vacation time to attend military training; however, a Reservist may be allowed to use his or her vacation for this purpose:

    A) For each separate instance, the Reservist must submit a written request listing the specific dates that he/she desires to use vacation time for military training.

    B) A request for vacation used to attend military training will not be counted as one (1) of the employee's choices on vacation rosters.

## B.   RE-EMPLOYMENT RIGHTS FOR VETERANS RETURNING FROM ACTIVE DUTY

1. Employees who leave a position for the purpose of enlisting for (in response to an order or call to active duty, whether voluntarily or involuntarily) active duty in the United States Armed Forces will have re-employment rights, as listed in this section, if the following eligibility criteria are met:

    A) The period of active duty does not exceed four (4) years unless the period beyond four (4) years, up to one (1) additional year, is requested by and is for the convenience of the Federal Government; and

    B) The returning veteran must discharge or be released from active duty under honorable conditions; and

    C) The returning veteran must apply for re-employment within 90 days after he/she is relieved from active duty; or from hospitalization continuing after discharge but for not more than one (1) year.

2. If the returning veteran is still qualified to perform the duties of his or her former position, he or she shall be restored to that position or to a position of like seniority, status, and pay.

3. If not qualified to perform the duties of the former position because of disability sustained during the military service, the returning veteran shall have the right to re-employment in a position as outlined for a Reservist in this policy.

4. A person restored or employed in accordance with this Section shall be entitled to participate in insurance or other benefits offered by the Sheriff's Office pursuant to the policies established for employees on furlough or leave of absence that were in effect at the time the person was inducted into the Armed Forces.

5. A person re-employed under this section shall not be discharged from the restored position without cause within one (1) year after the person is re-employed.

## C.   RE-EMPLOYMENT RIGHTS FOR EMPLOYEES WHO GO ON INITIAL ACTIVE DUTY FOR TRAINING UPON FIRST JOINING THE NATIONAL GUARD OR RESERVE

1. Employees who joins a Reserve component and are subsequently ordered to initial active duty training, basic military training, followed normally by additional training in a military specialty, shall have re-employment rights if the following criteria are met:

    A) The order for active duty was for a period of not less than 12 consecutive weeks and the employee satisfactorily completed the service.

    B) The employee must apply for re-employment within 31 days after release from active duty; or discharge from hospitalization received during active duty but not more than one (1) year from release of training.

        1) An employee meeting the criteria in (1) shall be entitled to all the re-employment rights and benefits provided for returning veterans as outlined in this policy,

except in this situation the employee is protected from discharge without cause is six (6) months.

2) The re-employment rights of this section shall not entitle any person to retention, preference, or displacement rights over any veteran with a superior claim under the provisions of title 5 US Code.

D. EMERGENCY CALL UP OF MEMBER OF THE COLORADO NATIONAL GUARD

1. Employees who are members of the Colorado Army or Air National Guard will be granted leave with pay for the period they are called to active duty by the Governor.

2. The employee will submit to their supervisor a request for absence, to include the projected completion date or estimate, if the date is not known, as soon as possible upon call for duty.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval*: | *Number:* 325 |
|---|---|---|
| *Subject:* **LINE OF DUTY CRITICAL INJURY/DEATH SURVIVOR SUPPORT** | | |
| *Reference:* | | *Standard:* |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages:* 4 |

**I.     PURPOSE**

This policy is designed to prepare this agency for the event of an active duty officer's death in the line of duty and to direct the agency in providing proper support for the deceased officer's family.

**II.     DEFINITIONS**

LINE OF DUTY DEATH:  The death of an active duty officer by felonious or accidental means during the course of performing police functions while on or off-duty.

SURVIVORS:  Immediate family members of the deceased officer to include spouse, children, parents, siblings, fiancée and/or significant others.

**III.     POLICY**

It is the policy of this agency to provide liaison assistance to the immediate survivors of an active duty officer who dies in the line of duty and to provide tangible and emotional support during this traumatic period of readjustment for the surviving family.

**IV.     PROCEDURE:**

A.  Death Notification

The following procedures should be adhered to in cases of line-of-duty deaths and in cases of critically injured officers with poor prognosis of survival. These procedures should be followed whenever possible with the understanding that the wishes of the family take precedence over the desires of the agency. Officers providing services and assistance to family members and survivors shall take all possible measures to accommodate their needs, wishes and desires, but should not make promises to family members that they are not sure can be met.

1.  The name of the deceased officer shall not be released to the media or other parties before immediate survivors living in the area are notified.

2.  The Sheriff or his designee will designate an officer to inform the immediate family of the officer's condition or death. If not immediately available, the senior ranking officer will make the appointment.

3.  Notification of the immediate family should be made as soon as possible and, if possible, coincidental with command notifications.

4. Notification of survivors in the immediate area shall be made in person and, whenever appropriate, with another person such as the police chaplain. Whenever the health of immediate survivors is a concern, emergency medical service personnel shall be requested to stand by.

5. If the opportunity to get the family to the hospital exists prior to the officer's death, notification officers shall inform the hospital liaison officer that the family is on its way. In such cases, immediate transportation should be provided for survivors rather than waiting for any other members of the departmental delegation to arrive. If the officer has died, notification should be made to the survivors in as forthright and empathetic a manner as possible.

6. Communication of information concerning the officer and the incident shall, whenever possible, be restricted to in person or the telephone to avoid interception by the media or others. Should the media obtain the officer's name prematurely, the ranking officer should request that the information be withheld until proper notification of survivors can be made.

7. The notification officer shall be responsible for identification of additional survivors outside the area and shall make any notifications as desired by the immediate family. Such notifications shall be made by contacting the law enforcement agency in that jurisdiction and requesting that a personal notification is made.

8. The notification officer shall submit a written report to the Sheriff specifying the identity, time and place of survivors notified.

B. Assisting Survivors at the Hospital

Whenever possible, the Sheriff or Undersheriff shall join the family at the hospital in order to emphasize the agency's support. The next highest ranking officer to arrive at the hospital shall serve as or designate a hospital liaison officer who shall be responsible for coordinating the arrival of immediate survivors, departmental personnel, the media and others and assume the following responsibilities:

1. Arrange for waiting facilities for immediate survivors and a press staging area. The desires of the surviving family members should be followed with regard to their accessibility to other officers and friends.

2. Ensure that medical personnel provide pertinent medical information on the officer's condition to the family before any other parties.

3. Assist family members, in accordance with their desires, in gaining access to the injured or deceased officer.

4. Provide hospital personnel with all necessary information on billing for medical services. The liaison officer should ensure that all medical bills are directed to the appropriate departmental authority and that they are not forwarded to the officer's family or other survivors.

     5.    Arrange transportation for the family and other survivors upon their departure from the hospital.

     6.    Ensure that immediate family members are provided with appropriate assistance at the hospital.

C.   Appointment of Department Coordination Personnel

The designated departmental officer(s) shall begin serving in the following capacities: department liaison, funeral liaison, benefits coordinator and victim's advocate. These assignments will be made in writing to departmental personnel and the surviving family members will be informed of those designated. In addition, the Sheriff or his designee will:

     1.    Make additional personnel assignments to assist in handling incoming phone calls and inquiries and to direct the public to appropriate personnel;
     2.    Ensure that the employee assistance program is implemented to assist surviving family members and emphasize the family's right to psychological services; and
     3.    Ensure that other officers are provided the opportunity to participate in critical incident stress debriefings.

D.   Department Liaison

The department liaison officer will serve as a facilitator between the family and the Park County Sheriff's Office. This individual will normally be a commanding officer in order to expedite the tasks of employing departmental resources and the delegation of assignments. This officer will work closely with the funeral liaison officer to ensure that the needs and requests of the family are fulfilled. This includes, but is not necessarily limited to, the following:

     1.    Providing oversight of travel and lodging arrangements for out-of-town family members.

     2.    Identifying alternative churches and reception halls that will accommodate the law enforcement funeral. These alternatives will be presented to the family, who will make the final determination.

     3.    Coordinating all official law enforcement notifications and arrangements to include the honor guard, pallbearers, traffic control and liaison with visiting law enforcement agencies.

     4.    Assisting family members in dealing with general media inquiries and informing them of limitations on what they can say to the media specifically.

     5.    Providing liaison with the media to include coordination of any statements and press conferences. The departmental liaison shall also ensure that members of the agency are aware of restrictions regarding release of any information that might undermine future legal proceedings.

     6.    Ensuring that security checks of the survivor's residence are initiated immediately following the incident and for as long as necessary thereafter.

Defendants' Motion to Dismiss, Exhibit A

E.   Funeral Liaison

The funeral liaison officer acts as facilitator between the decedent officer's family and the department during the wake and funeral. The funeral liaison officer is responsible for

1.   Meeting with family members and explaining his responsibilities to them,

2.   Being available to the family prior to and throughout the wake and funeral;

3.   Ensuring that the needs and wishes of the family come before those of the department;

4.   Assisting the family in working with the funeral director regarding funeral arrangements;

5.   Relaying any information to the family concerning the circumstances of the decedent officer's death and appropriate information regarding any investigation;

6.   Determining the need for travel arrangements for out-of-town family members and any other special needs of the family during the funeral and reporting this information to the department liaison; and

7.   Briefing the family members on the procedures involved in the law enforcement funeral.

F.   Benefits Coordinator

The benefits coordinator is responsible for:

1.   Filing workers' compensation claims and related paperwork,

2.   Presenting information on all benefits available to the family;

3.   Documenting inquiries and interest in public donations to the family and establishing a mechanism for receipt of such contributions, as appropriate;

4.   Preparing all documentation of benefits and payments due survivors to include the nature and amount of benefits to be received by each beneficiary, the schedule of payments and the name of a contact person or facilitator at each benefit or payment office;

5.   Filing all benefits paperwork and maintaining contact with the family in order to ensure that benefits are being received. A copy of benefits documentation should be provided to all survivors affected and explained to each of them; and

6.   Advising the surviving family of the role of police associations and organizations and the nature of support programs that they sponsor for law enforcement survivors.

Defendants' Motion to Dismiss, Exhibit A

G.  Victim's Advocate

The victim's advocate serves in a long-term liaison and support capacity for the surviving family. The duties of this individual include:

1.  Providing contact with surviving family members in order to keep them abreast of criminal proceedings relating to the death of their family member;

2.  Accompanying surviving family members to criminal proceedings, explaining the nature of the proceedings and introducing them to prosecutors and other persons as required;

3.  Identifying all support services available to family members and working on their behalf to secure any services necessary;

4.  Maintaining routine contact with family members to provide companionship and emotional support and maintain an ongoing relationship between the department and the immediate family; and

5.  Relaying the concerns and needs of the family to those individuals or organizations that may provide assistance, and encouraging others to visit and help as necessary.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-22-07 | *Approval*: | *Number:* 326 |
|---|---|---|
| *Subject*: **ARTICLE PUBLICATION** | | |
| *Reference:* | | *Standard:* |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages* 2 |

## I. PURPOSE:

To provide procedures for the prepublication review of professional articles written by members of the Park County Sheriff's Office for official publication.

## II. DEFINITIONS:

## III. POLICY:

It is the policy of the Park County Sheriff's Office to recognize it is the responsibility of any profession organization to share information, knowledge, or technology that would assist or promote that profession. Members of the Park County Sheriff's Office are dedicated professionals. They are encouraged to share their expertise with their peers in the law enforcement and detention profession, as well as to the public. The Park County Sheriff's Office is a leader in the law enforcement and detention fields and the Sheriff, as an elected official, must ensure that all articles are accurate, consistent and appropriate. Therefore, all members of the Park County Sheriff's Office will follow the procedures outlined in this policy before they submit a professional article for publication.

## IV. PROCEDURE:

A. REVIEW

Members who wish to author articles will submit draft documents to the Public Information Officer for initial review prior to publication. The Undersheriff will review the comments prior to submittal to for final review by the Sheriff. Following the review by the Sheriff, the document will be returned to the author with one (1) of the following status notations:

1. Accepted: The submitted article meets the level of professionalism required by the reviewing authorities. It is timely and educational in nature. The author is now free to seek a publication.

2. Conditionally Accepted: The article rises to the level of professionalism required by the reviewing authorities but changes must be made prior to final approval. Upon completion of the noted changes, the author will resubmit the document for a second review.

3. Denied: An article can be denied for publication, if in the opinion of the reviewing authorities the article does not effectively portray the Park County Sheriff's Office in a positive light, the article contains sustainable errors, the article is not submitted in a

timely manner, the article serves no legitimate educational purpose, the content of the article is politically sensitive in nature, or the structure of the article does not rise to the level of professionalism required by the Park County Sheriff's Office.

Note: If any reviewing authority feels that the submitted article is in need of Significant rewrite, they may return the document to the author at any stage within the review process.

## B.  PUBLISHING

It shall be the responsibility of the author to secure an agreement with a magazine or trade journal for the article in question. The Park County Sheriff's Office will not enter into publishing agreements as an organization and will not be held liable for any actions that may be taken against an author for breach of contract. Once an offer to publish is secured, the author will in writing, inform the Public Information Officer of the name of the publication and the intended publication date. If, in the opinion of the reviewing authorities, the publication does not meet the professional standards of the Park County Sheriff's Office, permission to publish will be revoked and the author may seek another publisher. The final decision will rest with the Sheriff.

## C. FEES AND FINAL PUBLICATION

Any fees generated by the publishing of an article will be the sole property of the author. The Park County Sheriff's Office as an organization will have no claim to any such funds. As soon as practical after publication, the author will supply the reviewing authorities with no less than five (5) copies of the finished publication.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-26-07 | *Approval*: | *Number:* 327 |
|---|---|---|
| *Subject*:  **FAMILY MEDICAL LEAVE ACT (FMLA)** | | |
| *Reference:* | | *Standard:* |
| *Chapter:*  III | *Reevaluation Date:* | *No. Pages* 2 |

## I.  PURPOSE:
To provide guidance relating to the Family Medical Leave Act**.**

## II.  DEFINITION:

ELIGIBLE EMPLOYEE: is an employee who has been employed with Park County for at least 12 months and has worked at least 1,250 hours in the 12 months prior to requesting or being placed on FMLA leave.

FMLA: Family and Medical Leave Act

## III. POLICY:
It is the policy of the Park County Sheriff's Office to comply with the provisions of the Family and Medical Leave Act**.**

## IV. PROCEDURE:
Pursuant to the Family and Medical Leave Act of 1993, an "eligible" employee may be granted a total of 12 weeks of leave in a 12 month period for certain circumstances outlined below. The twelve-month period begins on the first date the employee's FMLA leave is taken and is measured forward 12 months from that initial date. An employee who utilizes up to 12 weeks of FMLA leave and returns to employment is entitled to restoration to the same position, or to one equivalent in pay, benefits and other terms and conditions of employment.

A.  FMLA LEAVE OF ABSENCE MAY BE TAKEN FOR THE FOLLOWING EVENTS:

1. Birth, adoption or foster care placement of a child.

2. Care of the employee, employee's spouse, child or parent with a "serious health condition" "A serious health condition" is defined as:

   A) Any period of incapacity or treatment in connection with inpatient care (i.e., an overnight stay) in a hospital, hospice or residential medical care facility.
   B) Any period of incapacity requiring absence from work, school, or other regular daily activities, of more than three (3) calendar days, that also involves continuing treatment or supervision by a health care provider.
   C) Continuing treatment or supervision by a health care provider for a chronic or long-term health condition that is incurable or so serious that if not treated, would likely result in a period of incapacity of more than three (3) calendar days.

      D) Prenatal care.

B. In the event the County employs both spouses, each employee is entitled to twelve weeks of FMLA leave, except for FMLA leave requested for the birth, adoption or foster care placement of a child. In that event, FMLA leave for both spouses combined is limited to a total of 12 weeks of leave.

C. FMLA leave may be taken intermittently, which means taking leave of absence in blocks of time, or by reducing the normal weekly or daily work schedule, whenever it is medically necessary to care for a seriously ill family member, or when the employee is seriously ill and unable to work. If FMLA leave is for birth or placement for adoption or foster care, use of intermittent leave is subject to approval by the Sheriff or Undersheriff.

D. Employees must first have exhausted all accrued sick and vacation leave prior to being granted short term disability while on FMLA leave. No vacation, sick leave or personal day accrues during any unpaid FMLA leave.

E. An employee requesting FMLA leave or determined to be eligible for FMLA leave will be required to provide:

    1. A completed Application for FMLA Leave, signed by the Sheriff or his designee.

    2. A completed and signed physician certification form, if the need for FMLA leave is due to a serious health condition of the employee or family member. All FMLA leave documentation will be deemed confidential and placed in a file separate from the employee's personnel file.

F. An employee is required to provide at least 30 days advance notice of the need to take FMLA leave when the leave is foreseeable, such as for the birth, adoption or placement of a child or planned medical treatment for the serious health condition of the employee or family member.

G. An employee on FMLA leave may be required to provide to the Sheriff's Office periodic reports concerning their status and intent to return to work. In addition, the Sheriff's Office may require the employee to undergo additional medical examinations and periodic recertifications at the Sheriff's Office expense while the employee is on FMLA leave.

H. During FMLA leave, the employee's health coverage, if any, will be continued. If FMLA Leaves is unpaid, arrangements will be made for the employee to pay for the employee's share of the insurance premium while on leave. Premiums must be paid with certified funds payable to Park County. Continuation of voluntary life insurance is also available. However, the employee must pay the required amount during unpaid FMLA leave with certified funds payable to Park County.

I. An employee who sustains a work related injury that also qualifies as a "serious health condition" under the FMLA will be placed on FMLA leave on the date the employee qualifies for FMLA leave.

J. Employees on leave due to their own serious health condition and who have accrued leave in excess of 12 weeks will be placed on a paid medical leave of absence by the Park County Sheriff's Office for at least the duration of their accrued leave.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval:* | *Number:*  328 |
|---|---|---|
| *Subject:* **ADVERSE WEATHER POLICY** | | |
| *Reference:* | *Standard:* | |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages:* 2 |

**I.  PURPOSE:**

   To provide guidance to employees for reporting for duty during periods of dangerous or adverse weather conditions.

**II.  DEFINITIONS:**

   ESSENTIAL PERSONNEL: All patrol deputies, detention deputies, animal control, communications officers, and other employees needed to maintain the safety and well being of the public and the incarcerated are considered essential personnel.

   NON-ESSENTIAL PERSONNEL:  Those personnel not meeting the definition of essential personnel and identified by their Division Commander as non-essential personnel.

**III. POLICY:**

   As a public service agency, the Sheriff's Office is committed to providing service even during periods of adverse weather.  All essential personnel are expected to report to duty on all scheduled duty days regardless of the weather.  When all Park County offices are officially closed, non-essential personnel are not required to report.

**IV. PROCEDURES:**

A.  On days when adverse weather might indicate a possible hazard to the employees, the Sheriff or Undersheriff may announce a partial closure or a delayed reporting time.  Upon the decision, arrangements for notification of the news media will occur prior to the beginning of the workday.

B.  All patrol deputies, detention deputies, animal control officers, communications officers, and other employees needed to maintain the safety and well being of the public and the incarcerated are considered essential personnel and are required to report unless personally excused by a supervisor.  Their supervisors will designate who are essential personnel.

C.  Non-essential employees are not required to report during adverse weather when Park County Offices are officially closed, or when the Undersheriff announces partial closure due to weather.  Official notification is announced through telephone and radio stations.  The announcement is made at the earliest possible time that the closure or delay can be determined and indicates the period of time the office will be closed or on delay reporting status.  Unless a radio station or direct telephone contact broadcasts official notification, employees are expected to be at their work sites for normally scheduled hours.

D.  If the Office must be closed during the course of a normal workday, the Undersheriff will have each section notified to release non-essential personnel.

E.  If an employee has a problem getting to work during adverse weather, he should not call Communications.   Instead, he should call his supervisor who will determine when the employee must report and/or help make arrangements for alternate transportation.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval:* | | *Number:* 329 |
|---|---|---|---|
| *Subject:* **EMPLOYEE DRUG TESTING** | | | |
| *Reference:* | | *Standard:* AC: 1C-22 | |
| *Chapter*: III | *Reevaluation Date:* | | *No. Pages:* 5 |

**I.  PURPOSE**:
To provide all Sheriff's Office employees with notice of the provisions contained in the Office drug-testing program.

**II.  DEFINITIONS:**

COMMISSIONED EMPLOYEE:  Those employees who posses a Deputy Sheriff's commission, including, *for the purposes of this policy only*, All Detentions Personnel, Animal Control Officers, Communications Officers, Reserve Deputies and Auxiliary Officers.

NON-COMMISSIONED EMPLOYEE:  Those employees who do not possess a Deputy Sheriff's commission.

SUPERVISOR: Those employees assigned to a position having day-to-day responsibility for supervising subordinates, or who are responsible for commanding a work element.

DRUG TEST:  The compulsory production and submission of urine by an employee in accordance with Office procedures, for chemical analysis to detect prohibited drug usage.

REASONABLE SUSPICION:  That quantity of proof or evidence that is more than a hunch, but less than probable cause.  Reasonable suspicion must be based on specific, objective facts and any rationally derived inferences from those facts about the conduct of an individual that would lead the reasonable person to suspect that the individual is or has been using or is under the influence of drugs while on or off-duty.

PROBATIONARY EMPLOYEE:  *For the purposes of this policy only*, a probationary employee shall be considered to be any person who is conditionally employed with the Sheriff's Office as a commissioned employee.

### III. POLICY:

It is the policy of the Sheriff's Office that the critical mission of law enforcement justifies the expectations of a drug free work environment through the use of a reasonable suspicion employee drug-testing program. The law enforcement profession has several uniquely compelling interests that justify the use of employee drug-testing. The public has a right to expect that those who protect them and serve them are, at all times, both physically and mentally prepared to assume these duties. There is sufficient evidence to conclude that the use of controlled substances, and other forms of drug abuse will seriously impair an employee's physical and mental health, and thus, their job performance. If law enforcement officials participate in illegal drug use and drug activity, the integrity of the law enforcement profession and community confidence is destroyed. This confidence is further eroded by the potential for corruption created by drug use. Therefore, in order to ensure the integrity of the Office, and to preserve public trust and confidence in a fit and drug-free law enforcement profession, this Office shall implement a drug-testing program to detect prohibited drug use by it's employees.

### IV. PROCEDURE:

A. Prohibited Activity:

The following rules shall apply to all applicants, probationary and commissioned and non-commissioned employees, while on and off duty:

1. No employee shall illegally possess any controlled substance.

2. No employee shall ingest any controlled or other dangerous substance, unless as prescribed by a licensed medical practitioner.

   A) Employees shall notify their immediate supervisor when required to use prescription medicine, which they have been informed, has the potential to impair their job performance. The employee shall advise the supervisor of the known side effects of the prescribed medication, and the prescribed period of use.

   B) The supervisors shall document this information through the use of an interoffice memorandum and forward it through the chain of command to their Division Commander who shall determine whether the employee will be permitted to work in their assigned duty.

   C) The employee may be temporarily reassigned to other duties, where appropriate or placed on sick leave.

3. No employee shall ingest any prescribed or over the-counter medication in amounts beyond the recommended dosage.

4. Any employee who unintentionally ingests, or is made to ingest a controlled substance shall immediately report the incident to their supervisor so that appropriate medical action may be taken to ensure the members health and welfare.

5. Any employee having a reasonable basis to believe that another employee is illegally using, or in possession of any controlled substance shall immediately report the facts and circumstances to their supervisor.

6. Violation of this policy may result in disciplinary action up to and including dismissal.

B.  Applicant Drug-Testing:

1.  Applicants applying for a position within the Office shall be required to take a drug test as a condition of employment during a pre-employment medical examination.

2.  Applicants shall be disqualified from further consideration for employment under the following circumstances:

   A)  Refusal to submit to a required drug-test; or

   B)  A confirmed positive drug-test indicating drug use prohibited by this policy.

C.  Probationary Employee Drug-Testing:

All probationary employees shall be required as a condition of employment to participate in any unannounced mass/mandatory drug tests scheduled for the probationary period.  The Sheriff or the Undersheriff shall determine the frequency and timing of such tests.

D.  Employee Drug Testing:

Employees will be required to take drug tests as a condition of continued employment in order to ascertain prohibited drug use, as provided below:

1.  For all employees, a random department wide drug test may be administered at anytime determined by the Sheriff or Undersheriff.

   a)  The test shall be administered by an outside agency or medical facility.

   b)  Employees shall be picked randomly by the testing facility

2.  For all employees, a supervisor may order an employee to take a drug test upon reasonable suspicion that the employee is or has been using drugs.  A summary of the facts supporting the order shall be made available to the employee prior to the actual test.

3.  For commissioned employees, a mandatory drug test shall be considered as a condition of application to certain assignments within the Office such as a drug task force, SWAT, or SORT.

4.  For commissioned employees, at anytime, during an administrative/internal investigation. This could include incidents such as an officer involved shooting or an accident involving serious bodily injury.

E.  Drug-Testing Procedures:

1.  The testing procedures and safeguards provided in this policy are to ensure the integrity of this Office and shall be adhered to by any personnel administering drug tests.

2.  Personnel authorized to administer drug tests shall require positive identification from each employee to be tested before they enter the testing area.

3.  Testing personnel shall conduct a pre-test interview with each employee in order to ascertain and document the recent use of any prescription or non-prescription drugs, or any indirect exposure to drugs that may result in a false positive test result.

4.  The bathroom facility of the testing area shall be private and secure.

    A) Authorized testing personnel shall search the employee and facility before an employee enters it to produce a urine sample, and document that it is free of any foreign substances.

    B) Testing personnel of the same sex as the employee shall observe production of the urine sample.

5. Where the employee appears unable or unwilling to give a specimen at the time of the test, testing personnel shall document the circumstances on a drug-test report form. The employee shall be permitted no more than four hours to give a sample, during which time he/she shall remain in the testing area, under observation. Reasonable amounts of water may be given to the employee to encourage urination. *Failure to submit a sample shall be considered a refusal to submit to a drug test.*

6. Employees shall have the right to request that their urine sample be split and stored in the event of a legal dispute. The urine samples must be provided at the same time and marked and placed in identical specimen containers by authorized testing personnel. One sample shall be submitted for immediate drug testing. The other sample shall remain at the facility in frozen storage. This sample shall be made available to the employee or his attorney should the original sample result in a legal dispute or the chain of custody is broken. The other sample shall also be available to the Office for testing in the event of the loss or distinction of the first sample.

7. Specimen samples shall be sealed, labeled and checked against the identity of the employee to ensure the results match the tested specimen. Samples shall be stored in a secured and refrigerated atmosphere until tested or delivered to the testing lab representative.

8. Whenever there is a reason to believe that the employee may have altered or substituted the specimen to be provided, a second specimen shall be obtained immediately under direct observation of the testing personnel.

F. Drug-Testing Confirmation:

1. The testing or processing phase shall consist of a two-step procedure:

    A) Initial screening test, and

    B) Confirmation test.

2. The urine sample is first tested using the initial drug screening procedure. An initial positive test result will not be considered conclusive; rather, it will be classified as "confirmation pending." Notification of test results to the Administrative Services Commander shall be held until the confirmation test results are obtained.

3. A specimen testing positive will undergo an additional confirmatory test. The confirmation procedure shall be technologically different and more sensitive than the initial screening test.

4. The drug screening tests selected shall be capable of identifying a minimum of marijuana, cocaine, and every major drug of abuse, including heroin, amphetamines and barbiturates. Personnel utilized for testing will be certified as qualified to collect urine samples or adequately trained in collection procedures.

Defendants' Motion to Dismiss, Exhibit A

5. Concentrations of a drug at or above the following levels shall be considered a positive test result when using the initial immunoassay drug screening test:

**Initial Test................................. Level ng/ml**
Marijuana metabolite ............................... 100
Cocaine metabolite................................... 300
Opiate metabolites ................................. *300
Phencyclidine............................................ 25
Amphetamines ...................................... 1000

* 25ng/ml if immunoassay specific for free morphine.

Concentrations of a drug at or above the following levels shall be considered a positive test result when performing a Confirmatory GC/N4S test on a urine specimen that tested positive using a technologically different initial screening method:

**Confirmatory Test  ................Level (ng/ml)**
Marijuana metabolite ...........................15 (1)
Cocaine metabolite.............................150 (2)
Opiates:
   Morphine ................................. 300
   Codeine.................................. 300
Phencyclidine............................................ 25
Amphetamines:
   Amphetamine ......................... 500
   Methamphetamine ................................. 500

6. The laboratory selected to conduct the analysis shall be experienced and capable of quality control, documentation, chain-of-custody, technical expertise, and demonstrated proficiency in urinalysis.

7. Employees having negative drug test results shall receive a memorandum stating that no illegal drugs were found.  If the employee requests such, a copy of the letter will be placed in the employee's personnel file.

8. Any employee who breaches the confidentiality of testing information shall be subject to discipline.

G. Chain of Evidence-Storage:

1. Each step in the collecting and processing of the urine specimens shall be documented to establish procedural integrity and the chain of custody.

2. Where a positive result is confirmed, urine specimens shall be maintained in secured, refrigerated storage for a period of two (2) years unless otherwise directed by the Office Legal Advisor.

H. Drug-Test Results:
All records pertaining to department required drug tests shall remain confidentially placed in the employee's confidential medical file and shall not be provided to other employers or agencies without the written permission of the person whose records are sought.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval:* | | *Number:* 330 |
|---|---|---|---|
| *Subject:* **BADGE RETENTION** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 2 |

**I.  PURPOSE**:
To establish policy concerning the awarding of badges upon retirement or promotion of authorized members.

**II.  DEFINITIONS:**

RETIREE: Any Sheriff's Office member who has been awarded a pension, either regular or medical, by Park County.  As used in this directive, the term refers exclusively to those employees, either commissioned or non-commissioned, who were authorized when on active duty to carry a badge.

HONORABLE RETIREE: A regular or medical retiree whose service to the Sheriff's Office exhibited an exemplary sense of personal moral standards and conduct.

MEDICAL RETIREE: An authorized Sheriff's Office member who has been awarded a pension because of medical impairments.  Medical retirements will generally be considered honorable retirements unless they are based upon substance abuse or some other condition which has resulted, or could result in bringing discredit upon the Sheriff's Office or the retiree.  In all such cases the Sheriff shall make the determination of whether the retirement is considered honorable.

**III.  POLICY**: It is the policy of the Sheriff's Office to show an appreciation of an authorized employee's years of dedicated service to Park County and to the Sheriff's Office.  The Sheriff may award each honorable retiree his/her badge reflecting the last rank held.

**IV.  PROCEDURE**:

An employee's badge of office symbolizes the employee's dedication, service and public trust.  When awarded to employees upon retirement, they will be reminders to the retirees and their families of their years of dedicated service, sometimes involving extreme hardship.  They also represent the gratitude of the Office and it's personnel.  Personnel that are promoted may purchase badges from the Sheriff's Office at the replacement cost.

A.  IDENTIFICATION CARDS:

All retirees that were authorized to carry a handgun will be issued an identification card bearing the retiree's photograph, rank at time of retirement, and the word "Retired".

Defendants' Motion to Dismiss, Exhibit A

B.  CONCEALED WEAPON PERMIT:

Upon retirement the Sheriff may elect to issue the retiree a concealed weapon permit. This is issued solely at the Sheriff's discretion. This permit shall be in effect until the end of the Sheriff's term of Office.

C.  DEATH PRIOR TO RETIREMENT:

If an employee dies, either on duty or off duty, prior to retirement, his/her badge shall be awarded to the employee's spouse or next of kin.

D.  ADMINISTRATIVE DISCHARGE:

Under no circumstances will a retirement be considered honorable if the employee retires after being administratively discharged, resigns in lieu of disciplinary action, or resigns because of pending or existing misdemeanor or felony criminal charges.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval:* | | *Number:* 331 |
|---|---|---|---|
| *Subject:* **EMPLOYEE GRIEVANCES** | | | |
| *Reference:* | | *Standard:* CALEA 25.1.1, 25.1.2, 25.1.3, 25.1.4, 25.1.5, 25.1.7, 25.1.8 | |
| *Chapter*: III | | *Reevaluation Date:* | *No. Pages:* 2 |

**I.   PURPOSE**:
To establish policy concerning the appropriate handling of employee grievances in a quick and equitable manner.

**II.  DEFINITIONS:**

GRIEVANCE:  A formal complaint on the part of a member, that an action or omission violates the Sheriff's Office Policy in such a way as to adversely affect the member.

**III. POLICY:**
The Park County Sheriff's Office shall have a formal and open grievance procedure designed to improve management practices, increase member confidence and reduce personnel dissatisfaction, coordinated by the Undersheriff.

**IV. PROCEDURE:**
Operational matters such as disagreements over performance appraisals, personality or supervisory/subordinate relationships, FLSA and issues related to the Americans with Disabilities Act of 1990 (ADA) are all grievable by a member.   The grievance procedures are not to be used as an appeal process in disciplinary actions or replace any portion of the disciplinary process.

    A.   Members with grievances will be encouraged to resolve the matter as close to its point of origin as possible. Grievances will first be addressed to the immediate supervisor. If the grievance concerns the immediate supervisor, the next supervisor in the chain-of-command will receive the grievance for resolution. Grievances must be presented in writing and include a statement of facts and allegation and the harm done along with the remedy or adjustment sought.

    B.   Grievances must be filed within five working days of the incident for which relief is sought.  In the event that a series of events or cumulative conduct is grieved, the last single incident may be used as the date of incident leading to the grievance.  At each level of the chain-of-command that the grievance is presented for resolution, there will be an additional five working day period for resolution of that grievance.

    C.   Each supervisor receiving a grievance shall acknowledge receipt by noting the time and date, signing the written grievance, then providing the member with a photocopy of the acknowledgment.   The grievance will be analyzed and the facts or allegations

investigated. The supervisor must affirm or deny the grievance within a five working day period and identify any adjustment or remedy to be made.

D.   In the event that resolution of the grievance is not met to the satisfaction of either party (supervisor and/or grievant), appeal to the next step in the chain-of-command may be made within five working days, by either party.

E.   The Undersheriff shall be the final authority in grievances and must rule in writing on any appeal within ten days. Prior to a decision on any appeal, the Undersheriff will schedule a meeting with the grievant, for the purpose of determining factual information concerning the grievance. Those in attendance at the meeting shall include the grievant, supervisors involved in the grievance process, and any representative from within the Sheriff's Office selected by the grievant or the Undersheriff.

F.   The Undersheriff, who is responsible for maintenance, control and security of grievance records, will file all original documents concerning grievances. Only the Undersheriff shall have immediate access to grievance records. The grievant shall have access through the Undersheriff to only those grievances that the grievant is directly associated.  This will only be for the purpose of review and/or copy.

G.   Every January, the Undersheriff shall analyze all the grievances filed in the preceding year and furnish the Sheriff a report of grievances by January 31 for use in planning by the Command Staff.

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date:* **09/23/2002** | *Approval:* | | *Number:* 332 |
|---|---|---|---|
| *Subject:* **Secondary Employment/Off Duty Employment** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* | *Reevaluation Date:* | | *No. Pages:* 3 |

**I.      PURPOSE:**   The purpose of this policy is to set forth guidelines to govern secondary employment by members of this law enforcement agency.

**II.     DEFINITIONS:**

  <u>EMPLOYMENT</u>:   The provision of a service, whether or not in exchange for a fee or other service.  Employment does not include volunteer work for charitable organizations.

  <u>EXTRA-DUTY EMPLOYMENT</u>: Any employment that is conditioned on the actual or potential use of law enforcement powers by the police officer employee.

  <u>REGULAR OFF-DUTY EMPLOYMENT</u>:  Any employment that will not require the use or potential use of law enforcement powers by the off-duty employee.

**III.    POLICY:**    The policy of this agency is to provide guidelines to law enforcement employees to inform them of the types of secondary employment that are appropriate and to establish procedures to maintain accountability for the welfare of the agency.  These requirements are essential for the efficient operation of the agency and for the protection of officers, the agency, and the community.

**IV.     PROCEDURE:**

There are two types of off-duty employment in which an employee may engage:

A.  Regular Off-Duty Employment
    Employees may engage in regular off-duty employment that meets the following criteria:

  1.    Employment of a non-police nature in which vested police powers are not a condition of employment; the work provides no real or implied law enforcement service to the employer and is not performed during assigned hours of duty.

  2.    Employment that presents no potential conflict of interest between duties as a Law enforcement officer and duties for the secondary employer. Some examples of employment representing a conflict of interest include, but are not limited to, the following:

    a.    Officers who work as a process server, repossessor, or bill collector; towing of vehicles; or any other employment in which police authority might be used to collect money or merchandise for private purposes.

Defendants' Motion to Dismiss, Exhibit A

    b.      Work involving personnel investigations for the private sector or any employment that might require the officer to have access to police information, files, records, or services as a condition of employment.

    c.      Employment using the police uniform in the performance of tasks other than those of a police nature.

    d.      Employment that assists (in any manner) the case preparation for the defense in any criminal action or for either side in any civil action or proceeding.

    e.      Officers who work for a business or labor group that are on strike.

    f.      Officers who work in occupations that are regulated by, or that must be licensed through, the police agency or its civilian board.

    3.      Employment that does not constitute a threat to the status or dignity of law enforcement as a professional occupation.  Examples of employment that constitute such a threat and should be denied include, but are not limited to:

    a.      Establishments that sell pornographic books or magazines, sexual devices or videos, or that otherwise provide entertainment or services of a sexual nature.

    b.      Any employment involving the sale, manufacture, or transport of alcoholic beverages as the principal business.

    c.      Any gambling establishment.

B.  Extra-Duty Employment
    Sheriff's officers may engage in extra-duty employment as follows:

    1.      Where a government, profit-making, or not-for-profit entity has a contract agreement with the Sheriff's Office for officers in uniform who are able to exercise their police duties.

    2.      Types of extra-duty services that may be considered for contracting are as follows:

        a.    Traffic control and pedestrian safety
        b.    Crowd control
        c.    Security and protection of life and property
        d.    Routine law enforcement for public authorities
        e.    Plainclothes assignments

C.  Limitations on regular off-duty employment and extra-duty employment are as follows:
    1.      In order to be eligible for off-duty employment, a Sheriff's Office employee must be in good standing with the agency. Continued agency approval of a Sheriff's employee's off-duty employment is contingent on such good standing.

    2.      Those officers who have not completed their probationary period or who are on

medical or other leave due to sickness, temporary disability, or an on-duty injury shall not be eligible to engage in regular or extra-duty employment.

3.   Prior to obtaining off-duty employment, a Sheriff's employee shall comply with agency procedures for granting approval of such employment or registration for extra-duty employment.

4.   An officer may work a maximum of 24 hours of off-duty-regular or extra-duty employment, or a total of 64 hours in combination with regular duty in each calendar week.

5.   Work hours for all off-duty employment must be scheduled in a manner that does not conflict or interfere with the Sheriff's employee's performance of duty.

6.   A Sheriff's officer engaged in any off-duty employment is subject to call-out in case of emergency, and may be expected to leave his off-duty or extra-duty employment in such situations.

7.   Permission for a Sheriff's employee to engage in outside employment may be revoked where it is determined pursuant to agency procedure that such outside employment is not in the best interests of the agency.

7.   All officers in good standing are eligible after completion of FTO—first come, first serve.

8.   Reserve officers may volunteer after a request has been posted for 48 hours, in order to give regular officers first choice.

9.   The Sheriff or the Undersheriff must approve non-patrol and Reserve personnel for extra duty assignments.

10.   The extra duty requests will be posted in all stations.

11.   If an officer does not report for extra duty as assigned and the absence is unexcused, that officer will be removed from the eligibility list.

D.   An Extra Duty Officers Service Contract shall be signed between the requesting agency and the Sheriff before any extra duty is performed.

1.   Extra-duty hours will be calculated separately and have no bearing or impact on regularly scheduled work hours.  The total amount of extra-duty pay due to an officer will be calculated at a rate of 1 ½ times the officer's regular hourly rate times the number of extra hours worked.  The total amount due will be added to the officer's pay at the end of the current pay period in which the hours are worked.  One check will be issued to include both the 160 hour based pay as calculated and the extra duty pay.

2.   See the attachments for Extra Duty Deputies' Service Contract and Special/Extra Duty Time Sheet.

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-23-07 | *Approval*: | *Number:* 333 |
|---|---|---|
| *Subject*:  **SPECIAL EVENTS** | | |
| *Reference:* | | *Standard:* |
| *Chapter*:  III | *Reevaluation Date:* | *No. Pages* 2 |

## I. PURPOSE:
   To establish guidelines for handling special events. Special events may include parades,
   races, fairs or any other event, which may require law enforcement activities.

## II. DEFINITIONS:

   SPECIAL EVENT COORDINATOR: An individual holding the rank of Sergeant or above,
   who is assigned on a case-by-case basis by the Division Manager.

## III. POLICY:
   It is the policy of the Park County Sheriff's Office to develop a specific plan for handling
   special events. The plan will include measures insuring the safety of those attending or
   participating in the event, safe and orderly flow of traffic and crime control**.**

## IV. PROCEDURE:
   The affected Division Manager shall designate one supervisor, as the Special Event
   Coordinator. The Special Events Coordinator shall be responsible for:

   A.  Ensuring sufficient man power is available to handle the anticipated traffic flow and
       crime problems. The coordinator may use special units such as Traffic, Mounted, Special
       Weapons and Tactics (S.W.A.T), Reserves and Auxilary.

   B. Developing and submitting a written estimate of anticipated traffic flow and crime
       problems to the affected division commander along with their recommendations for
       staffing prior to the event.

   C. Establishing a contingency plan for traffic direction and control. Establishing a Command
       Post for major events and ensuring sufficient equipment and staffing is available for
       crowd and riot control.

   B.  Ensuring adequate vehicles are available for transportation in the case of mass arrests.

   F.  Ensuring adequate manpower is available for relief during a prolonged deployment.

   G.  Coordinating with outside agencies whenever a joint operation is required or in the event
       of an overlap in jurisdiction.

   H.  Completing an After Action Report at the completion of the event detailing the success
       and failure of the operation. The After Action Report will make recommendations for

change when necessary and set time lines for the completion of such changes once approved. The After Action Report shall be forwarded to the affected Division Commander, with copies going to all other involved agencies, divisions, sections and units.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 04-10-07 | *Approval*: | *Number*: 334 | |
|---|---|---|---|
| *Subject*:  **EARLY WARNING SYSTEM-REVERSE 911** | | | |
| *Reference: Park County Communications Policy* | | *Standard:* | |
| *Chapter*:  III | *Reevaluation Date:* | | *No. Pages* 2 |

**I.    PURPOSE:**

The Reverse 911 procedure is used to notify the community of potential events in their area such as missing children, forest fire evacuations, hostage situations, etc. This procedure has been created to outline procedures for using the Reverse 911 system.

**II.    PROCEDURE:**

Whenever the Incident Commander on a scene of an incident determines the need for Reverse 911, all pertinent information for the Reverse 911 will be provided to communications, including any instructions or response required by the public. Communications will contact the Sheriff, Undersheriff, or Lieutenant to authorize the launch. The notified party will provide any additional requirements for the message.

**SIX STEP EVENT LAUNCH INSTRUCTIONS**

1.  Call the Voice Message Center and record the message to be delivered. Remember to compose your message prior to this call for time length (30 seconds), and clarity, confirm with person requesting.
    *   **(800) 451-2979**
    *   PIN is required to access the voice Message Center (7100049)
    *   A number will be assigned to the voice message. Write down the number assigned to the saved voice message.

2.  Call the Emergency Call Relay Center (EREC) to initiate the event.
    **(800) 664-5231**

3.  The ECRC will ask you if you are calling about an emergency event launch or a support question.  Tell the ECRC this is an *emergency event launch.*

4.  The ECRC will ask for:
    *   Your contact phone number (303) 277-0211
    *   **User name    parkcoso**
    *   The voice message number (see#1)
    *   The type of event that you want to launch

5.  The ECRC will ask for specific information regarding your event:
    **A. Address & Radius Event**:
    *   *Provide: house number, street name, community, or radius distance.*
     **B. Intersection & Radius event**

Defendants' Motion to Dismiss, Exhibit A

- ***Provide: first street name, second street name, community, radius distance***

**C. Any other pertinent information including:**

- ***Specific instructions for the public (i.e. Evacuation, BOLO, contact info, etc.)***

6. The ECRC:
   - Will confirm message content with you.
   - Will tell you the number of telephone numbers in the selected event.
   - Will ask if you want to launch the event. Request EVENT LAUNCH, or ask to change or cancel the event.
   - Will provide you with the Event ID the launched event.
   - Will ask if you want to remain on the line for ongoing event status.
   - Will ask if you want a faxed summary report following the event or if you will access your report through the web site. (HAVE REPORT FAXED)

Notifications

   - Administrative Notifications
   - Communications Manager
   - Emergency Manager if the call involves several jurisdictions/agencies such as a wildfire, structure fire requiring mass evacuations, mass casualty event, flooding, etc.

**IV. General Information**

It is very important whenever using Reverse 911 to be concise, clear and specific. The person receiving the call should be able to clearly understand what is expected of them after hearing the message.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-01-2004 | *Approval*: | *Number* : 335 |
|---|---|---|
| *Subject:* **RESPONSE TO CIVIL LITIGATION** | | |
| *Reference:* | | *Standard:* |
| *Chapter:*  III | *Reevaluation Date:* | *No. Pages:*  5 |

**I.      PURPOSE:**

The purpose of this policy is to provide employees with guidelines for (1) responding to law enforcement activities that represent a potential high risk of civil liability in a manner that will decrease this risk level, and (2) responding to civil litigation that involves the department or its employees.

**II.      DEFINITIONS:**

DISCOVERY:  The judicial process for compelling production of written records or other evidence for use in litigation.

IN-CAMERA INSPECTION:  Judicial inspection of allegedly privileged information to determine whether the need to present such information as part of the essential proof of the case outweighs the interest in maintaining its confidentiality.

**III.      POLICY:**

Litigation alleging misconduct by law enforcement officers has increased dramatically. Such litigation can be extremely expensive and harmful to the reputation of the department and its employees.  It is the policy of this department to (1) take such proactive measures as are possible to avoid civil litigation through personnel training, supervision, and adherence to departmental policy and procedures among other means; (2) to take such steps as are necessary following high-risk incidents to document the event and actions of agency employees; and (3) to maintain a strong and coordinated response to civil litigation involving this agency and its employees.

**IV.      PROCEDURE:**

A.  High-Risk Incidents

1.  The following types of law enforcement activities are most frequently the subjects of civil litigation and will therefore merit special attention as described herein.  However, the following are not inclusive of all high-risk incidents and officers should follow post-event procedures described in this policy in any event where civil litigation may be more likely.

    a.  Uses of deadly and non-deadly force that result in death or bodily injury.
    b.  Vehicular pursuit resulting in personal injury or property damage.
    c.  Searches and seizures; physical arrests.
    d.  Failure to take law enforcement action.

                                            Defendants' Motion to Dismiss, Exhibit A

   e.  Rendering medical assistance.

 2.  All personnel shall regularly review department policy on these topics.

B.  Response to High-Risk Incidents:

 1.  Law enforcement officers shall adhere to the following procedures when on the scene of
  a high-risk incident:

  a.  Secure the scene and all evidence.
  b.  Record the names and addresses of all witnesses on the scene, and attempt to obtain a
   statement. A statement should also be obtained from ambulance and
   emergency room personnel, where applicable.
  c.  Request that a supervisor and/or an investigator be dispatched to the scene.
  d.  Where a high-speed chase has occurred, note all weather and traffic conditions, route
   of chase, use of emergency response equipment, and other relevant information within
   the police report.

 2.  A supervisor shall be requested to conduct an independent review of all relevant
  information prior to the booking process or a search where circumstances indicate that
  there is a potential for a false arrest or improper search.

 3.  On-scene investigators shall process the scene according to department procedures.

  a.  Color photographs or a videotape shall be taken from several angles of the entire
   scene.
  b.  Where possible, photographs of all witnesses should be taken on the scene.

 4.  Where an arrest has been made, the following information shall be documented by the
  booking officer during the booking process.  Officers should refer to this agency's
  policies and procedures on transporting prisoners and booking for additional details.

  a. Whether medical treatment is necessary, was requested, or received prior to
   arrival at the facility.  The suspect's general physical health and the presence of
   any specific health problems requiring special treatment should be documented.
  b. Assessment of suspect's general mental health, including any indications of
   overt, aggressive behavior or potential for suicide  indicating a need to summon a
   mental health specialist, should be done.
  c. A booking photograph of the suspect should be taken.  Any injuries shall be
   specially photographed and documented.
  d. Medical or psychological services shall be obtained for any suspect that has
   requested, or is in apparent need of, such assistance prior to the booking process.

C.   Post-Incident Procedures

 1.  All law enforcement personnel involved in a high-risk incident shall submit a special
  report fully documenting the incident to their supervisor before concluding their tour of
  duty.
 2.  The supervisor shall review the report, requesting any necessary supplemental
  information, and then forward it to the Undersheriff and Sheriff as soon as practicable.

 3.  The Sheriff or his designee shall prepare and submit a confidential memo to the

Defendants' Motion to Dismiss, Exhibit A

department's legal counsel providing a full assessment of the incident.  As soon as practical, the Sheriff or his designee shall meet with legal counsel, and the officers involved in the incident to:

    a.  Advise the officers that any internal investigation initiated does not necessarily imply misconduct on their part.

    b.  Advise the officers that they are not required to discuss the incident with reporters or attorneys not associated with the department unless pursuant to court order.

D.  Responsibilities of the Sheriff

1.  The Sheriff or his designee shall coordinate all departmental responses to pending or potential litigation in conjunction with the department's legal counsel.

2.  A litigation file shall be developed and securely maintained containing copies of all relevant documents generated in each case, to include:

    a.  Copies of all relevant departmental policies pertaining to the incident.

    b.  Copies of any relevant radio communications, computer, or telephone records or tapes.

    c.  Blowups of all relevant photographs pertaining to the incident.

    d.  Copies of the disciplinary and training records of all involved personnel.

    e.  Where applicable, the criminal docket from any criminal case arising from the incident.

3.  An accounting process shall be established to ensure that:

    a.  All documents are routed to the appropriate unit for resolution.

    b.  All documents are processed and fulfilled by the due date.

    c.  A record is kept detailing the information released in each case and the purpose for its release.

4.  The Sheriff or his designee shall undertake a regular audit of departmental litigation to determine whether a need for policy revision or training exists.  The audit shall include settlements and all litigation filed or resolved during the period to be reviewed.

5.  Updates on current case law and statutes relevant to law enforcement shall be disseminated to the department employees.

6.  Upon conclusion or settlement of any civil litigation, the Sheriff shall notify those officers and their supervisors of the outcome of the case who were directly involved with the incident forming the basis for the lawsuit.

E.  Responsibilities of Law Enforcement Employees

1.  Any law enforcement employee named as a party in a civil action for acts or omissions allegedly arising out of the scope of his/her official duties shall immediately notify the Sheriff and the department's legal counsel.

    a.  The employee shall inform the legal counsel whether the employee will engage a private attorney, or whether representation through the department's legal

counsel is requested.

    b. Where the employee has requested legal representation through the department's legal counsel, the employee has a duty to cooperate fully with his/her legal representative.

    c. Departmental legal counsel shall determine whether the employee is eligible for departmental representation or will be required to seek separate representation, and shall notify the employee of such determination.

2. All law enforcement employees shall maintain accurate and detailed reports at all times.

3. No law enforcement employee shall make public statements in his/her official capacity as a law enforcement agency employee concerning litigation affecting the department without approval of the Sheriff.

F.  Response to Subpoenas and Discovery Requests

1. Any law enforcement employee receiving a subpoena to testify as to actions undertaken in his/her official capacity shall immediately notify the Sheriff and the department's legal counsel of such subpoena. A copy of the subpoena shall be forwarded with the notification.

2. All discovery requests or subpoenas for department records, reports, or notes will be complied with as directed by the department's legal counsel and in accordance with state law.

3. The following information is generally only subject to release to a judge for in-camera inspection regarding discovery:

    a. Personnel records
    b. Citizen complaints
    c. Internal investigatory files related to the incident that is currently the subject of criminal or civil litigation
    d. Blanket requests for all past internal investigations into misconduct of the officers currently the target of litigation
    e. Blanket requests for all internal investigations into officer misconduct or misconduct similar to that being litigated

4. The following information may or may not be fully discoverable:

    a. Records of official review boards
    b. Departmental policies and procedures
    c. Training records
    d. Internal memos that do not fall within the attorney work product privilege

5. Privileged material generally not subject to discovery:

    a. Names of confidential informants or citizens who wish to remain anonymous
    b. Records of ongoing internal investigations that would be jeopardized by disclosure
    c. Investigative files relating to ongoing criminal investigations
    d. Communications subject to any legal privilege

G. Response to Media

1.  The Sheriff or his designee shall be responsible for coordinating all department statements pertaining to any incident or litigation involving the department.

2.  The Sheriff or his designee shall work with the department's legal counsel to present fair and accurate media statements pertaining to testimony, legal issues, or other concerns arising from litigation or any other incident involving the department.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 04-10-07 | *Approval*: | *Number:* 336 |
|---|---|---|
| *Subject*: **POLICE OFFICER DOMESTIC VIOLENCE** | | |
| *Reference:* | | *Standard:* |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages* |

**I.    PURPOSE:**

It is the purpose of this policy to provide guidelines for **a** domestic violence situation.

**II.    DEFINITIONS:**

"DOMESTIC VIOLENCE" means an act or threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship.

"DOMESTIC VIOLENCE" also includes any other crime against a person or against property or any municipal ordinance violation against a person or against property, when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship.

"INTIMATE RELATIONSHIP" means a relationship between spouses, former spouses, past or present unmarried couples, or persons who are both the parents of the same child regardless of whether the persons have been married or have lived together at any time.

**III.    POLICY:**

It shall be the policy of the Park County Sheriff's Office to enforce, and is authorized, to use every reasonable means to protect the alleged victim or the alleged victim's children to prevent further violence.

**IV.    PROCEDURES:**

See criminal code 18-6-801.

Refer to the **300** Sections of **the Park County Sheriff's Office Policy and Procedures** for personnel and internal investigative rules. Review can/does include sections:

314   Conduct Rules and Regulations.
316   Sexual Harassment /Discrimination
318   Complaint Handling/Investigative Procedures
319   Internal Investigative Rules
320   Disciplinary Action

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-27-07 | *Approval*: | *Number:* 337 | |
|---|---|---|---|
| *Subject*:  **COURT APPEARENCE** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* III | | *Reevaluation Date:* | *No. Pages* 1 |

**I.      PURPOSE:**

      To establish guidelines for the appearance in a courtroom.

**II.     DEFINITIONS:**

**III.    POLICY:**

      It is the policy of the Park County Sheriff's Office to report to court on the date and time on any subpoena in acceptable attire.

**IV.    PROCEDURE:**

      APPEARANCE IN COURT: Employees or members are required to report to court on the date and time listed on any subpoena they received from the court liaison. Employees or members that are advised by either the District Attorney's Office "call-off" telephone recording system or the court liaison that they are not needed for court are excused from appearing. Employees or members appearing in court regarding Park County Sheriff's Office business will wear the uniform in the prescribed manner or attire themselves in acceptable business attire. Employees or members appearing in court for personal reasons, i.e. divorce, child custody, civil proceedings, etc. will not be in uniform or carry a weapon of any type into the courtroom. Employees or members will conduct themselves in a professional manner so as not to bring discredit upon the Park County Sheriff's Office.

Defendants' Motion to Dismiss, Exhibit A

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 04-10-07 | *Approval*: | *Number:* 338 | |
|---|---|---|---|
| *Subject*:  **ELECTRONIC MESSAGING** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:*  III | *Reevaluation Date:* | | *No. Pages* 1 |

**I.   PURPOSE:**

To establish an additional paging system that provides more information on pagers to Park County Sheriff's Office.

**II.   DEFINITIONS:**

**III.   POLICY:**

It shall be the policy of Park County Sheriff's Office to use the WesternPaging dot com internet paging system as an option to provide additional information to Deputies and any one who has a pager number.

**IV.   PROCEDURE:**

A.   If you have internet access and the number to the pager you wish to call, you may send a page.

1.   Log on to westernpaging dot com.

2.   Go to SEND tab.

3.   Enter the 7-digit western paging pager number.

4.   In the message section, compose message.

5.   Click on Send.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 03-09-09 | *Approval*: | *Number:* 339 |
|---|---|---|
| *Subject*: **RESERVE AND AUXILIARY OFFICERS** | | |
| *Reference:* | | *Standard:* |
| *Chapter:* III | *Reevaluation Date:* | *No. Pages* 4 |

**I. PURPOSE:**
To set forth the classification plan to be used by the Park County Sheriff's Office.

**II DEFINITIONS:**

RESERVES:

    A. Subject to Colorado Revised Statues (C.R.S.)
    B. Received certification from P.O.S.T. Board
    C. Certified in firearms, driving, P.P.C.T. and comply with all P.O.S.T. training requirements.
    D. May, under direct supervision transport prisoners, do surveillance, provide security at special events and provide traffic control.
    E. Completion of FTO Program will allow added duties, service to include all aspects of a patrol deputy.

AUXILIARY:

    A. An Auxiliary can participate in ride-alongs in an observation capacity.
    B. The Auxiliary can attend training given by the department including skills training.
    C. If the Auxiliary has a concealed weapon permit, they can carry if they are firearm qualified and current in P.P.C.T.
    D. Weapon must be concealed at all times.
    E. Must be under direct supervision of full time deputy at all times
    F. May do surveillance, special events, and traffic control.

DIRECT SUPERVISION:

An assignment given by a full time peace officer to a Reserve Deputy, which is carried out in the personal presence of and/or the immediate control of, or in direct radio or telephone contact with the peace officer. The Reserve must be in uniform while on assignment except when performing extradition or surveillance duties.

RESERVE DEPUTIES:

Are authorized to function as a Reserve Deputy only during authorized duty tours. Reserve Deputies will work under supervision. No Reserve Deputy will be considered on-duty unless there is a peace officer present or in immediate contact.

<u>OFF DUTY STATUS:</u>

This status exists until such time as an order to report or respond is given by a supervisor of the Sheriff. Reserve Deputies have only those rights and authority of a private citizen unless ordered to report.

**III.   POLICY:**
It is the responsibility of the Park County Sheriff's Office to ensure that every position within the Sheriff's Office will have a written job description.

**IV.   PROCEDURE:**

    A.   RESTRICTIONS AND GUIDELINES:

1.   Reserve Deputies work at the pleasure of the Sheriff.

2.   No Reserve Deputy is authorized to have emergency red and blue lights on any private vehicle. Reserve Deputies will utilize a fully marked Sheriffs vehicle when operating emergencies. No private vehicles are authorized for use in an official capacity.

3.   Reserve Deputies are not permitted to carry concealed weapons of any kind while off duty. The Sheriff may authorize a concealed weapon permit under the same guidelines for private citizens.

4.   Firearms: only firearms conforming to Sheriff's Office policy will be carried by Reserve Deputies in accordance to Sheriff Office guidelines.

5.   Appearance: all Reserve Deputies will be required to conform to the standards for uniform outlined in policy and procedures. The expense of the uniform shall be borne by the reserve unless surplus uniforms are available. <u>No portion of the uniform will be worn with civilian clothing,</u> except when assigned by a supervisor.

6.   Equipment usage: Any equipment possessed or used by a Reserve Deputy or Auxiliary such as vehicles, radios, badges, uniforms and insignias, which would identify the Reserve/Auxiliary as a peace officer shall only be worn on duty. Department vehicles and equipment will be maintained according to Policy and Procedure.

7.   Discipline: All Reserve Deputies/Auxiliary are subject to all Policy and Procedures of the Park County Sheriff's Office.

8.   Reserve Deputy uniforms will be distinguished from full time peace officer uniforms. Reserve badge will state reserve. Auxiliary will be in brown shirt/black 511 BDU style pants.

9.   Equipment may be checked out to Reserve officers. It is the responsibility of the Reserve to check out and return any and all equipment immediately upon completion of the shift. Patrol vehicles will be checked according to department policy and damage will be noted.

10. Reserve Deputies may be granted a leave of absence by the Sheriff, not to exceed a period of six (6) months.

B.  RIDE ALONG POLICY:

Reserve Deputies are encouraged to ride with regular full time deputies. Restrictions on the riding with an officer are:

1. Reserve Deputies are required to notify deputy's 24 hours prior to ride along. Exceptions to this may be granted to the Reserve Deputy by the Department Supervisor, Sergeant or Corporal for a "needs for the department" basis (i.e. short officers, special events).

2. Reserves agree to volunteer for 96 hours annually (approximately 8 hours per month) to the Sheriffs office. Theses hours can be accrued by working special events, participating in ride alongs, office work, and/or training hours.
*See Note*

C.  CHAIN OF COMMAND:

1. A coordinator will be appointed by the Sheriff to serve as a liaison between the Reserve-Auxiliaries and the Sheriff's Office. The coordinator will provide notification of training, events, and record volunteer training hours. The coordinator will be directly responsible to the Sheriff.

2. The Reserve Deputy will be directly responsible to their assigned full time deputy. The Reserve Deputy is responsible for equipment issued, reports and paperwork assigned. It is the responsibility of the Reserve to have all equipment, reports and paperwork checked by the deputy on duty before leaving. Day sheets will be completed and turned into the coordinator.

D.  CRITERIA FOR BECOMING A RESERVE DEPUTY/AUXILIARY:

1. Submit a fully completed department application.

2. Pass entrance examination

3. Pass a background check with no Felony Class I or Class II Misdemeanors, convections, and/or active restraining orders. Class III Misdemeanors and petty offence convictions will be considered on a case – by - case basis. Reserves must also have an acceptable drivers' history.

4. Take part in an interview or oral board process with at least one Supervisor, Corporal or above.

5. Cannot hold a Reserve commission if fully commissioned by another law enforcement agency

6. Reserve Deputy will be given a copy if the Policy and Procedures to read and sign and by doing so agree to the terms stated.

7. Valid Colorado Drivers license and clean driving history.

E.  TRAINING REQUIREMENTS:

1.  Required to have current certification in Pressure point Control Tactics (PPCT), firearms, First Aid and CPR.

2.  Reserves will be supplied with ammo for the qualification course. Failure to qualify in three rounds will result in remedial training and/or suspension by the Sheriff or coordinator; the department will provide duty ammunition.

3.  Pressure Point Control Tactics (PPCT) training will be kept current by the Reserve. It is the responsibility of the Reserve to provide all training records and certification to the Coordinator/Training Officer.

4.  A full FTO program will be available for P.O.S.T. certified reserves that want to be active officers and work on the road. A written request will be submitted to the Coordinator for approval. Approval is dependent upon FTO officer's availability. To participate in Field Officer Training, additional time will be required on a regular basis.

5.  Reserves shall have complete generalized training in overall policy and procedures. Specific training requirements shall be met by Daily Observation Reports (DOR) for transports, surveillance, traffic control and special events security.

6.  Yearly reviews will be made by the Coordinator and submitted in writing.

*Note:* At the discretion of the Sheriff, compensation at an hourly rate may be paid to a Reserve for duties specifically performed because of reduced staff to transport inmates for the jail. Compensation may also be paid to a Reserve who performs certain special duty when the Sheriff's Office receives funding for such special duty (i. e. Forest Service, School Security).

To receive such compensation, a Reserve will be classified as a temporary employee only for jail transport duties or certain special duty and will not be eligible for county benefits.

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 05-25-2011 | *Approval*: | *Number:* 340 |
|---|---|---|
| *Subject*:  **MASTER PATROL DEPUTY** | | |
| *Reference:* | | *Standard:* |
| *Chapter:*  **III** | *Reevaluation Date:* | *No. Pages 1* |

I. **PURPOSE:** The purpose of this policy is to establish guidelines for obtaining and maintaining the status of Master Patrol Deputy.

II. **DEFINITIONS: N/A**

III. **POLICY:** The Park County Sheriff's Office recognizes the talents and dedication of our professional Deputies. The Sheriff wishes to recognize those who go beyond that which is required.

IV. **PROCEDURE:**

A. Eligibility Requirements

1. Minimum ten (10) years experience as a deputy either with Park County Sheriff's Office or with another full time police service agency as determined at the time of hiring by the Sheriff.

2. Obtain last 3 consecutive annual employee evaluations with a *positive* rating.

3. POST certification, including good physical condition.

4. The Sheriff may remove the status of Master Patrol Deputy from any Deputy for cause, for any length of time.

5. If the Sheriff removes the status of Master Deputy for cause, the disqualification period shall begin on the date of disqualification for that incident(s).

6. At the expiration of the disqualification period, the Deputy may re-apply for Master Patrol Deputy status under the current Master Patrol Deputy requirements. (The 3 Consecutive positive evaluation requirements shall be waived for re-instatement purposes only.)

7. No Deputy may re-apply for Master Deputy status if the current year evaluation contains any rating below "Fully Successful".

# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date:* 10-12-2011 | *Approval*: | | *Number:* 341 |
|---|---|---|---|
| *Subject:* **SOCIAL MEDIA POLICY** | | | |
| *Reference:* | | *Standard:* | |
| *Chapter:* **III** | | *Reevaluation Date:* | *No. Pages:* 5 |

**I.   PURPOSE**:

The Park County Sheriff's Office endorses the secure use of social media to enhance communication, collaboration, and information exchange; streamline processes; and foster productivity. This policy establishes this agency's position on the utility and management of social media and provides guidance on its management, administration, and oversight.

This policy is not meant to address one particular form of social media, rather social media in general, as advances in technology will occur and new tools will emerge.

**II.   POLICY**:

Social media provides a new and potentially valuable means of assisting the agency and its personnel in meeting community outreach, problem-solving, investigative, crime prevention, and related objectives. This policy identifies potential uses that may be explored or expanded upon as deemed reasonable by command and supervisory personnel. The agency also recognizes the role that these tools play in the personal lives of some of the agency's personnel. The personal use of social media can have bearing on personnel in their official capacity. As such, this policy provides information of a precautionary nature as well as prohibitions on the use of social media by the agency's personnel.

**III. DEFINITIONS**:

*BLOG:* A self-published diary or commentary on a particular topic that may allow visitors to post responses, reactions, or comments. The term is short for "Web log."

*PAGE:* The specific portion of a social media website where content is displayed, and managed by an individual or individuals with administrator rights.

*POST*: Content an individual shares on a social media site or the act of publishing content on a site.

*PROFILE*: Information that a user provides about himself or herself on a social networking site.

*SOCIAL MEDIA*: A category of Internet-based resources that integrate user-generated content and user participation. This includes, but is not limited to, social networking sites (Facebook, MySpace), microblogging sites (Twitter, Nixle), photo- and video-sharing sites (Flickr, YouTube), wikis (Wikipedia), blogs, and news sites (Digg, Reddit).

Defendants' Motion to Dismiss, Exhibit A

_SOCIAL NETWORKS_: Online platforms where users can create profiles, share information, and socialize with others using a range of technologies.

_SPEECH_: Expression or communication of thoughts or opinions in spoken words, in writing, by expressive conduct, symbolism, photographs, videotape, or related forms of communication.

_Web 2.0_: The second generation of the World Wide Web focused on shareable, user-generated content, rather than static web pages.  Some use this term interchangeably with social media.

_Wiki_: Web page(s) that can be edited collaboratively.

**IV. PROCEDURE**:
   **ON-THE-JOB USE**
   A.  Agency-Sanctioned Presence
      1.  Determine strategy
         a.  Where possible, each social media page shall include an introductory statement that clearly specifies the purpose and scope of the agency's presence on the website.
         b.  Where possible, the page(s) should link to the agency's official website.
         c.  Social media page(s) shall be designed for the target audience(s) such as youth or potential police recruits.
      2.  Procedures
         a.  All agency social media sites or pages shall be approved by the Sheriff and Undersheriff and shall be administered by their designee.
         b.  Where possible, social media pages shall clearly indicate they are maintained by the agency and shall have the agency's contact information prominently displayed.
         c.  Social media content shall adhere to applicable laws, regulations, and policies, including all information technology and records management policies.
            (1)  Content is subject to public records laws. Relevant records retention schedules apply to social media content.
            (2)  Content must be managed, stored, and retrieved to comply with open records laws and e-discovery laws and policies.
         d.  Where possible, social media pages should state that the opinions expressed by visitors to the page(s) do not reflect the opinions of the agency.
            (1)  Pages shall clearly indicate that posted comments will be monitored and that the agency reserves the right to remove obscenities, off-topic comments, and personal attacks.
            (2)  Pages shall clearly indicate that any content posted or submitted for posting is subject to public disclosure.

      3.  Agency-Sanctioned Use
         a.  Agency personnel representing the agency via social media outlets shall do the following:

         (1) Conduct themselves at all times as representatives of the agency and, accordingly, shall adhere to all agency standards of conduct and observe conventionally accepted protocols and proper decorum.

         (2) Identify themselves as a member of the agency.

         (3) Not make statements about the guilt or innocence of any suspect or arrestee, or comments concerning pending prosecutions, nor post, transmit, or otherwise disseminate confidential information, including photographs or videos, related to the agency's training, activities, or work-related assignments without express written permission.

         (4) Not conduct political activities or private business.

    b. The use of agency computers by agency personnel to access social media is prohibited without authorization.

    c. Agency personnel's use of personally owned devices to manage the agency's social media activities or in the course of official duties is prohibited without express written permission.

    d. Employees shall observe and abide by all copyright, trademark, and service mark restrictions in posting materials to electronic media.

B. Potential Uses

    1. Social media is a valuable investigative tool when seeking evidence or information about

        a. missing persons;

        b. wanted persons;

        c. gang participation;

        d. crimes perpetrated online (i.e., cyberbullying, cyberstalking); and

        e. photos or videos of a crime posted by a participant or observer.

    2. Social media can be used for community outreach and engagement by

        a. providing crime prevention tips;

        b. offering online-reporting opportunities;

        c. sharing crime maps and data; and

        d. soliciting tips about unsolved crimes (i.e., Crimestoppers, text-a-tip).

    3. Social media can be used to make time-sensitive notifications related to

        a. road closures,

        b. special events,

        c. weather emergencies, and

        d. missing or endangered persons.

    4. Persons seeking employment and volunteer positions use the Internet to search for opportunities, and social media can be a valuable recruitment mechanism.

    5. This agency has an obligation to include Internet-based content when conducting background investigations of job candidates.

    6. Searches should be conducted by a nondecision maker. Information pertaining to protected classes shall be filtered out prior to sharing any information found online with decision makers.

    7. Persons authorized to search Internet-based content should be deemed as holding a sensitive position.

8. Search methods shall not involve techniques that are a violation of existing law.
9. Vetting techniques shall be applied uniformly to all candidates.
10. Every effort must be made to validate Internet-based information considered during the hiring process.

## V. PERSONAL USE

A. Precautions and Prohibitions

Barring state law or binding employment contracts to the contrary, agency personnel shall abide by the following when using social media.

1. Agency personnel are free to express themselves as private citizens on social media sites to the degree that their speech does not impair working relationships of this agency for which loyalty and confidentiality are important, impede the performance of duties, impair discipline and harmony among coworkers, or negatively affect the public perception of the agency.

2. As public employees, agency personnel are cautioned that speech on- or off-duty, made pursuant to their official duties—that is, that owes its existence to the employee's professional duties and responsibilities—is not protected speech under the First Amendment and may form the basis for discipline if deemed detrimental to the agency. Agency personnel should assume that their speech and related activity on social media sites will reflect upon their office and this agency.

3. Agency personnel shall not post, transmit, or otherwise disseminate any information to which they have access as a result of their employment without written permission from the chief executive or his or her designee.

4. For safety and security reasons, agency personnel are cautioned not to disclose their employment with this agency nor shall they post information pertaining to any other member of the agency without their permission. As such, agency personnel are cautioned not to do the following:
   a. Display agency logos, uniforms, or similar identifying items on personal web pages.
   b. Post personal photographs or provide similar means of personal recognition that may cause them to be identified as a police officer of this agency. Officers who are, or who may reasonably be expected to work in undercover operations, shall not post any form of visual or personal identification.

5. When using social media, agency personnel should be mindful that their speech becomes part of the worldwide electronic domain. Therefore, adherence to the agency's code of conduct is required in the personal use of social media. In particular, agency personnel are prohibited from the following:

   a. Speech containing obscene or sexually explicit language, images, or acts and statements or other forms of speech that ridicule, malign, disparage, or otherwise express bias against any race, any religion, or any protected class of individuals.

Defendants' Motion to Dismiss, Exhibit A

      b.   Speech involving themselves or other agency personnel reflecting behavior that would reasonably be considered reckless or irresponsible.

6.   Engaging in prohibited speech noted herein, may provide grounds for undermining or impeaching an officer's testimony in criminal proceedings. Agency personnel thus sanctioned are subject to discipline up to and including termination of office.

7.   Agency personnel may not divulge information gained by reason of their authority; make any statements, speeches, appearances, and endorsements; or publish materials that could reasonably be considered to represent the views or positions of this agency without express authorization.

8.   Agency personnel should be aware that they may be subject to civil litigation for
      a.   publishing or posting false information that harms the reputation of another person, group, or organization (defamation);
      b.   publishing or posting private facts and personal information about someone without their permission that has not been previously revealed to the public, is not of legitimate public concern, and would be offensive to a reasonable person;
      c.   using someone else's name, likeness, or other personal attributes without that person's permission for an exploitative purpose; or
      d.   publishing the creative work of another, trademarks, or certain confidential business information without the permission of the owner.

9.   Agency personnel should be aware that privacy settings and social media sites are constantly in flux, and they should never assume that personal information posted on such sites is protected.

10.   Agency personnel should expect that any information created, transmitted, downloaded, exchanged, or discussed in a public online forum may be accessed by the agency at any time without prior notice.

11.  Reporting violations—Any employee becoming aware of or having knowledge of a posting or of any website or web page in violation of the provision of this policy shall notify his or her supervisor immediately for follow-up action.