IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00487-CBS

WELLES TONJES,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS FOR PARK COUNTY, in its official capacity;
THE PARK COUNTY SHERIFF'S OFFICE;
FRED WEGENER, in his individual capacity; and
MARK HANCOCK, in his individual capacity,

    Defendants.

_____

## SCHEDULING ORDER
_____

### 1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling Conference in this matter was held on May 15, 2017.  Adam Ray of the law firm of Benezra & Culver, P.C., Colorado Plaza Tower #1, 633 17th Street, Suite 2610, Denver, CO  80202, (303) 716-0254, appeared for the Plaintiff, Wells Tonjes.  Timothy Schimberg of the law firm of Fowler Schimberg Flanagan McLetchie, P.C., 1640 Grant Street, #150, Denver, CO 80203, (303) 298-8603, appeared for the Defendants.

### 2.  STATEMENT OF JURISDICTION

Jurisdiction in this court is proper because Plaintiff Tonjes is alleging violations of his rights under 42 U.S.C § 1983. Jurisdiction over the state law claims is made pursuant to 28 U.S.C § 1967. A substantial part of the events or omissions giving rise to Sargent Tonjes' claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

### 3. STATEMENT OF CLAIMS AND DEFENSES

a.  *Sargent Wells Tonjes*

Plaintiff Welles Tonjes is a law enforcement officer with more than four decades of experience. From June of 1972 until January of 2008, Mr. Tonjes served with distinction at the Denver Police Department. In November of 2009, Mr. Tonjes was hired by the Park County to work in the Park County Sheriff's Office. He worked there until his constructive discharge on February 29, 2016, as a Detention Deputy, Patrol Deputy, Patrol Corporal, Patrol/Investigation Sargent, and most recently as a Patrol Senior Sargent.

During his entire tenure with the Office, Mr. Tonjes served with distinction. In the two formal performance reviews he received from the Office, Sargent. Tonjes received overall ratings of "exceptional." He received approximately 22 awards, including a number of Letters of Appreciation, Letters of Gratitude, and a Special Citation for Bravery.

When Sargent. Tonjes began his employment with the Sheriff's Office, he received a copy of the Park County Sheriff's Office Policy and Procedures Manual ("the Manual"). The Manual promises Sheriff's Office employees that it will follow a specific

2

disciplinary process and informs them of the permitted ranges of discipline for various infractions. The Manual also provides for various due process guarantees, including the Office's promise to provide employees with pre-deprivation due process, including notice of its intent to discipline and an opportunity for the employee to respond to allegations against him or her, as well as post-deprivation process, including a detailed appeals process within the Sheriff's Office.

In February of 2016, the Sheriff's Office assisted a mortgage bank serve a civil eviction notice on a Park County citizen named Martin Wirth. Mr. Wirth was well known within the Park County Sheriff's Office to be anti-government, anti-police, and also armed, dangerous, and violent. Sargent Tonjes met with Sheriff Fred Wegener, Capt. Hancock, and others to express that Sheriff's Department Officers should not attempt to enter the Wirth home during the eviction proceeding. Based on these discussions, Sargent Tonjes had the understanding that if Mr. Wirth refused to come to the door or refused to leave his home, the Officers were to leave the premises.

On the morning of February 24, 2016, Undersheriff Gore and Sargent. Tonjes learned that Sheriff Wegener and Capt. Hancock had chosen a different strategy. The Sheriff and Hancock decided to bring several members of the SWAT team with them to the Wirth premises. As a result of this strategy, a shoot-out ensued when the SWAT team attempted to enter the house and Corporal Nate Carrigan and Mr. Wirth were shot and killed. Two other deputies suffered gunshot wounds but did not lose their lives.

After this unfortunate event, Plaintiff Tonjes and Undersheriff Gore discussed the events at the Wirth residence. Both stated that the deaths of Cpl. Carrigan and Mr.

3

Wirth, and the serious injuries to the two other deputies, were caused by the inappropriate and reckless orders of Sheriff Wegener and Capt. Hancock. Defendants Hancock and Wegener knew or suspected that Sgt. Tonjes and Undersheriff Gore had expressed concern about their handling of the Wirth situation. In fact, while Plaintiff Tonjes and Undersheriff Gore were visiting with Defendant Hancock on the morning of February 26, 2016, the Wirth situation was discussed and Undersheriff Gore told Hancock that he held Sheriff Wegener fully responsible for the death and injuries that resulted. In response, Capt. Hancock became angry, appeared to choke, and came up out of his chair aggressively. Saregent Tonjes and Undersheriff Gore later learned that Hancock had been involved in giving the order to enter the Wirth residence.

Soon thereafter, Capt. Hancock informed Sheriff Wegener of his meeting with Sargent Tonjes and Undersheriff Gore. At that time, Wegener and Hancock decided to discipline or even fire Plaintiff Tonjes and Undersheriff Gore because of their opinions regarding how the Wirth situation was handled. On February 29th, when Argent Tonjes arrived at work, Sheriff Wegener informed Sargent Tonjes that he had decided to demote him three levels from a Senior Sargent to a Patrol Officer, resulting in a significant reduction in pay.

Sheriff Wegener told Sargent Tonjes that the decision to demote him was made because Sargent Tonjes had supposedly "yelled" at Cpl. Carrigan and Master Deputy Edward Goodman. Wegener did not discuss these allegations with Sargent Tonjes before making the decision to demote him. The allegations are false, Plaintiff Tonjes never once yelled at Corporal Carrigan. While he spoke to Master Deputy Goodman in

4

a stern fashion, on one occasion, his tone was perfectly appropriate given that he was issuing Goodman a reprimand for his own improper conduct. During their conversation, Sargent Tonjes told Sheriff Wegener that the allegations were unfounded. Sheriff Wegener ignored Sgt. Tonjes' rebuttal.

If valid, which it was not, the alleged misconduct that formed the basis of Sargent Tonjes' three-level demotion constituted a Level III violation under the Manual. A three level demotion is not permissible discipline for such a violation under the Manual,

Before Defendant Wegener made the decision to demote Sargent Tonjes, he did not inform Sargent Tonjes that he was considering any discipline against him, did not inform Sargent Tonjes of the accusations that had been made against him, and did not give him an opportunity to respond. Moreover, he did not follow the procedures regarding the investigation of complaints contained in the Manuel. Moreover, Sargent Tonjes was not afforded an opportunity to appeal the demotion decision to the Sheriff or the BOCC.

After considering his three level demotion and the hostile and inappropriate conduct of Defendants Wegener and Hancock, Sargent Tonjes concluded that his working conditions had become intolerable and that it was no longer reasonable for him to continue working for the Sheriff's Office and involuntarily resigned his employment.

After Sgt. Tonjes was constructively discharged, Sheriff Wegener made false and stigmatizing comments about Sgt. Tonjes designed to scapegoat Sgt. Tonjes and deflect blame away from himself.

    b.    *Defendants, The Board of County Commissioners of the County of Park; The Park County Sheriff's Office; Fred Wegener; and, Mark Hancock*

In February, 2016, Fred Wegener was the elected Sheriff of Park County. Mark Hancock served in the Sheriff's Office as Captain. Pursuant to a Court Order, a Notice of Eviction was properly placed at a residence occupied by Martin Wirth. Pursuant to the Order and proper notice, plans were made to enforce the Eviction Order. In effectuating the Court Order, on February 24, 2016, Mr. Wirth, without knowledge of law enforcement involved, armed himself, and upon entry of Sheriff's Office personnel, fired his weapon(s) at Sheriff's personnel. Wirth's criminal acts of violence resulted in the tragic death of Deputy Nate Carrigan, and injuries sustained by Mark Hancock. All Defendants recognize the tragic loss of Nate Carrigan while he was on duty and engaged in the performance of his responsibilities as a Deputy of the Park County Sheriff's Office.

Plaintiff served as a patrol sergeant with the Park County Sheriff's Office in February, 2016 and had no participation in the eviction of Mr. Wirth. Mr. Tonjes was hired to work at the Park County Sheriff's Office in November, 2009. He resigned his position on February 29, 2016. Following the death of their fellow officer, several deputies expressed a desire to honor him and to participate in an appropriate and dignified transfer of his body. Plaintiff either intervened and rejected requests, including officers who were willing to do so on their own time, or presented unreasonable obstacles to their genuine and heartfelt desire to honor Corporal Carrigan. As a result of Mr. Tonjes' treatment of officers under his command, Sheriff Fred Wegener made the decision to demote Sgt. Tonjes. During and following Sheriff Wegener's explanation of the demotion decision, Mr. Tonjes voluntarily resigned from the Park County Sheriff's

Office. He resigned, cleaned his office and left, all in the same day and within a very short period of time.

The Defendants deny the vast majority of the allegations, statements and conclusions set forth in the Complaint. Defendants have filed a Motion to Dismiss to reflect their legal position, in essence, that Plaintiff has failed to state a cognizable claim for relief. By way of example, but not limited thereto, the Defendants have stated their position that Mr. Tonjes did not possess a due process property interest in either continued employment or his rank of sergeant, at the Park County Sheriff's Office. Colorado Statute unequivocally vests county sheriffs, such as Fred Wegener and his office, with the final decision making authority over the employment personnel in the office. C.R.S. §30-10-506. Further, Defendants state that Mr. Tonjes at all times was an employee at will. He had authority to resign, as he did. His employment could be terminated or qualified by the Sheriff. This elemental principal was set forth in the Park County Sheriff's Office Manual as well as the Park County Employee Handbook. Further, Defendants Wegener and Hancock are clothed with qualified immunity and the Plaintiff cannot overcome the "heavy two-part burden" he must meet. These Defendants deny any constitutional or statutory right was violated in the discussion of demotion and/or that the right that was allegedly violated was clearly established at the time. To the contrary. Defendants further submit that Mr. Tonjes was not engaged in any activity that triggered the protection of the First Amendment to include the lack of a plausible "retaliatory" motive. Again, Defendants Wegener and Hancock are clothed with qualified immunity as to Plaintiff's claim in this regard. Defendants deny that Plaintiff possessed

a liberty interest in his name and reputation that was in any way infringed. Sheriff Wegener shared with Mr. Tonjes that the decision to demote was based upon how he handled subordinate deputies following the death of their brother in service. Such a statement was accurate and was not defamatory. It did not stigmatize. Defendant Hancock and the Park County Board of County Commissioners had no participation in the decision to demote Mr. Tonjes, nor the discussion concerning the demotion with him.

      Defendants deny there was an employment contract that could be breached as Mr. Tonjes served at the will of the Park County Sheriff and his office. Defendants reiterate the same defense as it relates to Plaintiff's claim of promissory estoppel against the BOCC and the Sheriff's office. Similarly, Defendants Wegener and Hancock deny any interference with Mr. Tonjes' alleged "contract" for the above-stated reasons as well as the failure to plead a specific factual basis to support the required elements to support such a claim. Further, Captain Hancock asserts that he was not a party to the decision to demote Mr. Tonjes, nor did he participate in the discussion regarding the demotion with Mr. Tonjes. Sheriff Wegener rejects the defamation claim or that he made any false or stigmatizing comments concerning Mr. Tonjes. The statement made to Mr. Tonjes and anyone else consisted of the manner in which Mr. Tonjes handled his deputies following the death of their service brother, Nate Carrigan. Such a statement was true and constitutionally protected. Lastly, the BOCC takes the position that it is not a proper defendant because, pursuant to statute, the BOCC does not have the power to make or review employment decisions of the County Sheriff. The BOCC also points out

that there are no allegations that it had any involvement in the events forming the basis of Plaintiff's allegations. Further, the Complaint fails to identify any policy or custom of either the BOCC or the Sheriff's Office that was the motivating force that caused the Plaintiff any injury. Captain Hancock states that due to his lack of personal participation in any of the alleged events, he is an improper party and has no personal liability under 42 U.S.C. §1983.

## 4.  UNDISPUTED FACTS

1. Defendant Sheriff Fred Wegener was the Sheriff for Park County Sheriff's Office at all relevant times.  Defendant Sheriff Fred Wegener resides within the District of Colorado.

2. Plaintiff Welles Tonjes was employed at the Park County Sheriff's Office for 8 years and is a resident of Park County, Colorado.

## 5.  COMPUTATION OF DAMAGES

Plaintiff Welles Tonjes seeks all damages requested in their Complaint and Jury Demand.

With respect to his economic damages, Sargent Tonjes was making approximately $44,000 a year, including benefits at the time of his termination.  Despite his best efforts, Sargent Tonjes has been unable to obtain replacement employment. To date, Sargent Tonjes estimates that he has lost approximately $50,000 in salary, plus lost benefits.  Sargent Tonjes intends to hire an expert economist to more precisely calculate his economic losses.

Sargent Tonjes also seeks compensatory and punitive damages. Those damages defy precise calculation. Sargent Tonjes will ask the jury to award an appropriate amount of those damages.

Based on past experience, Plaintiffs' counsel believes that Sargent Tonjes will incur more than $350,000 in attorney's fees and costs if this matter is litigated through trial.

### 6. REPORT OF PRE-CONFERENCE DISCOVERY AND MEETING UNDER FED.R.Civ.P. 26(f).

a. The Parties conducted the Rule 26(f) meeting on April 28, 2017 at 3:30 p.m..

b. Adam W. Ray participated in the Rule 26(f) conference on behalf of the Plaintiff and Timothy Schimberg participated in the conference on behalf of the Defendants.

c. The Parties will make their Rule 26(a)(1) disclosures no later than May 8, 2017.

d. The Parties do not propose any change in the requirement of disclosure under Fed.R.Civ.P. 26(a)(1).

e. The Parties have not reached any agreements to conduct informal discovery, but will continue to consider any appropriate options.

f. Counsel does not anticipate that their claims and defenses will involve extensive electronically stored information ("ESI") or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form. The Parties have agreed that electronically stored document information will be

produced in .pdf or paper format. To the extent any dispute may arise concerning disclosure of ESI, the Parties agree to adhere to the Federal Rules of Civil Procedure, local rules, applicable case law, and they will attempt to resolve any such dispute with reference to <u>The Sedona Principles: Second Edition; Best Practices, Recommendations & Principles for Addressing Electronic Document Production (The Sedona Conference, June 2007)</u>.

### 7.   CONSENT

All Parties have consented to the exercise of jurisdiction of a Magistrate Judge.

### 8.   DISCOVERY LIMITATIONS

a.   Each party may depose: (1) any other party; (2) any expert witness identified by the other party; and (3) no more than ten (10) additional persons.

b.   The Parties do not propose any limitations on the length of depositions beyond those contained in the Federal Rules.

c.   Each side will be limited to 25 interrogatories.

d.   The Parties propose that there be no limitations on the number of requests for production of documents and that each side shall be limited to 25 requests for admission. The Parties propose there be no limit on requests for admission regarding the authenticity of documents.

e.   The Parties will file a Motion for Protective Order to protect the confidentiality of documents and information exchanged during discovery.

11

## 9. CASE PLAN AND SCHEDULE

a. The filing of amended and supplemental pleadings will be made pursuant to Fed. R. Civ. P. 15.

b. Discovery cut-off is November 17, 2017 for fact witnesses and December 18, 2017 for expert witnesses.

c. Dispositive Motion Deadline: January 17, 2018.

d. Expert witness disclosures:

(1) Plaintiff Welles Tonjes will designate an expert economist to calculate his economic damages. Plaintiff may also designate medical/psychological experts to testify regarding the existence of emotional distress as a result of their termination.

Defendants may designate rebuttal expert witnesses to Plaintiff's disclosed experts:

(2) The Parties will be limited to three expert witnesses per party.

(3) The Party bearing the burden of persuasion on the issues for which expert opinion is to be offered shall designate the expert and provide opposing counsel with all information specified in Fed.R.Civ.P. 26(a)(2) on or before October 2, 2017.

(4) The Parties shall designate all contradicting experts and provide opposing counsel with all information specified in Fed.R.Civ.P. 26(a)(2) on or before November 6, 2017.

(5) Notwithstanding the provisions of Fed.R.Civ.P. 26(a)(2)(B) no exceptions to the requirements of this rule will be allowed be allowed by the stipulation of the Parties unless the stipulation is approved is by the Court.

e. Deposition Schedule.

| Deponent | Date of Deposition | Time of deposition | Expected Length |
|---|---|---|---|
| Fred Wegener | | | 7 hours |
| Mark Hancock | | | 7 hours |
| Edward Goodman | | | 3.5 hours |
| Monte Gore | | | 7 hours |
| Welles Tonjes | | | 7 hours |
| Other individuals as may be disclosed during the course of the exchange of information or discovery in this matter. | | | |

f. Interrogatory Schedule: Deadline for serving Interrogatories will be October 13, 2017.

g. Schedule for Request for Production of Documents: Deadline for serving Requests for Production of Documents will be October 13, 2017.

## 10. SCHEDULING ISSUES

The Parties were able to reach an agreement regarding all discovery and scheduling issues. Parties are conferring regarding the depositions of Plaintiff Tonjes and Monte Gore in the civil action related to Mr. Carrigan's death to set limits with respect to the subject matter of those depositions in an effort to prevent duplicative testimony.

**11. TRIAL DATE AND LENGTH OF TRIAL WILL BE SET AT THE PRE-TRIAL CONFERENCE TO BE SCHEDULED AFTER COMPLETION OF DISCOVERY.**

The Parties anticipate that the jury trial in this action will last five days.

**12. AMENDMENTS TO SCHEDULING ORDER**

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this \_\_\_\_ day of _____, 2017.

BY THE COURT:

_____
Magistrate Judge Craig B. Shaffer

SCHEDULING ORDER REVIEWED:

Counsel

| *s/ Adam W. Ray* | *s/ Timothy Schimberg* |
|---|---|
| _____ | _____ |
| John A. Culver | Timothy Schimberg |
| Seth J. Benezra | Fowler Schimberg Flanagan & McLetchie, P.C. |
| Adam W. Ray | |
| BENEZRA & CULVER, P.C. | 1640 Grant Street |
| Colorado Plaza Tower #1 | #150 |
| 633 17th Street | Denver, CO  80204 |
| Suite 1310 | 303-298-8603 |
| Denver, CO  80202 | T_Schimberg@fsf-law.com |
| (303) 716-0254 | Attorney for Defendants |
| jaculver@bc-law.com | |
| sjbenezra@bc-law.com | |
| awray@bc-law.com | |
| Attorneys for Plaintiff | |

14