## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:17-cv-00487-CBS**

**WELLES TONJES,**

   **Plaintiff,**

**v.**

**THE PARK COUNTY SHERIFF'S OFFICE;**
**FRED WEGENER, in his individual capacity; and**
**MARK HANCOCK, in his individual capacity,**

   **Defendants.**

_____

## PLAINTIFF WELLES TONJES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12(b)(1) and 12(b)(6)

_____

Plaintiff Welles Tonjes, by and through his counsel, the law firm of Benezra & Culver, P.C.,  asks this Court to deny Defendants' Motion for the following reasons:

### INTRODUCTION

In their Motion, Defendants misstate both the applicable law and Plaintiff Tonjes' allegations.[1]  For example, they seek dismissal of Plaintiff Tonjes' Due Process Property Interest claim on the ground that Colorado law permits a Sheriff to *terminate* Deputies at-will, even though Plaintiff Tonjes' claim is predicated upon Defendants' promises not

---

[1]   Contrary to their Local Rule 7.1(A) Certification, at no time did Defendants confer with Plaintiff's counsel regarding this Motion other than to request counsel's position on a Motion for Extension of Time.

to *demote* employees without specific cause.[2]  Moreover, Defendants ask this Court to dismiss Plaintiff Tonjes' Freedom of Association claim on the wholly irrelevant ground that he did not personally speak out on a matter of public concern.  Their Motion ignores Plaintiff's allegations that he was demoted because he was *associated* with an officer who spoke out on a matter of public concern.  With respect to Plaintiff's Due Process Liberty Interest claim, Defendants argue that Defendant Wegener's defamatory statements were not made in the course of Plaintiff Tonjes' demotion and constructive discharge because the statements were made two days after his demotion, even though the Tenth Circuit has held to the contrary.  For these reasons, and others articulated herein, Defendants' Motion should be denied.

### ARGUMENT

**A.**  <u>**Legal Standard.**</u>

In ruling on Defendants' Motion to Dismiss, this Court must draw all reasonable inferences in favor of Plaintiff Tonjes, construe his allegations in the light most favorable to him, and accept as true all well-pleaded facts and allegations.  *See Tri-Crown, Inc. v. American Federal Savings & Loan Assoc.*, 908 F.2d 578, 582 (10th Cir. 1990); *Donaldson v. American Banco Corp.*, 945 F. Supp. 1456 (D. Colo. 1996).  In *Bell-Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that to withstand a Rule 12(b)(6) Motion to Dismiss, a Complaint must contain enough allegations of fact, taken as true, to state

---

[2]  Prior to filing this Response, Plaintiff Tonjes filed his Notice of Partial Dismissal.  In that Notice, Plaintiff Tonjes dismissed Defendant Board of County Commissioners for Park County, as well as Plaintiff's Sixth Claim for Relief for Intentional Interference with Contract and Seventh Claim for Relief for Defamation.

a claim to relief that is "plausible" on its face.  Under that standard, a Plaintiff must merely "nudge [his] claims across the line from conceivable to plausible" in order to survive a Motion to Dismiss.  *Twombly*, 550 U.S. at 570.[3]

**B.**    **Plaintiff Tonjes Has Stated a Claim for Violation of a Due Process Property Interest.**

**1.**    **Plaintiff Tonjes' Complaint Properly Alleges That He Had a Property Interest in His Employment with Defendants.**

In their Motion, Defendants argue that because the Sheriff may *terminate* Sheriff's Deputies at-will under state law and its Policy and Procedure Manual ("the Manual", attached as Exhibit A[4]) that he was under no obligation to follow the office's mandatory procedures regarding the *discipline* and *demotion* of employees.  However, because Defendants' right to terminate at-will has no bearing on its right to discipline or demote inconsistent with the Manual, Defendants' Motion with respect to Plaintiff Tonjes' Due Process Property Interest claim should be denied.[5]

---

[3]   The Tenth Circuit has held that *Twombly* and *Iqbal* "do not establish a significantly heightened fact-pleading standard." *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).  Rather, "the nature and specificity of the allegations required to state a plausible claim will vary based upon context." *Khalik*, 671 F.3d at 1191.  Moreover, according to the Tenth Circuit, "there is no indication that the Supreme Court intended to return to the more stringent pre-Rule 8 pleading requirement." *Id.*  In that regard, the Court noted that the U.S. Supreme Court stated in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed 2d (2002), that "[a] requirement of greater specificity for a particular claim is a result that must be obtained by the process of amending the federal rules, and not by judicial interpretation." *Id.* at 1191.  The Tenth Circuit further observed that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed 2d 1081 (2007), which was decided a few weeks after *Twombly*, the Supreme Court held that: "[u]nder Rule 8, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Khalik*, 671 at 1191-1192 (*quoting Erickson*, 127 S.Ct. at 2197).

[4]   Exhibit A contains the Introduction and the entirety of the section entitled Personnel.  It does not include other sections  of the Manual, which do not pertain to the factual basis for Plaintiff Tonjes' Due Process Property Interest claim.

[5]   In its Motion, Defendants seek dismissal of Plaintiff Tonjes' claim on the ground that he failed to properly allege that he had had a property interest in his employment with Defendants.  It did not,

**a.    Plaintiff Tonjes' Complaint Alleges That He Had a Contractual and Promissory Right to Be Free From Discipline and Demotion Without Clearly Specified Cause**.

In the following allegations, Plaintiff Tonjes' Complaint alleges with specificity that

Defendants entered into a contract or legally enforceable promise that he would not be

demoted without specified cause and pre-deprivation process:

13.    When Sgt. Tonjes began his employment with the Sheriff's Office, he received a copy of the Park County Sheriff's Office Policy and Procedures Manual ("the Manual").[6]   From time to time, he received updates to that Manual.  During his employment, he periodically reviewed this Manual.

14.    In its Introduction, the Sheriff's Office Manual provides that "This Manual has been designed to provide the policies and procedures required for uniformity of service to our community and to provide adequate guidance to the personnel of the Sheriff's Office."    The Introduction further provides that "This document [the Manual] is published by the authority vested in Sheriff Fred Wegener, the Sheriff of Park County, by numerous Colorado state statutes and personnel, and the constitution of the State of Colorado."[7]

15.    Sheriff's Office Policies Series 300-341 pertain to "Personnel." Among other things, that section describes the policies and procedures regarding the discipline, demotion, and termination of Sheriff's Office employees.[8]

16.    Policy number 320 is entitled "Corrective and Disciplinary Action."[9] In Section II of that Policy, the Sheriff's Office promised its employees that a "disciplinary demotion" may be taken under the following circumstances:

Reduced by one or more levels of rank.  Disciplinary demotion may be imposed when the accused employee willfully engages in misconduct

---

however, argue that his claim should be dismissed based on the failure to plead any other element of a Due Process Property Interest claim.
[6]   Ex. A, Manual.
[7]   *Id.,* Manual,  Introduction, p. 1
[8]   *Id.*, Manual, Personnel, §§ 300-341.
[9]   *Id.*, Manual, Policy #320.

or intentionally violates policy and procedure. Disciplinary demotion will only be authorized by the Sheriff.[10]

17.     In Section III of Policy 320, the Manual informs employees that:

> It is the policy of the Sheriff's Office to teach and correct the inappropriate behavior of the members through fair and consistent, disciplinary sanctions without regard to race, creed, color, sex, age, or national origin. This will be accomplished by conforming to the established due process requirements. Through a defined a formal process, the standards of the Sheriff's Office will be maintained.[11]

18.     In Section IV of Policy 320, the Manual promises Sheriff's Office employees that it will follow a specific disciplinary process and informs them of the permitted ranges of discipline for various infractions. The most serious offenses, Level I and Level II offenses, can result in all manner of discipline up through and including termination. Lower level disciplinary actions, known as Level III violations, for things such as "[courtesy] complaints of rudeness . . . ", do not provide for demotion or termination as a potential penalty. Instead, this section provides that "Level III Complaints may carry any of the following disciplinary actions, or any combination thereof: (A) letter of counseling (B) remedial training (C) Letter of Reprimand (D) probation." The Manual specifically provides that discipline for a Level III violation cannot be appealed.[12]

19.     Policy 320 of the Manual also provides for various due process guarantees, including the Office's promise to provide employees with pre-deprivation due process, including notice of its intent to discipline and an opportunity for the employee to respond to allegations against him or her, as well as post-deprivation process, including a detailed appeals process within the Sheriff's Office. [13]

**b.     Defendants' Promises Regarding Discipline and Demotion for Cause Created a Constitutionally Protected Property Interest in Plaintiff Tonjes' Job.**

Under long-standing Colorado law, promises and representations contained in an employment manual create an implied contract or enforceable promise. *See e.g. Continental Airlines, Inc. v. Kenan*, 731 P.2d 708 (Colo. 1987); *Churchey v. Adolf Coors*

---

[10]  *Id.*, Manual, Policy #320, p. 2, DISCIPLINARY DEMOTION.
[11]  *Id.*, Manual, Policy #320, p. 2, § III POLICY.
[12]  *Id.*, Manual, Policy #320, pp. 2-5, § IV PROCEDURE
[13]  *Id.*, Manual, Policy #320, § IV, pp. 2-5. *See also* Policy #318, pp. 1-3.

*Co.*, 759 P.2d 1336, 1348 (Colo. 1988).  An implied contract or legally enforceable promise under Colorado state law create a constitutionally protected property interest for federal due process purposes.  *See e.g. Bishop v. Wood*, 426 U.S. 341, 344 (1976) (constitutionally protected property interest can arise from an implied contract that gives the employee a legitimate expectation of continued employment); *Jones v. U. of Cent. Oklahoma*, 13 F.3d 361, 365 (10th Cir. 1993) (a property interest exists if a contract right can be established under state law); *Williams v. McKee*, 655 Fed. App'x 677, 686 (10th Cir. 2016) (an individual has a property interest in government employment if he has a "legitimate claim of entitlement" to continued employment that is grounded in an "independent source such as state law"); *Nicastle v. Adams Cty. Sheriff's Office*, 2011 WL 1598062, * 4 (D. Colo. 2011) ("[I]f state statutes or regulations place substantive restrictions on a government actors ability to make personnel decisions, then the employee has a protected property interest", *quoting Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1988)); *Hamm v. Scott*, 426 F. Supp. 950, 960 (D. Colo. 1977) (property interest may be created by promissory estoppel).

Based on this well established precedent, Plaintiff Tonjes' Complaint states a claim for violation of his Due Process Property Interest.  As discussed, his Complaint alleges that the Sheriff's Manual, in a section entitled "Personnel," promised employees that they could only be disciplined or demoted for specifically articulated cause. Complaint, ¶¶ 16, 18.  *See also* Argument, § B(1)(a), *supra*.  Defendants' Manual provides that Level III Complaints for the low-level misconduct with which Plaintiff Tonjes was accused only permit a letter of counseling, remedial training, letter of

reprimand, probation, or any combination thereof, as discipline.  Complaint, ¶¶ 16,18.[14]

Only when a Sheriff's employee "willfully engages in misconduct or intentionally violates

policy and procedure" and/or commits a Level I or II offense is demotion permitted as a

disciplinary penalty.  *Id.*  Defendants' Manual also promises that certain due process

procedures will be followed when imposing discipline including demotion.  *Id.*, ¶¶ 17, 19.

As discussed, under clearly established U.S. Supreme Court and Tenth Circuit

precedent, these contractual and promissory guarantees constitute a property interest

for due process purposes.

Defendants' reliance on C.R.S. § 30-10-506, *Williams,* 655 Fed. App'x. at 686-87,

and *Seeley v. Bd. of Cty. Comm'rs*, 791 P.2d 696, 700 (Colo. 1990) (*en banc*) is

misplaced.  First, at most, Defendants' authorities stand for the narrow proposition that a

Sheriff may *terminate* a Sheriff's Deputy "at-will" regardless of whether there are

promises in an employee manual to the contrary.[15]  C.R.S. § 30-10-506, on its face,

only references at-will termination and says nothing about a Sheriff's authority to

---

[14]   Plaintiff Tonjes' Complaint alleges that he was terminated inconsistent with Defendants' Manual as follows:

> 41.  If valid, which it was not, the alleged misconduct that formed the basis of Sgt. Tonjes' three-level demotion constituted a Level III violation under the Offices' Policy Manual.  Under the Office Manual, a three level demotion is not permissible discipline for such a violation.
>
> 42.  Before Defendant Wegener made the decision to demote Sgt. Tonjes three levels, he did not inform Sgt. Tonjes that he was considering any discipline against him, did not inform Sgt. Tonjes of any of the accusations that had been made against him, and did not give him an opportunity to respond.  Moreover, he did not follow the procedures regarding the investigation of complaints contained in Office Policies 318-320.  Moreover, after he was informed that he had been demoted three levels, Sgt. Tonjes was not afforded an opportunity to appeal the demotion decision to the Sheriff or the BOCC. Under the Office Manual, an appeal to the Sheriff is the final level of appeal.

[15]   While it may permit termination at-will, C.R.S. § 30-10-506 does not permit termination without pre-termination due process.  Specifically, that statutory provision provides that "Before revoking an appointment of a deputy, the Sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the Sheriff."  Defendants' Manual also requires that such process be provided to Sheriff's Deputies.  Complaint, ¶¶ 17, 19.

discipline short of firing or to demote.   Similarly, *Williams and Seeley* only address termination procedures, not discipline or demotion procedures.   In contrast, Plaintiff Tonjes' Complaint does not allege that he was improperly *terminated* without cause.   In his Complaint, Plaintiff Tonjes alleges that he was *demoted* three levels in contravention of Defendants' contractual and promissory guarantee that such demotions will only be made for the cause specified in the Manual.   Argument, § B(1)(a), *supra*.   In Colorado, an enforceable contract relating to personnel rights other than termination may be created by personnel policies despite a disclaimer that employment may be terminated "at-will."   *See Calhoun v. Ball Corp.*, 866 F. Supp. 473, 478 (D. Colo. 1994), *aff'd* 113 F.3d 1245 (10th Cir. 1997) (at-will disclaimer in employment manual barred promissory estoppel claim based on termination, but did not bar claim based on failure to promote); *Duran v. Flag Star Corp.*, 17 F. Supp. 2d 1195, 1201-02 (D. Colo. 1998) (at-will disclaimer did not bar breach of contract/promissory estoppel claim based on breach of sexual harassment policy; disclaimer pertained to term of employment, rather than conditions of employment); *Stahl v. Sun Micro Systems, Inc.*, 775 F. Supp. 1394 (D. Colo. 1991), *aff'd* 19 F.3d 533 (10th Cir. 1994) (general contract disclaimer and statement of at-will status did not bar claim based on breach of incentive compensation plan and promise of equitable treatment); *Fair v Red Lion Inn,* 920 P.2d 820 (Colo. App. 1995), *aff'd*, 943 P.2d 431 (Colo. 1997) (employee entitled to enforce oral representations to grant medical leave of absence despite at will language in manual); *Cronk v. Intermountain Rural Elec. Ass'n*, 65 P.2d 619 (Colo. App. 1988) (employee

entitled to assert promissory estoppel claim based on oral assurances that he would not be retaliated against even though handbook contained an at-will disclaimer).

Second, to the extent the at-will termination disclaimer has any relevance to Plaintiff Tonjes' claim, such a disclaimer does not insulate Defendants from contractual or promissory liability where other mandatory policies conflict with the intent to disclaim a contract. *See e.g. Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1, 3 (Colo. App. 1991) (fact question concerning the existence of a contract, notwithstanding a disclaimer, since the plaintiff was provided other documents that contained termination procedures requiring just cause for termination and progressive discipline); *Cronk v. Intermountain Rural Elec. Ass'n*, 1992 WL 161811, * 2-3 (Colo. App. April 2, 1992) (generic at-will disclaimer not effective where handbook also contained specific mandatory termination procedures); *Torrez v. BEI Graphics Corp.*, 134 F.3d 383 (10th Cir. 1998) (employer not entitled to summary judgment on contract claim when handbook containing disclaimer also had an EEO provision with mandatory language). In this case, the provisions of the Sheriff's Manual relied upon by Plaintiff Tonjes are written in mandatory language and therefore conflict with the intent to disclaim a contractual guarantee. Argument, § B(1)(a), *supra.*

Defendants are mistaken that *Nicastle,* 2011 WL 1598062 at * 5 stands for the proposition that "the same analysis and conclusion [of *Williams* and *Seeley*] applies to an employee's rank." Defs. Mtn., p. 8. In reality, the *Nicastle* Court did not consider whether the at-will termination language of C.R.S. § 30-10-506 permitted an employer to discipline or demote an employee under circumstances prohibited by its employment

manual.  Instead, the Court rejected the plaintiff's claim that C.R.S. § 30-10-506  in and of itself created a constitutionally protected property interest in the plaintiff's status as a Lieutenant.  *Id.* Significantly, in contrast to this case, Nicastle's due process claim was deficient because "Nicastle does not cite any specific policies on which his expectation [that he would not be demoted without cause] was based."  *Id.*

Defendants are also mistaken that Manual Policy No. 320(IV)(F) permits discipline or demotion without cause.[16]   Defs. Mtn., pp. 9, 21, 23.   That provision merely provides that "The Sheriff reserves the ability to mandate disciplinary action to a greater or lesser level than the chain of command's recommendation."  *Id.*, p. 5.  As such, it permits the Sheriff to ignore the disciplinary recommendations of his

_____

[16]   In a lengthy footnote, Defendants erroneously rely upon the Park County Employee Handbook as a basis to support its Motion to Dismiss.  Defs. Mtn., pp. 7-8 fn 1. First, Defendants may not rely on that handbook as the basis for a Motion to Dismiss because "Defendants acknowledge that the provisions of the handbook are not specifically referenced in Plaintiff's Complaint."  Defs. Mtn., p. 7, fn 1.  *See also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[i]f a plaintiff does not incorporate by reference or attach a document to its Complaint, but the document is referenced to in the Complaint and essential to Plaintiff's claim, a Defendant may submit an indisputably authentic copy to the Court to be considered on a Motion to Dismiss.")  Second, to the extent reliance on the County Handbook converts this Motion to one for Summary Judgment, Plaintiff Tonjes asks this Court for an extension of time under Fed.R.Civ.P. 56(d) of 120 days so that he may be permitted to conduct discovery to respond to this fact-based issue. Specifically, to respond to this issue, Plaintiffs would be required to conduct discovery regarding the applicability of the County Manual to a Sheriff's Office employee who was also covered by the Sheriff's Manual.  He would require discovery regarding the intended inter-relationship of those documents.  By signing this Response, counsel certifies the accuracy of these assertions.  Third, in any event, the generic at-will termination disclaimer contained in that handbook has no more bearing on Plaintiff Tonjes' claim for improper demotion than does the disclaimer contained in the Sheriff's Manual.   Argument, § B(1)(b), *supra*.  Fourth, Defendants' own Motion undermines the relevance and applicability of the County Handbook.  Specifically, Defendants have argued that "the Board does not have the power to make or review the employment decisions of Defendant Park County Sheriff Fred Wegener."  Defs. Mtn., p. 30.  It further asserts that "a Board of County Commissioners is not, and cannot be, the 'employer' of County Sheriff's employees."  *Id.* Lastly, in this regard, Defendants assert that "County personnel policies established by a board of county commissions do not bind a county sheriff." Id.  Sixth, while the County Handbook may contain an at-will termination disclaimer, the Sheriff's Office Manual also contained mandatory language regarding cause for termination and specifically provides that demotion is only available as discipline when an employee commits a Level I or Level II offense.   Complaint, ¶¶16,18. Seventh, Plaintiff Tonjes has not alleged that the County breached a contract with him. Instead, he has alleged that the Sheriff's Office breached its contractual obligations to him.

subordinates. It does not, however, provide that Sheriff Wegener can discipline and demote inconsistent with Section 320 of the Manual which defines cause for discipline and identifies the circumstances under which an employee can be demoted. Argument, § B(1)(a).[17] Moreover, the Manual provides that *only* the Sheriff has the authority to demote an employee, and, may do so only "when the accused employee willfully engages in misconduct or intentionally violates policy and procedure." Complaint, ¶¶ 16, 18.

### 2. Constructive Discharge.

With respect to his constructive discharge, Plaintiff Tonjes has alleged that his working conditions became intolerable and he was constrictively discharged because he was demoted three levels, lost significant pay as a result of the three level demotion, was demoted in contravention of Defendants' policies, was demoted without being provided due process, was demoted for untrue reasons, and was treated with hostility by management. Complaint, ¶¶ 35-43. Under such circumstances, Plaintiff Tonjes has sufficiently alleged that he was constructively discharged. *See James v. Sears Roebuck & Co., Inc.*, 21 F.3d 989, 993 (10th Cir. 1994) ("a perceived demotion or reassignment to a job with lower status or lower pay may, depending on the individual facts of the case, constitute aggravating factors that would justify finding of constructive

---

[17] Setting aside the applicability of C.R.S. § 30-10-506, Defendants purported at-will disclaimer does not provide that it can fire employees for any reason. Instead, the "disclaimer" contained in Policy 309(IV)(A)(4) defines "at-will" employment as giving the Sheriff's Office "the right to end employment at any time." Ex. A, Manual, p. 5, Policy No. 309, § (IV)(A)(4). However, as to the reasons for which the Sheriff may terminate an employee, it states that "Employees may be dismissed for reasons discussed in Chapter III, Section 320, Disciplinary Action." Policy 320, § III, does not state that an employee can be disciplined at the whim of the Sheriff. Instead, it promises progressive discipline. Moreover, even if the Manual contains as effective at-will disclaimer, the Sheriff's Manual also contains mandatory language regarding cause for termination and specifically provides that termination is only available as discipline when an employee commits a Level I or Level II offense. Complaint, ¶ 18.

discharge"); *Douglas v. Orkin Exterminating Company, Inc.*, 215 F. 3d 1336, * 4 (10th Cir. 2000) (*Id.*).[18]

    *Lauck v. Campbell Cty.*, 627 F.3d 805, 813 (10th Cir. 2010), relied upon by Defendants, is inapposite. Defs. Mtn., p. 10.  In *Lauck,* the Plaintiff argued that he was entitled to due process with respect to the constructive discharge itself.  In contrast to *Lauck*, Plaintiff Tonjes has alleged that he was denied due process because Defendants disciplined and demoted him without cause and failed to provide him with pre-deprivation process as constitutionally required. As to whether a constructive discharge was present, the *Lauck* case also differs from this one.  The Plaintiff in *Lauck* was merely transferred, not demoted.  627 F.3d at 813.  In contrast, Mr. Tonjes was demoted three levels with a significant cut in pay.

    Finally, in this case, the question of constructive discharge is merely a damages issue not a liability issue.  Constructive discharge is not an element of a due process claim.  Defs. Mtn., pp. 4-5.  Defendant Tonjes' claim for liability is predicated upon Defendants' failure to follow its own discipline and demotion policies.  At most, the failure to establish a constructive discharge would cut off Plaintiff Tonjes' economic damages, but would have no effect on his ability to recover other damages, including

---

[18]   *See also Ramos v. Davis & Geck, Inc.*, 167 F.3d 727 (1st  Cir. 1999)(finding that a change in job title and cubicle location sufficient to establish a constructive discharge); *J.P. Stevens & Co., Inc. v. N.L.R.B.*, 461 F.2d 490 (4th  Cir. 1972)(finding a constructive discharge when there was a substantial decrease in the employees rate of pay); *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023 (5th Cir. 1992)(holding that a demotion and decrease in pay was sufficient to establish a constructive discharge); *Guthrie v. Tifco Industries,* 941 F.2d 374 (5th Cir. 1991)(*Id.*); *Zabielski v. Montgomery Ward & Co., Inc.*, 919 F.2d 1276 (7th Cir. 1990)(*Id.*).

compensatory and punitive damages, which were caused by the improper demotion itself.[19]

### 3.    Plaintiff Tonjes' Complaint Properly Alleges That Defendant Hancock Was Responsible For the Decision to Demote Plaintiff Tonjes.[20]

Plaintiff Tonjes may state a claim for deprivation of his rights under 42 U.S.C. § 1983 based upon allegations that Defendant Hancock caused the deprivation of his rights. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("to establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"); *Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989) ("LaMunyon's authority was technically limited to suspending or recommending his termination.  To hold LaMunyon personally responsible for Wulf's termination, there must be a causal connection between his recommendation and Wulf's termination."). To establish such causation, it is not necessary for Plaintiff Tonjes to allege that Defendant Hancock made the demotion decision.  *Id.*  Plaintiff Tonjes must only establish that Defendant Hancock was *a* moving force behind the deprivation of his First Amendment rights.  *Id.*

In his Complaint, Plaintiff Tonjes plainly alleges that Defendant Hancock participated in the demotion decision and therefore caused the deprivation of his rights. Specifically, in his Complaint, Plaintiff Tonjes alleged the following:

---

[19]   In general, constructive discharge is a damages issue, not a liability issue.  *See e.g. Derr v. Gulf Oil Corp.,* 796 F.2d 340 (10th Cir. 1986); *Knabe v. Boury Corp.,* 114 F.3d 407, 407 n. 1 (3d Cir.1997).

[20]     Defendants do not dispute that Plaintiff Tonjes' Complaint states a claim against Defendant Wegener.

34.   Soon thereafter, Capt. Hancock informed Sheriff Wegener of his meeting with Sgt. Tonjes and Undersheriff Gore and the statements Gore made regarding the Wirth situation.  At that time, Wegener and Hancock decided to discipline or even fire Plaintiff Tonjes and Undersheriff Gore because of their opinions regarding how the Wirth situation was handled.[21]

38.   As soon as he received notice of his three level demotion, Sgt. Tonjes assumed he was being set up to be fired.  Based on Defendants Wegener and Hancock's behavior after the Wirth incident, he believed that he was being scapegoated for the tragedy.

39.   In deciding to demote Sgt. Tonjes, Defendants Wegener and Hancock were not acting in the best interests of the Office or County. Their decision was solely motivated by their desire to retaliate against Sgt. Tonjes because of his opinions and associations regarding the Wirth mishap.  By demoting Sgt. Tonjes, Defendants Wegener and Hancock hoped to create the false impression that Sgt. Tonjes was responsible for the tragedy at the Wirth property.

**4.    Defendants Wegener and Hancock Are Not Entitled to Qualified Immunity.**

To defeat qualified immunity, the particular action in question need not have been previously held unlawful.  *Anderson v. Creighton*, 483 U.S. 635, 643 (1987).  Nor must there even be a strict factual correspondence between the cases establishing the law and the case at hand.  *Garcia by Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir. 1987).   Rather, the Tenth Circuit requires only "some but not precise factual correspondence."  *Id.*, *quoting People of Three Mile Island v. Nuclear Regulatory Commissioners*,  747 F.2d 1389, 144 (3rd Cir. 1984).  *See also Johnson v. Martin*, 195

---

[21]    As context,  Plaintiff Tonjes' Complaint also alleges the following:

32.    While visiting Hancock, the Wirth situation was discussed.  Among other things, Undersheriff Gore told Hancock that he held Sheriff Wegener fully responsible and to blame for the unnecessary violence, death, and injuries at the Wirth eviction. In response, Capt. Hancock became angry, appeared to choke, and came up out of his chair aggressively.

33.    At the time they spoke with Defendant Hancock, Sgt. Tonjes and Undersheriff Gore did not know that Hancock had been involved in giving the order to enter the Wirth residence.  They later learned he had been involved.  Hancock was therefore angry at Tonjes and Gore for suggesting that the decision to forcibly enter the Wirth residence was a mistake.

F.3d 1208, 1216 (10th Cir. 1999) ("We have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct.  Instead, we merely require the parties to make a reasonable application of existing law to their own circumstances").  It is incumbent upon government officials "to relate established law to analogous factual situations." *Garcia*, 817 F.2d at 657.

As discussed, the law is clearly established by both the United States Supreme Court and the Tenth Circuit that an implied contract or otherwise enforceable promise may give rise to a constitutionally protected property interest for due process purposes. *See e.g., Bishop,* 426 U.S. at 344; *Jones*, 13 F.3d at 365; *Nicastle*, 2011 WL 1598062 at * 4; *Hamm,* 426 F. Supp. at 900;  *Williams,* Fed. App'x at 686.  *See also* Argument, § B(1)(b), *supra*.  Moreover, Colorado state law regarding the enforceability of implied contracts based on an employment manual is also clearly established.  *Kenan*, 731 P.2d at 708; *Churchey*, 759 P.2d at 1348.  *See also* Argument, § B(1)(b), *supra*.

**C.    Plaintiff Tonjes' Complaint States a Claim for Violation of the First Amendment's Freedom of Association.**

**1.    The Elements of a Freedom of Association Claim.**

In a series of decisions, "the [Supreme] Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment – Speech, Assembly, Petition for the Redress of Grievances, and the Exercise of Religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984).[22]   This right

---

[22]    It is Defendants' belief that Plaintiff was associating for the purpose of speaking out on a matter of public concern, not their actual knowledge, that is at issue in a First Amendment Case.  *Hefferman v. City*

to associate is typically referred to as "the instrumental right of freedom of association for the purpose of engaging in speech …" *Merrifield v. Bd. of Cty. Com'rs of Santa Fe*, 654 F.3d 1073, 1080 (10th Cir. 2011).[23] *See also Marshall v. Allen*, 984 F.2d 787, 799-800 (7th Cir. 1993)("there is no question that the right to associate in order to show support for and to promote political and social causes has long been protected by the First Amendment"). To state a claim for retaliation in violation of the Freedom of Association, Plaintiff Tonjes must allege that: "(1) his First Amendment activity involved a matter of public concern; (2) his interests in the protected activity outweighed the employer's interest in regulating it; and (3) the protected activity was a substantial motivating factor in the employer's decision to take adverse action against him." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 400-61 (10th Cir. 2013).

> ### 2.    Protected Activity.

In their Motion, Defendants' erroneously argue that Plaintiff Tonjes' Freedom of Association claim should be dismissed because he did not personally speak out to Defendants. Defs. Mtn., pp. 13-15.[24] In doing so, Defendants cite no authority holding that an employee must speak out on a matter of public concern in order to bring a Freedom of Association claim. Indeed, actual speech is not an element of a Freedom of Association Claim. *See e.g. Roberts*, 468 U.S. at 617-618; *Merrifield*, 654 F.3d at 1080;

---

*of Patterson, N.J.*, 136 S.Ct 1412,1418 (2015)("when an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42. U.S.C. § 1983-even if, as here, the employer makes a factual mistake about employee's behavior.").

[23]   This right stands separate and apart from the right of "intimate" or "intrinsic" association, which is not at issue in this case. *Id.*

[24]   Plaintiff Tonjes has not asserted a claim for violation of his free speech rights.

*Cillo*, 739 F.3d at 460-461.   Under clearly-established law,[25] to establish a claim for violation of the Freedom of Association, as opposed to a claim for violation of the Freedom of Speech, Plaintiff Tonjes must only allege that he associated with Monte Gore for the purpose of engaging in protected First Amendment conduct. *Id. See also Owens v. Rush*, 654 F.2d 1370,1378-1379 (10th Cir. 1981) (support for wife's discrimination charge by accompanying her to attorney's office and helping draft charge was protected association despite husband not speaking out).

In his Complaint, Plaintiff Tonjes alleges detailed facts which demonstrate that he associated with Monte Gore for the purpose of engaging in protected First Amendment conduct.  Complaint, ¶¶ 31-38.  Specifically, the Complaint alleges that, on their day off, both Gore and Tonjes together visited Defendant Hancock at his home.  *Id.*, ¶ 31.  During that meeting, the Wirth tragedy was discussed and "Undersheriff Gore told Hancock that he held Sheriff Wegener fully responsible and to blame for the unnecessary violence, death, and injuries at the Wirth eviction."  *Id.*, ¶ 32.  The Complaint further alleges that Defendants Hancock and Wegener discussed this exchange and were angry at both Tonjes and Gore for Gore's statements.  *Id.*, ¶¶ 33-34.

To bolster the inference that Gore and Tonjes had associated for the purpose of engaging in protected speech, the Complaint also alleges that prior to the Wirth incident, Sgt. Tonjes told Defendants Wegener and Hancock that Sheriff's Department

---

[25]   Association with political parties and labor unions are protected regardless of whether the plaintiff actually speaks out.  *See e.g. Elrod v. Burns*, 427 U.S. 347, 357 (1976) (political affiliation); *Cillo*, 739 F.3d at 466 ("Sgt. Cillo's right to associate with a union was a clearly established right at the time of his termination").

Officers should under no circumstance attempt to enter the Wirth home because he was volatile and potentially dangerous. *Id.*, ¶ 24. Furthermore, the Complaint alleges that immediately after the Wirth tragedy, and immediately before their meeting with Hancock, Tonjes and Gore met and both discussed their belief that the deaths of Cpl. Carrigan and Mr. Wirth, and the serious injuries to two other Deputies, were caused by the inappropriate and reckless orders of Defendants Wegener and Hancock. *Id.*, ¶ 28. Hancock and Wegener knew or suspected that Tonjes and Gore had expressed those concerns. *Id.*, ¶ 29.

The expression at issue in this case, which was made in opposition to the Defendants' role in recklessly causing two deaths and other serious injuries, may be distinguished from the mere "kernel of expression" scenario discussed in *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) and relied upon by Defendants. Defs. Mtn., pp. 13-15. At issue in *Stanglin* was an ordinance restricting attendance at certain dance halls to minors between the ages of 14 and 18 and certain accepted adults. *Id.* at 1595. The Court held that association by dance hall patrons was not protected by the First Amendment because "there is no suggestion that these patrons 'take positions on public questions' . . . " *Id.* In contrast, the speech with which Plaintiff Tonjes associated very clearly involves "tak[ing] positions on public questions" and pertains to matters of public concern. *See Dill v. City of Edmond, Okla.,* 155 F. 3d. 1193,1202-1203 (10th Cir. 1998) (police misconduct touches on matter of public concern); *Lee v. Nicholl,* 197 F. 3d 1291,1296 (10th Cir. 1999) (police safety matter of public concern); *Worrell v. Henry*, 219 F. 3d 1197, 1206 (10th Cir. 2000) (proper police procedures matter of public

concern); *Clinger v. M.M. Highlands Univ.*, 215 F.3d 1162, 1166 (10th Cir. 2000) (an allegation that "seeks to expose improper operations of the government or questions the integrity of government officials" constitutes a matter of public concern); *Ashcroft, III v. Beicker*, 2008 WL 538919, * 3-4 (D. Colo. 2008) (complaints that a co-worker was sexually harassed touch on a matter of public concern because it pertains to official wrongdoing and exposes the improper operations of government).[26]

### 3.    **Motivating Factor**.

Plaintiff Tonjes' Complaint alleges numerous facts which demonstrate that his associational activity was a motivating factor in Defendants' decision to demote him three levels.[27]   First, contrary to Defendants' misstatement of his allegations, in his Complaint, Plaintiff Tonjes alleges in detail that he was terminated due to his association with Monte Gore's speech on matters of public concern.   Complaint, ¶¶ 28-40.   Second, the Court may infer that Defendants knew Plaintiff Tonjes was associated with Monte Gore's speech exposing Defendants' reckless handling of the Wirth situation, because prior to the Wirth tragedy, Sgt. Tonjes had warned Defendants

---

[26]    Matters of public concern are those which may "be fairly considered as relating to any matter of political, social, or other concern to the community."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  *See also Burns v. Bd. of Cty. Comm'rs*, 330 F.3d 1275 (10th Cir. 2003) (quoting from *Connick*); *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000).   Statements opposing official impropriety or wrongdoing involve matters of public concern.  *Connick*, 401 U.S. at 148 (speech that pertains to public agency's "discharging its governmental responsibilities" touches on a matter of public concern); *Lighton*, 209 F.3d at 1224; *Considine v. Adams County*, 910 F.2d 695, 699 (10th Cir. 1990) (an analysis of whether workplace speech relates to a matter of public concern focuses upon "the extent to which the content of the employee's speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of the governmental officials in the conduct of their official duties.")  In contrast, speech that simply airs "grievances of a purely personal nature" typically does not involve matters of public concern.  *Lighton*, 209 F.3d at 1225.  *See also Horn v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996) (speech regarding grievances about internal department affairs not protected).
[27]    Motivating factor is a fact question for the jury.  *Conaway v. Smith*, 853 F.2d 789, 796 fn. 8 (10th Cir. 1988); *Langley v. Adams County*, 987 F.2d 1473, 1479 (10th Cir. 1993).

Wegener and Hancock that Wirth was "highly volatile and potentially dangerous" and that "Sheriff's Department Officers should under no circumstance attempt to enter the Wirth home."  *Id.*, ¶ 24.  Third, Messrs. Gore and Tonjes approached Defendant Hancock together at his home about the Sheriff's mishandling of the Wirth situation. Complaint, ¶¶ 31-32.  It is reasonable to infer from those allegations that Hancock viewed Welles Tonjes as supporting Undersheriff Gore's statements.  *See e.g. Owens, 654 F. 2d at 1379* (association claim based on plaintiff accompanying wife to lawyer for purpose of filing discrimination claim).  Fourth, the fact that Plaintiff Tonjes was demoted just three days after he and Monte Gore met with Defendant Hancock creates an inference that Defendant Wegener knew about Plaintiff Tonjes' association with Monte Gore's protected speech and was motivated by that knowledge to demote Plaintiff Tonjes.  *Id.*, ¶¶ 32, 35.  *See also Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation), *overruled on other grounds; Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 386 (10th Cir. 1984) (sustaining finding of retaliation where terminate on occurred within two hours of engaging in protected activity); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (temporal proximity of nine weeks could establish causation).  Fifth, the fact that Defendants demoted Plaintiff Tonjes for erroneous reasons creates an inference that they were retaliating against him for his associational activity.  *Id.*, ¶¶ 36-39.  *See also Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000) (a fact finder is permitted to find intentional discrimination or retaliation upon a finding of pretext); *Mason v.*

*Oklahoma Turnpike Authorit*y, 115 F.3d 1442, 1455 (10th Cir. 1997) (approving pretext instruction as mandatory in Section 1983 Free Association case), *overruled on other grounds*.  Sixth, the fact that Defendants deviated from the disciplinary and demotion policy in the Manual creates an inference that they had an improper motivation in demoting him.  *Id.*, ¶ 42.  *See e.g. Collazo v. Bristol-Meyers Squibb Mfg., Inc.*, 617 F.3d 39, 52 (1st Cir. 2010) (employer's failure to follow progressive discipline policy probative of pretext); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 n. 29 (5th Cir. 2005) ("although [defendant] correctly notes that its [progressive discipline] policy is not mandatory, and that [plaintiff] was an at-will employee, these facts did not eliminate the inference of pretext raised by its failure to follow an internal company policy specifically stating that it should be 'followed in most circumstances'").  Seventh**,** the fact that both Welles Tonjes and Monte Gore suffered significant adverse actions after the meeting with Defendant Hancock supports an inference that Defendants believed Tonjes had associated with Gore's opinions regarding the handling of the Carrigan death and retaliated against him for that reason.

### 3.    Defendants Are Not Entitled To Qualified Immunity.

As discussed, as of the time of Plaintiff Tonjes' demotion, the law was clearly established by U.S. Supreme Court and Tenth Circuit decisions that an employer may not terminate an employee because the employee was associated with another individual who exercised Free Speech rights.  Argument, § C(1), *supra*. The law is also clearly established that speech in opposition to reckless and unsafe police practices touch on matters of public concern. *Id.*

**D.      Plaintiff's Complaint States a Claim for Deprivation of a Due Process Liberty Interest**.

With respect to Plaintiff Tonjes' Due Process Liberty Interest claim, Defendants again misstate the law and Plaintiff Tonjes' allegations.  As will be discussed, Plaintiff Tonjes' Complaint states a claim for deprivation of a Due Process Liberty Interest.[28]

First, Plaintiff Tonjes' Complaint alleges that the statements made by Defendant Wegener impugned his good name, reputation, honor, and integrity.  As Defendants acknowledge, Plaintiff Tonjes' Complaint alleges the following:

> 44.   After Sgt. Tonjes was constructively discharged, Sheriff Wegener made false and stigmatizing comments about Sgt. Tonjes designed to scapegoat Sgt. Tonjes and deflect blame away from himself.   For example, on March 2, 2016, he told Brian Maass of Channel 4 News in Denver that he had made the decision to demote Sgt. Tonjes and that "it was related to the handling of how the deputies responded [at the Wirth scene]".   Based on his interview with Wegener, Maass reported that "a Park County Sheriff Sargent was in the process of being demoted and then resigned Monday over the tactics that lead to the Feb. 24 death of Cpl. Nate Carrigan."

Under clearly established law, the suggestion that Plaintiff Tonjes was demoted and constructively discharged for his role in a situation that led to the death of an officer constitutes a statement that impugns Welles Tonjes' good name, reputation, honor, and integrity. *See Palmer v. City of Monticello* 31 F.3d 1499 (10th Cir. 1994) (Liberty Interest Due Process claim established when a police officer was accused of falsifying a speeding ticket as the reason for his termination); *Woodard v. Chicago Board of Educ.*, 2001 WL 1631892 (ND Ill. 2001) (plaintiff states a Liberty Interest Due Process claim where he was removed from his position as principal following an internal audit that

---

[28]   In their Motion, Defendants accurately recited the elements of this claim.  Defs. Mtn. 10-17.

revealed fiscal irregularities; government entity made statements linking the investigation to his removal by defendant).[29]

Second, Defendant Wegener made his defamatory statements in the course of a three level demotion and constructive discharge.  Because the statements were made just two days after his demotion and constructive discharge and described the reason for taking that adverse action, those statements implicate a constitutionally protected liberty interest.  *See Bjorklund v. Miller,* 467 Fed. App'x 758, 768 (10th Cir. 2012) ("'[Publication of defamatory statements need not be strictly contemporaneous with a termination to occur in the course of the termination of employment' . . . A 'roughly contemporaneous statement [ ] ' made  'incident to the termination' that concerns the 'manner or reasons for the [the employee's] termination' may qualify as one made in the course of termination of employment'", *citing to Renauld v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000)).  A Liberty Interest Claim may be based on adverse action short of an actual termination, including a demotion or constrictive termination. *Bailey v.* Kirk, 777 F.2d 567 (10th Cir. 1985); *Dee v. Corough of Dunmore*, 549 F.3d 225 (3rd Cir. 2008); *Hill v. Borough of Kutztown,* 455 F.3d 225 (3rd Cir. 2006).

Third, Plaintiff Tonjes alleges that the statements made by Defendant Wegener were untrue.  Specifically, Defendant Wegener told Channel 4 News that the demotion "was related to the handling of how the Deputies responded [at the Wirth scene]"

---

[29]   In evaluating whether a statement is "defamatory", the Courts will look at "whether the [speaker] intended the words to be defamatory and whether they were "so understood by the person to whom they were communicated."  *See CJI-Civ.P. 22:99* (CLE Ed. 2008); *Restatement (Second) of Torts*, Section 563. "It is immaterial that ordinary or reasonable persons, giving the words their plain and rational meaning, would not so understand them." *Id.*  In determining whether the statements are defamatory, the Court is to look at the "reasonable implication" of the statements.  *Big O Tire Dealers, Inc. v. Goodyear Tire and Rubber Co.*, 408 F. Supp. 1219, 1234 (D. Colo. 1976).

Complaint ¶ 44.    However, as the Complaint alleges, Plaintiff Tonjes was told by Defendant Wegener that he was being terminated for making harsh statements to two Officers.  *Id.*, ¶ 36.  The Complaint does not allege that the demotion was in the context of the Wirth tragedy.  As such, the statement made to the media is false.

In their Motion, Defendants erroneously suggest that Plaintiff's allegation that he was terminated because of his association with Monte Gore renders the Sheriff's statements true.  Defs. Mtn., pp. 18-19.  Actually, the protected speech by Monte Gore suggested that the Sheriff mishandled the Wirth tragedy and recklessly caused death and serious injury.  Complaint, ¶¶ 31-34.  In contrast, the Complaint plainly alleges that Tonjes was demoted for associating with opposition to how the Wirth situation was handled. *Id.*, ¶¶ 32, 34.  The Sheriff told Tonjes that he was being demoted for speaking harshly to two Office Deputies.  *Id.*, ¶ 36.  Nothing in these allegations suggest that Plaintiff Tonjes was demoted for his role in the Wirth tragedy as Defendant Wegener falsely claimed to the press.

### E.    Plaintiff Tonjes Has Stated a Claim for Breach of Contract.

With respect to this claim, Defendants arguments are identical to their arguments in support of the dismissal of Plaintiff Tonjes' Due Process Property Interest Claim.  For the same reasons asserted in this Response, Defendants' position should be denied. Argument, § B, *supra*.

### F.    Plaintiff Tonjes' Complaint States a Claim for Promissory Estoppel.

With one exception, Defendants' arguments with respect to Plaintiff's promissory estoppel claim are identical to those raised in support of dismissal of Plaintiff Tonjes'

Due Process Property Interest claim.  For the same reasons argued in this Response, and new reasons described in this section, Defendants' position should be denied. Argument, § B, *supra*.

Specific to Plaintiff's Promissory Estoppel claim, Defendants also argue that Plaintiff Tonjes did not sufficiently allege "detrimental reliance."  However, under Colorado law, "detrimental reliance" may be established by nothing more than an allegation of continuing employment. *See Cronk,*  WL 161811 at * 3 ("a plaintiff's continued employment constitutes detrimental reliance . . . ").  Plaintiff Tonjes' Complaint specifically alleges that he was aware of the Sheriff's Manual when he began his employment with the Defendants and reasonably relied on the representations contained within the Manual by continuing his employment until he was demoted and constructively discharged in breach of those representations.  Complaint, ¶¶ 10-11, 13,43,75.  Contrary to Defendants' assertion, the fact that he constructively discharged after Defendants breached their Manual has no bearing on reasonable reliance.  Defs. Mtn., p. 23.  On the contrary, it demonstrates just how important those representations were to him given that he resigned because those promises were violated.  *Id.*, ¶ 43.

Plaintiff Tonjes' Promissory Estoppel claim survives dismissal even if this Court dismisses his Due Process Property Interest and Breach of Contract claims based on C.R.S. § 30-10-506, *Williams,* and *Seeley*.  Even though *Williams* and *Seeley* held that a Sheriff's Manual is unenforceable to the extent it conflicts with C.R.S. § 30-10-506, a promissory estoppel claim may nonetheless proceed.  After all, under Colorado law, "promissory estoppel is available as a remedy only in the absence of an otherwise

enforceable contract".  *Scott Co., of California v. MK-Fergeson Co.*, 832 P.2d 1000, 1003 (Colo. App. 19991); *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1455 (D. Colo. 1995), *Aff'd*, 107 F.3d 880 (10th Cir. 1997).  By bringing a promissory estoppel claim, Plaintiff Tonjes is not attempting to enforce an otherwise invalid contract; instead, he is seeking damages for detrimental reliance.[30]

G.   **Plaintiff Tonjes' Complaint States a Claim Against the Park County Sheriff's Office**.

A governmental entity may be held liable pursuant to 42 U.S.C. § 1983 for the conduct of officials "whose acts may fairly be said to represent official policy."  *Monell v. Dept. of Soc. Serv.* 436 U.S. 658, 694 (1978). "[P]olicy can be established pursuant to a specific and one-time decision made by a 'final policymaker.'"  *Randle v. City of Aurora*, 69 F. 3d 441, 448 (10th Cir. 1995), *citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988).  *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("Even a single decision by such a [municipal] body unquestionably constitutes an act of official government policy"); *Owen v. City of Independence,* 455 U.S. 622 (1980) (City Council's resolution firing plaintiff without a pre-termination hearing constituted city policy); *Flanagan, et al. v. Munger, et al.*, 890 F.2d 1557, 1569 (10th Cir. 1989) ("when Chief Munger issued the reprimands against plaintiffs, he acted as the official responsible for establishing final policy"); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions

---

[30]   Significantly, in *Williams* and *Seeley*, the Plaintiffs did not assert a promissory estoppel claim.

on behalf of the entity being sued"); *Hatlee v. Hardey,* 2015 WL 7273211, * 3-4 (D. Colo. 2015) (noting that Colorado Sheriff's Office can be responsible for a single incident for which the Sheriff has final decision making authority, but finding Sheriff did not have final decision making authority under facts of case).

In his Complaint, Plaintiff Tonjes alleges that the Sheriff had final decision-making authority over all demotion decisions and that the final decision to demote Plaintiff Tonjes was made by the Sheriff. Complaint, ¶¶ 16,19,34-36,42,45.[31]  No appeal was permitted from the Sheriff's decision. *Id.*, ¶ 42,45. Consequently, under the precedent cited herein, the Sheriff's Office is liable for the illegal demotion of Plaintiff Tonjes.

*Isenbart v. Bd. of Cty. Comm'rs of Kit Carson Cty.*, 2012 WL 43782969, *7 (D.Colo. September 25, 2012), relied upon by Defendants is inapposite.  In *Isenbart*, the Court held that a county government cannot be held responsible for the actions of its Sheriff's Office when the Sheriff and not the County Commissioners were the decision makers.  The Court did not hold that the Sheriff's Office was not a proper Defendant.  In fact, the Court could not have addressed that issue, because the Sheriiff's Office was not named as a Defendant in that case.

### H.   <u>Plaintiff Tonjes Has Stated A Claim Against Defendant Hancock</u>.

In Section J of the Motion, Defendant Hancock rehashes the same argument he made with respect to Plaintiff's Due Process Property Interest claim.  For the same

---

[31]   Defendants' Motion also supports this position.  Significantly, in their Motion, Defendants argued that the Sheriff had final decision-making authority regarding all employment decisions and that the County's Board had no decision-making authority whatsoever.  Defs. Mtn., pp. 29-30.

reasons asserted herein, his position should be rejected.   Argument, § B(3), *supra*. Plaintiff Tonjes has specifically isolated and identified the conduct of Defendant Hancock that caused the improper demotion of Welles Tonjes.  Complaint, ¶¶ 32-39.

## CONCLUSION

For the reasons described herein, Defendants' Motion should be denied.

Respectfully submitted this 20th day of June, 2017.

**BENEZRA & CULVER, P.C.**

*/s/ John A. Culver*

_____
John A. Culver, Esq.
Seth J. Benezra, Esq.
Adam W. Ray, Esq.
633 17th Street, Suite 2610
Denver, CO  80202
(303) 716-0254
jaculver@bc-law.com
sjbenezra@bc-law.com
awray@bc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June, 2017, I electronically served the foregoing **PLAINTIFF WELLES TONJES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the clerk of the court using the ECF system to the following:

Timothy P. Schimberg, Esq.
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, CO 80203
T_schimberg@fsf-law.com
*Attorneys for Defendants*

Herbert C. Phillips, Esq.
The Phillips Law Offices, LLC
675 Main Street, P.O. Box 1046
Fairplay, Colorado 80440
lee@law-hcp.com
*Attorney for Defendants*

*/s/ Carolyn Haddan*

_____
C. Haddan, Litigation Paralegal