**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   17-cv-00487-CBS

WELLES TONJES,

      Plaintiff,

v.

THE PARK COUNTY SHERIFF'S OFFICE;
FRED WEGENER, in his individual capacity; and
MARK HANCOCK, in his individual capacity,

      Defendants,

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

---

The Board of County Commissioners for Park County, the Park County Sheriff's Office, Sheriff Fred Wegener, and Captain Mark Hancock ("Defendants"), by and through counsel, Herbert C. Phillips of The Phillips Law Offices, LLC, and Timothy P. Schimberg and Eden R. Rolland of Fowler, Schimberg, Flanagan & McLetchie, P.C., submit the following Reply in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**ARGUMENT**

A. **Legal Standard**

Plaintiff's Response recites the "plausibility" pleading standard of *Twombly* and *Iqbal*, yet the factual allegations contained in Plaintiff's Complaint, where they exist, fail to "nudge" his claims across the line from conceivable to plausible.  *Bell Atlantic Corp. v.*

1

*Twombly*, 550 U.S. 544, 570 (2007). In construing whether Plaintiff's Complaint alleges "plausible" claims, the Court must determine whether the alleged factual content allows the Court to draw reasonable inferences that Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal quotation marks omitted). In the absence of a facially plausible claim, the claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B. <u>Plaintiff Has Failed to State a Claim for Violation of a Due Process Property Interest.</u>**

**1. Plaintiff Does Not Have a Protected Property Interest in His Rank or Employment at the Park County Sheriff's Office.**

Plaintiff's First Claim for Relief must be dismissed because Plaintiff does not have a constitutionally protected property interest in his rank or employment at the Park County Sheriff's Office. Precedent in the Tenth Circuit this Court state that a Due Process property interest does not exist where, as here, the Sheriff has final and exclusive decision-making authority over the appointment of their personnel pursuant to C.R.S. § 30-10-506 and there is no independent basis creating a property interest in employment or rank. *See Williams v. McKee*, 655 Fed. Appx. 677, 686-87 (10th Cir. 2016) (holding that, under C.R.S. § 30-10-506, the defendant sheriff's authority to hire and fire employees was not limited by the county policies relied upon by the plaintiff, nor by any "self-imposed limitations" on the sheriff's right to discharge employees at will) (citing *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1219 (10th

Cir. 2002)); *Nicastle v. Adams County Sheriff's Office*, 2011 WL 1598062, *4-*5 (D.

Colo. 2011) ("Assuming such policies [regarding pre-deprivation notice and an

opportunity to be heard] exist, they do not create a property interest in a particular rank

held by a sheriff's employee").  Plaintiff's Response ignores these statements of law.

Under this clearly established precedent, Plaintiff did not possess a Due Process

property interest in his rank as Patrol Senior Sergeant, nor in any position of

employment at the Park County Sheriff's Office.  Pursuant to C.R.S. § 30-10-506,

Plaintiff served at the pleasure of Defendant Sheriff Fred Wegener.  Plaintiff's

appointment was "at will."  None of the allegations in Plaintiff's Complaint, the provisions

of the Park County Sheriff's Office Policy and Procedure Manual ("Manual"), nor the

case law cited in Plaintiff's Response to Defendants' Motion to Dismiss provide any

basis for finding that Plaintiff held a constitutionally protected property interest in either

his employment or rank at the Park County Sheriff's Office.

Plaintiff argues that the personnel policies and procedures of the Manual

constitute an implied contract or promise that gives rise to a Due Process property

interest.  *See* Response, 5-6.  This argument is unavailing.  It is well-established that

"[p]rocedural detail in a statute or regulation, standing alone, is not sufficient to establish

a protected property interest in an employment benefit," to include a particular rank or

position.  *Nicastle,* 211 WL 1598062, at *4 (quoting *Hennigh*, 155 F.3d at 1254).  The

Tenth Circuit has expressly adopted the proposition that a sheriff is unable to limit,

through "self-imposed limitations," his authority to discharge employees at will.

*Williams*, 655 Fed. Appx. at 686 (citing *Seeley v. Bd. of Cty. Comm'rs*, 791 P.2d 696,

700 (Colo. 1990)).  The Manual also explicitly disclaims that its policies and procedures are binding upon the Sheriff.  Policy 201 states, "The Sheriff may amend or cancel policy directives at any time."  *See* Policy 201(IV)(A), attached as **Exhibit B**.[1]  Policy 201 also clearly states how the policies and procedures contained within the Manual are not "fixed," but are merely advisory and intended to serve as guidelines. For example, Policy 201(II) defines "POLICY" as "[a] written directive that is a broad statement of agency principles.  Policy statements may be characterized by such words as 'may' or 'should' and usually do not establish fixed rules or set procedures for conduct of a particular activity, but rather provide a framework for development of procedures, rules, and regulations."  In light of Sheriff Wegener's statutory authority to determine the appointment of his deputies at will, combined with the advisory nature of the Manual and the fact it is specifically not binding upon the Sheriff, Plaintiff cannot claim that the Manual's policies and procedures constituted either an implied contract or a promise on

---

[1] While Defendants agree that the Manual's section relating to "Personnel" is relevant to the claims and defenses argued in Defendants' Motion to Dismiss, Defendants do not accept Plaintiff's blanket statement that other sections of the Manual "do not pertain to the factual basis for Plaintiff Tonjes' Due Process Property Interest claim."  *See* Pl. Response, at 3 n.4. Defendants maintain that any and all provisions of the Manual relevant to Plaintiff's Due Process Property interest claim should be considered, regardless of whether the provision is contained in the section relating to "Personnel" or in some other section.  To that end, Defendants request that the Court consider Policy 201 because Plaintiff has referred to the applicability of the Manual as a whole in his Complaint, *see e.g.* Compl. ¶ 14, and the extent of the authority of the Manual's policies and procedures is central to his claim.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

which Plaintiff could rely.  There is no basis for finding that Plaintiff had a Due Process property interest in either his employment or rank at the Park County Sheriff's Office.

Although Plaintiff cites several cases indicating that an implied contract or promise *may* give rise to a constitutionally protectable property interest, *see* Response at 6, Plaintiff does not cite any authority with comparable facts demonstrating an instance where this actually occurred.  *See e.g. Bishop v. Wood*, 426 U.S. 341, 344-45 (1976) (declining to re-examine whether a city ordinance created a property interest because the issue was not properly subject to review); *Jones v. Univ. of Cent. Okla.*, 13 F.3d 361, 363 (10th Cir. 1993) (holding that whether an informal and unwritten tenure policy conferred a property interest to university professor was to be determined by the application of Oklahoma state law); *Hamm v. Scott*, 426 F. Supp. 950, 960 (D. Colo. 1977) (holding that the plaintiff did not have a property interest in his employment as chief juvenile probation officer, finding "no evidence . . . of an express or implied contract.").  Plaintiff's authorities actually reinforce the rule that the Court must look to state law in determining whether a property interest is created.  Here, the applicable statute C.R.S. § 30-10-506 and decisional law show that Sheriff Wegener's authority to determine the appointments of his deputies is exclusive and final and cannot be limited by the "self-imposed regulations" contained in the Manual.

Plaintiff's Response also offers no authority to support the proposition that C.R.S. § 30-10-506 pertains only to "termination."  In contrast, *Nicastle* holds that under C.R.S. § 30-10-506, a sheriff has discretion "to terminate or demote an employee."  *Nicastle*, 2011 WL 1598062, at *5.  No language in C.R.S. § 30-10-506 indicates that revocation

of an "appointment" relates only to termination, rather than encompassing numerous types of personnel decisions, including demotion.  Plaintiff's authorities cited on page 8 of the Response are also inapposite and distinguishable.  There, Plaintiff cites several cases for the proposition that "an enforceable contract relating to personnel rights other than termination may be created by personnel policies despite a disclaimer that employment may be terminated 'at-will.'"  Response, 8.  None of these cases pertain to policies or procedures relating to discipline, much less to a demotion in rank.  The "personnel rights other than termination" referred to in those cases pertain to, for example, a sexual harassment policy, an incentive compensation plan, and a medical leave of absence.[2]  Similarly, none of the cited cases stand for the proposition that an at-will disclaimer or written or oral promises do not preclude constitutional claims for Due Process violation; rather, they stand for the proposition that such assurances do not preclude state law claims that are not at issue here.[3]

The Manual clearly states that the purpose of its personnel policies and procedures is to "provide guidance"—not a due process guarantee.  *See e.g.* Ex. A. Policy 320(I) (stating that the purpose of the Corrective Action and Discipline Policy is to "provide guidance on the proper administration of corrective action and discipline to members of the Sheriff's Office"); *see also* Policies 318, 319 (the stated purpose of such

---

[2] *See, respectively, Duran v. Flag Star Corp.*, 17 F. Supp. 2d 1195, 1201-02 (D. Colo. 1998); *Stahl v. Sun Micro Systems, Inc.*, 775 F. Supp. 1394 (D. Colo. 1991); and *Fair v. Red Lion Inn*, 920 P.2d 820 (Colo. App. 1995).

[3] *See Calhoun v. Ball Corp.*, 866 F. Supp. 473, 478 (D. Colo. 1994) (failure-to-promote claim not precluded); *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619 (Colo. App. 1988) (state contract claims not precluded).

policies is to provide "guidance" and "guidelines").  Plaintiff's allegation and argument that the Manual provided "due process guarantees" is entirely conclusory.  *See* Compl. ¶ 19.  Nowhere does the Manual state that any Defendant was bound to follow the personnel policies and procedures set forth in the Manual.  Instead, it states that Sheriff Wegener "may amend or cancel policy directives at any time," and that he "reserves the ability to mandate disciplinary action to a lesser or greater level than the 'chain of command's recommendation."  Ex. B, Policy 201(IV)(A); Ex. A, Policy 320(IV)(F).  The Manual's personnel policies are also replete with declarations that the Manual is advisory in nature and that the employees of the Park County Sheriff's Office are employed at will.  For example:

- Policy 300 / Introduction / Table of Contents:  "These articles are a guide for the administration of the Park County Sheriff's Office and the employees thereof.  Any and all of these articles are subject to change by the Sheriff." *See* Def. Mot. to Dismiss, Ex. A, at 3.[4]

- Policy 303(III):  "Park County, including the Sheriff's Office, is an 'at will' employer."

- Policy 309(IV)(A)(4):  "The Sheriff's Office is an 'employment at will' employer.  Sworn employees serve 'at the pleasure' of the Sheriff.  Both the Employee and the Sheriff's Office have the right to end employment at any time.  Employees may be dismissed for reasons discussed in Chapter III, Section 320, Disciplinary Action."

Plaintiff's assertion that the Manual "promised" Plaintiff he would be disciplined or demoted only "for specifically articulated cause," is flawed.  Such argument rests on

---

[4] The policy entitled "Policy 300 / Introduction / Table of Contents" is included in Defendants' authenticated copy of the Manual, attached as "Exhibit A" to Defendants' Motion to Dismiss, [Doc. #13.1].  It is not included in Plaintiff's version of the Manual.

inaccurate representations of the Manual's contents.  First, Plaintiff incorrectly states that employees could "only" be disciplined or demoted for cause, *see* Response at 6, and that a demotion is permitted "only" under certain conditions, *id.* at 7.  In reality, the Manual does not provide that discipline or a demotion may be imposed "only" in certain circumstances.  Regarding demotion, Policy No. 320(II) states that a demotion "may" be imposed "when the accused employee willfully engages in misconduct or intentionally violates Policy and Procedure"—not "only" when such circumstances occur.[5] Additionally, where a cause-based substantive restriction is intended, the Manual makes the substantive restriction explicit.  For example, Policy No. 324(IV)(B)(5) explicitly states that a veteran returning from active duty who is re-employed by the Park County Sheriff's Office "shall not be discharged from the restored position without cause within one year after the person is re-employed."  Similarly, Policy No. 324(IV)(C) provides that an employee who goes on initial active duty for training upon first joining the National Guard or Reserve "shall be entitled to all the re-employment rights and benefits . . . as outlined in this policy, except in this situation the employee is protected from discharge without cause is six (6) months" [sic].  In contrast, the Manual does not convey an intent to create a "substantive restriction" on Sheriff Wegener's authority to impose discipline or a demotion at will.  In the absence of such substantive restrictions, the Manual's policies and procedures do not and cannot create a due process property interest.

---

[5] By contrast, Policy 320(II) expressly states that disciplinary demotion will "only" be authorized by the Sheriff, showing that the Manual's use of the word "only" is purposeful.

As demonstrated above, a fair and accurate reading of the Manual clearly reveals that the policies stated therein are intended simply to provide guidance.  It does not provide "guarantees"; it does not make "promises"; nor does it establish the outer limits, or any fixed limits, of discipline.  Based on the advisory nature of the Manual and Sheriff Wegener's final decision-making authority over the employment of his personnel, there are no substantive restrictions upon Sheriff Wegener's authority conferred by C.R.S. § 30-10-506, and Plaintiff cannot claim to have a "legitimate claim of entitlement" to either his rank or employment at the Park County Sheriff's Office.

Although Plaintiff argues his constitutional rights were violated by Defendants' alleged failure to adhere to the Manual's policies and procedures, *see* Compl. ¶ 42, "the Constitution does not require that each individual receive the procedural guarantees provided for by the instrument which bestows a property interest."  *Hennigh*, 155 F.3d at 1256.  "A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."  *Id.* (quoting *Hicks v. City of Watonga*, 942 F.2d 737, 746 n.4 (10th Cir. 1991).  Assuming that Plaintiff possessed a constitutional right in Defendants' adherence to the Manual's policies, any violation for failure to adhere to the policies is rendered moot by Plaintiff's independent and voluntary decision to quit his employment.

Finally, Plaintiff's proposition that Sheriff Wegener may terminate the employment of personnel at will, yet not impose a demotion at will without incurring Due Process consequences, defies logic and common sense.  It would indeed be a novel

9

rule of law if a Sheriff could fire his deputies at will without Due Process consequences, yet be unable to discipline or demote them at will without violating the Constitution. The absurd result would be that a Sheriff would always fire problem employees, rather than attempt to address and remediate behavior through less severe discipline.

To summarize, as an at-will employee, and pursuant to the authority vested in Sheriff Wegener by C.R.S. § 30-10-506, Plaintiff did not have any "legitimate claim of entitlement" to his rank or employment at the Park County Sheriff's Office. *Williams* and *Nicastle* demonstrate that C.R.S. § 30-10-506 trumps policies and "self-imposed limitations"—such as those contained in the internally promulgated Manual—that attempt to limit Sheriff Wegener's ability to take personnel action at will. Although the personnel policies and procedures cited by Plaintiff provide "procedural detail" regarding discipline, they do not impose substantive restrictions on Sheriff Wegener's ability to make personnel decisions. The effect of the advisory, non-binding nature of the Manual's policies is that the Manual does not constitute an implied contract or promise with regard to rank or employment that give rise to a property interest. The Manual's policies and procedures are insufficient to confer a due process property right. *See Nicastle*, 2011 WL 1598062, at *4 (quoting *Hennigh*, 155 F.3d at 1253). Plaintiff did not possess, and has not sufficiently alleged, a protectable due process property interest. Plaintiff's Due Process property interest claim should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Plaintiff Fails to Allege Facts Showing He Was Constructively Discharged.

In a suit brought pursuant to 42 U.S.C. § 1983, a plaintiff must sufficiently allege

and ultimately show that the defendants deprived the plaintiff of a constitutionally protected property interest, and the plaintiff resigned involuntarily.   *Yearous v. Niobrara Cty. Memorial Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).  "'[A] resignation will be involuntary . . . when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.'"   *Id.* (citation omitted).  Factors to consider in determining the voluntariness of an employee's resignation include (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice; (3) whether the employee was given a reasonable time to choose; and (4) whether the employee was allowed to select the effective date of resignation.  *Id.*  The critical question is not whether working conditions are difficult or unpleasant, but whether the employee "had the opportunity to make a free choice regarding [his] employment relationship."  *Id.*  The plaintiff must show he had "no other choice but to quit."  *Id.*

As explained in Defendants' Motion to Dismiss and argued above, Plaintiff did not have a protectable property interest in his rank or employment, and therefore Defendants could not and did not deprive Plaintiff of a protectable property interest.

Plaintiff also fails to allege facts showing that he resigned "involuntarily."  It is undisputed that Plaintiff quit his employment on the same day he was informed of Sheriff Wegener's decision to demote him, Compl. ¶ 43, and that the demotion had not yet taken effect.  *Id.* ¶ 35.  The Complaint contains no allegations that Defendants asked or expected Plaintiff to resign.  Plaintiff was given the opportunity to retain his employment as a Patrol Officer.  *Id.*  Plaintiff instead chose to end his employment.

Plaintiff refused to explore any other options, to include making any efforts to file an internal grievance or appeal the decision, despite his alleged belief that the reasons proffered for his demotion were untrue.  *See id.* ¶¶ 36-37.  The allegations do not add up to a claim of constructive discharge.

The brief timing of Plaintiff's resignation strongly supports the conclusion that Plaintiff's decision to quit was voluntary.  Plaintiff tendered his resignation within hours of being informed of the demotion.  *Id.* ¶ 43.  Resignations tendered after a much longer span of time have been held to be voluntary.  *See Yearous*, 128 F.3d at 1357 (resignations submitted one month after problems initially began, and two days after supervisor returned from vacation, were voluntary); *Premratananont v. South Suburban Park and Rec. Dist.*, 1998 WL 211543, at *3 (10th Cir. 1998) (no constructive discharge where employee did not utilize internal grievance procedures to dispute allegedly undeserved negative performance evaluations and where employee submitted resignation before his appeal regarding failure to obtain an interview was completed).

Plaintiff acknowledges that his alleged constructive discharge is limited to the question of damages.  *See* Response at 12.  Defendants agree.  Accordingly, if it is found that Plaintiff resigned voluntarily, Plaintiff's recoverable damages, if any, on his Due Process claim(s) must be limited to those that are unrelated to his resignation.

The totality of the facts alleged in Plaintiff's Complaint show that Plaintiff has failed to nudge his claim of constructive discharge across the line from conceivable to plausible.  Plaintiff was not deprived of a Due Process property interest, and Plaintiff voluntarily chose to leave the Park County Sheriff's Office before his demotion even

took effect.  The Court should find that the facts alleged in the Complaint are insufficient to show that Plaintiff was constructively discharged.

### 3.  <u>Plaintiff Fails to Allege Responsibility by Defendant Hancock for the Alleged Constitutional Violation.</u>

Plaintiff has failed to sufficiently allege that Defendant Mark Hancock was personally involved in the decision to demote Plaintiff so as to incur liability under 42 U.S.C. § 1983.  First, Plaintiff has failed to sufficiently allege facts showing that Defendant Hancock was a "moving force" of Plaintiff's demotion.  The only action that the Complaint attributes to Defendant Hancock is that he "informed Sheriff Wegener of his meeting with Sgt. Tonjes and Undersheriff Gore."  Compl. ¶ 34.  Plaintiff's allegation that Defendant Hancock "decided" to discipline or even fire Plaintiff and Undersheriff Gore is purely speculative because it is uncontroverted that only Sheriff Wegener actually implemented the decision.  *See id.* ¶¶ 35-36.  What Plaintiff "assumed" or "believed" Defendant Hancock decided or did, without further facts, is not a plausible basis on which to impute personal liability under § 1983.  *Id.* ¶¶ 38-39.  Moreover, Plaintiff has not alleged facts that Defendant Hancock did anything improper, much less unconstitutional.  Defendant Hancock is in Plaintiff's chain of command.  Although Defendants deny Plaintiff's assumptions, it would have been appropriate for Defendant Hancock to make the alleged report of information to his superior, Defendant Wegener, particularly considering the seriousness of the tragic events that occurred just a few days before.

Again, Defendant Wegener was the person with final decision-making authority over Plaintiff's employment status.  *See* Policy No. 320(IV)(F).  Defendant Wegener is

the only person alleged to have implemented the demotion.  Compl. ¶¶ 35-36.  The sole

allegation that Defendant Hancock "informed Defendant Wegener of his meeting" is

insufficient to show that Defendant Hancock set in motion a series of events that he

knew or reasonably should have known would cause Defendant Wegener to deprive

Plaintiff of his constitutional rights, assuming such a right existed.  *See Schneider v. City*

*of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013) (discussing the

causation required to establish a supervisor's personal liability under 42 U.S.C. § 1983).

Plaintiff has failed to allege facts showing Defendant Hancock's personal involvement or

that his acts caused Plaintiff's alleged deprivation of a property right.  Plaintiff's Due

Process property claim asserted against Defendant Hancock must be dismissed.

### 4. Defendants Wegener and Hancock Have Qualified Immunity From Plaintiff's Due Process Property Interest Claim.

Plaintiff has failed to satisfy his "heavy two-part burden."  *Albright v. Rodriguez*,

51 F.3d 1531, 1534 (10th Cir. 1995).  Regarding the first qualified immunity prong,

Defendants Wegener and Hancock did not violate Plaintiff's constitutional rights.  As

explained above, Plaintiff did not have a constitutional right in his rank or employment at

the Park County Sheriff's Office, and no other constitutional rights are alleged.

Defendants cannot violate a constitutional right that does not exist.

Assuming a right in rank or employment existed, Defendants Wegener and

Hancock could not have known, under the facts alleged, that the right was "clearly

established."  To refute Defendants' qualified immunity defense, Plaintiff must

demonstrate "a substantial correspondence between the conduct in question and prior

law establishing that the defendant's actions were clearly prohibited.  *Hilliard v. City and*

*County of Denver,* 930 F.2d 1516, 1518 (10th Cir.1991) (citation omitted).  In

determining whether a right was "clearly established," the Court must assess the

objective legal reasonableness of the Defendant's alleged action at the time and ask

whether the right was sufficiently clear that the Defendant would understand that what

he is doing violates that right.  *Nicastle*, 2011 WL 1598062, at *2 (citing *Wilson v.

Layne,* 526 U.S. 603, 615 (1999)).  Although an implied contract or legally enforceable

promise may give rise to a constitutionally protected property interest, Plaintiff has not

presented case law that an implied contract or promise exists or could exist under the

facts alleged in this case.  Plaintiff has failed to present clearly established law by which

Defendants would understand their alleged actions to be unlawful.  Therefore, Plaintiff

has failed to overcome Defendant Hancock and Defendant Wegener's qualified

immunity defense.

## C. <u>Plaintiff Fails to Allege a Plausible Claim for a Violation of Plaintiff's First Amendment Right to Freedom of Association.</u>

### 1. Legal Standard.

The First Amendment protects the right to associate when the association is *for

the purpose* of engaging in protected First Amendment activity, such as speech or

assembly.  *See Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).  The First

Amendment does not recognize a right to associate generally, for incidental reasons.

*Dillon v. Twin Peaks Charter Academy*, 406 Fed. App'x. 253, 259 (10th Cir. 2010).  Nor

is there a generalized right of "social association."  *City of Dallas v. Stanglin*, 490 U.S.

19, 25 (1989).

## 2.  Protected Speech.

The facts alleged in the Complaint do not suggest that Plaintiff was associated with Monte Gore *for the purpose of* engaging in protected speech.  Rather, the facts alleged show a series of incidental, disparate events and conversations connected by chance through the tragic events of February 24, 2016.

Plaintiff alleges that, prior to February 24, 2016, he shared his views regarding Mr. Wirth with Defendant Wegener, Defendant Hancock, and others.  Compl. ¶ 24.  Sometime after February 24, 2016, but before visiting Defendant Hancock at home, Plaintiff and Mr. Gore discussed the events.  *Id.* ¶ 28.  It must be presumed that this conversation occurred in their official capacities and within the scope of their duties; such is the most plausible explanation and it is not otherwise alleged.  On February 26, 2016, Plaintiff and Mr. Gore visited Defendant Hancock at home on their day off.  *Id.* ¶ 31.  Plaintiff does not allege that they visited Defendant Hancock *for the purpose* of discussing the Wirth situation, although the discussion arose during the visit.  *See id.*

For purposes of this First Amendment analysis, it is notable that the allegations in paragraphs 28 and 33 of the Complaint are contradictory.  Paragraph 28 alleges that Plaintiff and Mr. Gore both stated that the tragic events of February 24, 2016, "were caused by the inappropriate and reckless orders of Sheriff Wegener *and Capt. Hancock*."  Compl. ¶ 28 (emphasis added).  In Paragraph 33, however, Plaintiff alleges that, at the time they spoke with Defendant Hancock on February 26, 2016, both Plaintiff and Mr. Gore "*did not know that Hancock had been involved in giving the order to enter the Wirth residence*" (emphasis added).  Not only are these statements

contradictory, they negate any inference that Plaintiff and Mr. Gore went to Mr. Hancock's home for the purpose of either (a) expressing their views about the Wirth situation at all, or (b) expressing a jointly held belief about the Wirth situation. Either way, Plaintiff's Complaint is internally inconsistent, making the association claim implausible.

First Amendment case law is also clear that First Amendment freedom of association entails association with persons, not with speech, opinions, or abstract ideas. *See e.g. Roberts v. United States Jaycees*, 468 U.S. at 612-614 (describing United States Jaycees organization). Plaintiff's Response inaptly states that Plaintiff was associated with "speech." Response, at 18. While Plaintiff may have subscribed to an opinion of the Wirth matter held by Mr. Gore, it is not his association with the opinion that matters; it is his association with Mr. Gore. As the facts alleged in the Complaint show, there is only one isolated instance in which Plaintiff and Mr. Gore could have appeared to Defendants as "associated" for the purpose of engaging in speech—and this was at the visit to Defendant Hancock's home on February 26. The preceding conversations, as alleged, were either undertaken by Plaintiff independently without Mr. Gore, or by Plaintiff and Mr. Gore outside of the presence and knowledge of Defendants. The isolated "association" between Plaintiff and Mr. Gore at Hancock's home on February 26 is insufficient to plausibly constitute an association for which the First Amendment grants protection.

The Complaint allegations further indicate that Plaintiff's and Mr. Gore's conversations with their supervisors and with each other preceding their meeting with

Hancock on February 26 were private conversations concerning their official duties, not an "association."  *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1205 (10th Cir. 2007) (teachers' grievances that were "internal in scope and personal in nature" not protected speech); *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996) (public employee's internal departmental grievances not protected speech); *McEvoy*, 882 F.2d at 466 (letter written by policeman with intent to air his frustration over perceived mismanagement not protected speech).  The "association" suggested by the Complaint between Plaintiff and Mr. Gore is too tenuous to warrant First Amendment protection.

### 3.  Plaintiff Has Not Sufficiently Alleged Defendants' Retaliatory Motive.

Plaintiff's alleged association with Mr. Gore must be more than a "motivating factor" in Defendants' alleged decision to demote Plaintiff.  The association must be a "substantial" motivating factor.  *See Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013).  Plaintiff has failed to allege facts that meet this standard.

Plaintiff offers nothing more than conclusory statements and speculative assumptions that Defendants Hancock and Wegener were substantially motivated by Plaintiff's association with Mr. Gore in their conduct towards Plaintiff.  During the visit to Hancock's home, Plaintiff did not express his personal views, but was merely a bystander as Gore gave his opinion.  *See* Compl. ¶ 32.  It is not plausible to infer that Defendants would impute Gore's opinion to Plaintiff under such circumstances.  Plaintiff also speculates that Defendant Hancock informed Sheriff Wegener of their meeting, and communicated particular information to Sheriff Wegener in that conversation, but

Plaintiff does not have any factual support to back this up.  *Id.* ¶ 34.  Plaintiff's was

demoted for reasons that could reasonably be valid and within Defendant Wegener's

lawful authority. Additionally, Plaintiff's allegation of pretext is entirely conclusory.  *See*

*id.* ¶ 36.  Given these considerations, Plaintiff has failed to allege that Defendants' were

"substantially motivated" by Plaintiff's alleged association with Mr. Gore.

### 4.   Defendants Are Entitled to Qualified Immunity from Plaintiff's First Amendment Claim.

Plaintiff has failed to allege facts showing that Defendants would know they were

violating a clearly established constitutional right.  Plaintiff bases his First Amendment

claim upon a singular incident of expression in which Plaintiff did not participate.  It is

not reasonable to infer from this isolated incident that Defendants would understand that

Plaintiff's demotion, which was undertaken pursuant to Sheriff Wegener's lawful

authority, violated Plaintiff's First Amendment right to freedom of association.  Plaintiff

has not shown how Defendant Hancock's alleged act of reporting relevant information to

his supervisor, regarding a discussion pertaining to an ongoing investigation, was

sufficient to constitute personal participation or causation of such a violation.  Both

Defendant Hancock and Defendant Wegener are qualifiedly immune.

### D.  Plaintiff Fails to Allege a Due Process Liberty Interest Claim

The facts alleged in Plaintiff's Complaint do not add up to a plausible claim for

relief for a violation of a Due Process liberty interest.  As a threshold matter, Plaintiff has

not rebutted Defendants' argument that the only statement at issue is the statement

allegedly made by Sheriff Wegener to a news reporter, and that the news reporter's

alleged subsequent report is not actionable.  Thus, the only statement at issue is Sheriff

Wegener's statement made to a news reporter on March 2, 2016.  Compl. ¶ 44.

There is a substantive difference between Defendant Wegener's statement as it is alleged in the Complaint, and how Plaintiff inaccurately characterizes the statement in the Response.  As alleged in the Complaint, Defendant Wegener told the reporter that his decision to demote Plaintiff "was related to the handling of how **the deputies** responded [at the Wirth scene]."  Compl. ¶ 44 (emphasis added).  In the Response, Plaintiff states that Defendant Wegener suggested Plaintiff was demoted because of "**his** [Plaintiff's] role" in the Wirth situation.  Response at 22, 24 (emphasis added).  Plaintiff's new characterization of Defendant Wegener's statement is too late.  The Court must consider the statement alleged in the Complaint, not words and meaning that Plaintiff now attempts to add.  Defendant Wegener did not point the finger at Plaintiff.  Defendant Wegener did not hold Plaintiff responsible.

As stated in section B.2 above, the alleged facts show that Plaintiff was not constructively discharged; Plaintiff quit.  Defendant Wegener's statement was not made "in the course of" Plaintiff's constructive discharge.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1329 (10th Cir. 2004) (alleged defamatory statements were not made in the course of plaintiff's termination from employment because plaintiff "resigned of her own accord"). Plaintiff also fails to offer any facts or argument that his employment was subsequently "foreclosed."  The Tenth Circuit has recognized that foreclosure of employment opportunities is a "narrow" requirement.  *Id.*  Plaintiff's conclusory allegation that he "suffered loss of reputation and ability to find re-employment" is insufficient.  *Nicastle*, 2011 WL 1598062, at *5 (citing *Sandoval*, 388 F.3d at 1329).  To

sufficiently plead foreclosure of employment opportunities, Plaintiff is required to allege, and ultimately prove, that he is "categorically ineligible" for other employment.  *See Sandoval*, 388 F.3d at 1329 (plaintiff's statement that she applied for and had been rejected from approximately 100 positions for which she was qualified was insufficient to show categorical ineligibility).  Here, Plaintiff has not alleged any concrete facts of adverse consequences, much less that he became categorically ineligible because of Defendant Wegener's statement.  Plaintiff's failure to allege that Defendant Wegener's statement was in the course of his termination or that his employment opportunities were foreclosed is fatal to his liberty interest claim.

Finally, Defendant Wegener's alleged statement is true when compared to Plaintiff's alleged version of events.  Plaintiff argues the statement is false because it does not align with the reasons for Plaintiff's demotion allegedly proffered by Defendant Wegener to Plaintiff privately at the time of the demotion—specifically, that Plaintiff was being demoted for speaking harshly to two officers.  *See* Response, 23-24.  However, Plaintiff plainly alleges that Plaintiff believed this proffered reason was pre-textual.  *See* Compl. ¶¶ 36-37, 41.  Plaintiff alleges, and continues to argue, that he believes the "true" reason for his demotion was his association with Mr. Gore and their shared opinion regarding the Wirth eviction.  Compl. ¶ 32; Response at 19-20.  Plaintiff cannot have the "truth" both ways.  Defendant Wegener's alleged statement—that Plaintiff's demotion was related to the handling of how the deputies responded at the Wirth scene—aligns with Plaintiff's allegations and beliefs concerning the "true" reasons for his demotion.  Thus Defendant Wegener's statement was true for purposes of Plaintiff's

Due Process liberty interest claim.

For the reasons stated above, Defendant Wegener did not deprive Plaintiff of a clearly established constitutional liberty interest in Plaintiff's name and reputation. Defendant Wegener is qualifiedly immune, and Plaintiff has not offered rebuttal argument to overcome Defendant Wegener's qualified immunity defense as to this claim. The claim against Defendant Wegener should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Plaintiff Fails to State a Claim for Breach of Contract.

Plaintiff has not sufficiently alleged facts to show that he had a "contract" for employment or that the policies and procedures in the Manual would be followed. As explained in Section B.1 above, the Manual's policies and procedures were advisory in nature. The Manual states that Defendant Wegener was entitled to change the policies at any time and impose discipline at the level he saw fit. Plaintiff has failed to sufficiently allege, nor can he, that the Manual's policies and procedures are binding upon the Sheriff or that they limit his statutory authority conferred by C.R.S. § 30-10-506. For all of the reasons set forth in Defendants' Motion to Dismiss and this Reply, Plaintiff has failed to sufficiently allege that the Manual constituted a "contract," express or implied by which Plaintiff can bring a breach of contract claim. The claim should be dismissed. *See* Mot. to Dismiss, 20-22.

### F. Plaintiff Fails to State a Claim for Promissory Estoppel.

Plaintiff also has not sufficiently alleged facts to show that a legally enforceable promise exists. The Manual was intended to serve as guidelines, and procedures were

neither fixed nor did they establish the outer limits of discipline. The Manual further stated that Sheriff Wegener was not bound to follow its policies and procedures, *see* Policy 201(IV)(A), and he could determine discipline at the level of his choosing, *see* Policy 320(IV)(F). In light of these statements and the Manual's advisory nature, Plaintiff's purported "reliance" placed upon strict adherence to the policies is unreasonable. For all of the reasons set forth in Defendants' Motion to Dismiss and this Reply, Plaintiff cannot prove his promissory estoppel claim and the claim should be dismissed.

### G. Plaintiff Fails to State a Claim against Defendant Park County Sheriff's Office.

The Park County Sheriff's Office is a "municipal entity" for purposes of liability under 42 U.S.C. § 1983. *See e.g. Carey v. El Paso Cty. Sheriff's Office [sic]*, 2006 WL 2361808, *1 (D. Colo. 2006) ("The Sheriff's Office is not a separate entity from El Paso County and, thus, is not a person under 42 U.S.C. § 1983."). Plaintiff's claims asserted against the Park County Sheriff's Office are construed as asserted against Park County. *Id.* ("The claim asserted against the Sheriff's Office must be considered as asserted against El Paso County.").

The holding of *Isenbart v. Bd. of Cty. Comm'rs of Kit Carson Cty.*, 2012 WL 4378269, *7 (D. Colo. 2012) is persuasive. *Isenbart* held that "[a] single employment decision by a County Sheriff cannot be deemed a 'policy' that triggers municipal liability when there is no allegation that the municipality was the 'moving force' behind the injury alleged." 2012 WL 4278269, at *7. Although the defendant in that case was the board of county commissioners, and not the county sheriff's office, the holding was broadly

directed toward municipal entities in general.  The Park County Sheriff's Office is a municipal entity, and the rule of *Isenbart* applies.  Because Plaintiff has not alleged any facts showing that the Park County Sheriff's Office was a "moving force" and thus personally involved in Defendant Wegener's decision to demote Plaintiff, Defendant Park County Sheriff's Office should be dismissed with respect to Plaintiff's Due Process property interest claim.

### H.  Plaintiff Fails to State a Claim against Defendant Mark Hancock.

For the reasons articulated in Defendants' Motion to Dismiss and this brief, Defendant Hancock should be dismissed for Plaintiff's failure to sufficiently allege his personal participation, or that his conduct caused Plaintiff's alleged injuries.  *See* Mot. to Dismiss, 33-35; Arg. B.3, *supra.*

### IV. CONCLUSION

Plaintiff's Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff has failed to sufficiently allege a cognizable Due Process property interest in his rank or employment.  Plaintiff has failed to sufficiently allege a plausible "association" subject to First Amendment protection, or that such association was the substantially motivating force of his demotion.  Plaintiff has failed to allege that he was deprived of a liberty interest in his good name and reputation.  Plaintiff has also failed to allege claims for breach of contract and promissory estoppel.  Finally, Plaintiff has failed to allege any policy or custom of the Sheriff's Office that was the moving force of Plaintiff's alleged injuries, as well as facts to support any claim of liability against Defendant Mark Hancock due to his lack of personal participation.

For all the reasons set forth in Defendants' Motion to Dismiss and articulated herein, Plaintiff has failed to state any claim upon which relief can be granted.  Plaintiff's Complaint may be dismissed in its entirety.  Defendants request that the Court grant Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and enter judgment in favor of Defendants.

**DATED** this 7th day of July, 2017.

Respectfully Submitted,

*/s/ Herbert C. Phillips*
Herbert C. Phillips, Atty. No. 8773
The Phillips Law Offices, LLC
675 Main Street, P.O. Box 1046
Fairplay, Colorado  80440
Tel: 719-836-9005
lee@law-hcp.com
Attorney for Defendants

*/s/ Timothy P. Schimberg*
Timothy P. Schimberg, Atty. No. 10686
Eden R. Rolland, Atty. No. 48877
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, Colorado  80203
Tel: 303-298-8603
Fax: 303-298-8748
t_schimberg@fsf-law.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2017, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

John A. Culver, Esq.
Seth J. Benezra, Esq.
Adam W. Ray, Esq.
Benezra & Culver,P.C.
633 17th St., Suite 2610 Denver, CO 80202
E-mail: sjbenezra@bc-law.com
Email: jaculver@bc-law.com
Email: awray@bc-law.com
Attorneys for Plaintiff Welles Tonjes

*/s/ Eden R. Rolland*
_____
Eden R. Rolland